Reed R. Kathrein (139304)
Wesley A. Wong (314652)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile:  (510) 725-3001
reed@hbsslaw.com
wesleyw@hbsslaw.com

*Attorneys for Plaintiff La'Marcus McDonald*

[Additional counsel on signature page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LA'MARCUS MCDONALD,<br><br>             Plaintiff,<br><br>     v.<br><br>COUNTY OF SONOMA, TOWN OF WINDSOR, MARK ESSICK, TRAVIS PERKINS, BRENT KIDDER, and GREGORY CLEGG,<br><br>             Defendants. | No. 3:20-cv-04183-WHA<br><br>AMENDED COMPLAINT FOR THE VIOLATION OF CIVIL RIGHTS, 42 U.S.C. § 1983, THE FOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND PENDENT STATE CLAIMS<br><br><u>DEMAND FOR JURY TRIAL</u> |

1

**TABLE OF CONTENTS**

2    I.     NATURE OF THIS ACTION .................................................................................1

3    II.    JURISDICTION AND VENUE ..........................................................................6

4    III.   PARTIES ...............................................................................................................7

5    IV.    NOTICE OF TIMELY CLAIM ..........................................................................9

6    V.     FACTUAL ALLEGATIONS ...............................................................................9

7    VI.    DAMAGES AND DECLARATORY RELIEF ..................................................26

8           FIRST CAUSE OF ACTION
                    (Violation of Plaintiff's Civil Rights, 42 U.S.C. § 1983,
9                   Against Defendants Deputy Sheriff Perkins, Deputy Clegg) ....................28

10          SECOND CAUSE OF ACTION
                    (Violation of Plaintiff's Civil Rights, 42 U.S.C. § 1983 – *Monell* Action,
11                  Against the Public Entity Defendants) .....................................................30

12          THIRD CAUSE OF ACTION
                    (Violation of Plaintiff's Civil Rights, 42 U.S.C. § 1983,
13                  Against Supervisory Defendants Sheriff Essick and Admin. Sgt. Kidder) ..............34

14          FOURTH CAUSE OF ACTION
                    (Violation of Plaintiff's Civil Rights under California Constitution
15                  Against All Defendants) ...........................................................................35

16          FIFTH CAUSE OF ACTION
                    (Negligent Hiring, Retention & Supervision
17                  Against Defendant Sheriff Essick) ...........................................................36

18          SIXTH CAUSE OF ACTION
                    (Negligence Against Defendants Deputy Sheriff Perkins and Deputy Clegg)..........37
19

20          SEVENTH CAUSE OF ACTION
                    (Intentional Infliction of Emotional Distress
21                  Against Defendant Deputy Sheriff Perkins)..............................................37

22          EIGHTH CAUSE OF ACTION
                    (Battery Against Defendant Deputy Sheriff Perkins)................................38

23          NINTH CAUSE OF ACTION
                    (False Arrest and Imprisonment
24                  Against the Individual Officer Defendants) .............................................39

25          TENTH CAUSE OF ACTION
                    (Unreasonable Seizure
26                  Against Defendant Deputy Sheriff Perkins and Does 1-50) .....................39

27          ELEVENTH CAUSE OF ACTION
                    (Violation of Cal. Civ. Code § 52.1, *Bane* Civil Rights Act Claim,
28                  Against Defendant Deputy Sheriff Perkins)..............................................40

TWELFTH CAUSE OF ACTION
(Violation of Cal. Civ. Code § 52.1, *Bane* Civil Rights Act Claim,
Against the Public Entity Defendants and Defendant Sheriff Essick) .....................41

THIRTEENTH CAUSE OF ACTION
(Violation of Cal. Civ. Code § 51.7, 52(b), *Ralph* Civil Rights Act Claim,
Against Defendant Deputy Sheriff Perkins)................................................................42

FOURTEENTH CAUSE OF ACTION
(Violation of Cal. Civ. Code § 51.7, 52(b), *Ralph* Civil Rights Act Claim,
Against the Public Entity Defendants and Defendant Sheriff Essick) ....................43

FIFTEENTH CAUSE OF ACTION
(*Respondeat Superior* - State Law Claims, Cal. Gov. Code § 815.2(a),
Against Public Entity Defendants) ............................................................................43

VII.    PRAYER FOR RELIEF .................................................................................................44

JURY DEMAND.......................................................................................................................44

1        La'Marcus McDonald (hereinafter "Plaintiff") alleges against Defendants (1) the County of

2   Sonoma ("Sonoma County" or the "County"); (2) the Town of Windsor ("Windsor" or the "Town")

3   (together with the County of Sonoma, the "Public Entity Defendants"); (3) Sheriff Mark Essick

4   ("Sheriff Essick"), individually, and in his capacity as the Sheriff of the Sonoma County; (4) Deputy

5   Sheriff Travis Perkins ("Deputy Sheriff Perkins"), individually, and in his capacity as a Police

6   Officer with the Windsor Police Department; (5) Administrative Sergeant Brent Kidder ("Admin.

7   Sgt. Kidder"), individually, and in his capacity as a Police Officer with the Windsor Police

8   Department; and (6) Deputy Gregory Clegg ("Deputy Clegg"), individually, and in his capacity as a

9   Police Officer for the City of Windsor Police Department; (collectively, "Defendants"), as follows:

10  ## I.     NATURE OF THIS ACTION

11       1.     This is an action for deprivation of civil rights in which Plaintiff seeks relief for the

12  violation of his rights secured by the Civil Rights Act of 1964, 42 U.S.C. § 1983 (civil action against

13  municipalities and its officers for deprivation of civil rights), § 1988, the Fourth and Fourteenth

14  Amendments to the United States Constitution, and pendent state law claims.

15       2.     The claims arise from a July 9, 2019, incident in which Sonoma County Sheriff

16  deputies acting as officers of the Windsor Police Department, under color of state law, responded to

17  a welfare check of Plaintiff who was sleeping in a legally parked car with the door open. A

18  concerned citizen reported that Plaintiff had suffered a medical emergency and requested the welfare

19  check. During the encounter, Deputy Sheriff Perkins conducted minimal investigation of Plaintiff's

20  welfare. Instead, Deputy Sheriff Perkins woke Plaintiff from his sleep, and confirmed with Plaintiff

21  (who was in a confused state after being roused from his sleep) that he had been drinking earlier that

22  night. Deputy Sheriff Perkins did not find, determine nor report that any crime had actually taken

23  place or would occur.

24       3.     Legally drinking and sleeping it off in legally parked cars is common, and does not

25  constitute a crime. Plaintiff is an African American man who was sleeping in a legally parked, while

26  waiting to rent an apartment. At no time did Sheriff Deputy Perkins observe Plaintiff driving the

27  vehicle, or endangering himself or others, or engaged in any actions aside from sleeping by himself.

28

4.      Instead of actually performing a welfare check and assisting/investigating Plaintiff's medical and safety needs, Sheriff Deputy Perkins unlawfully and sought to and did detain Plaintiff without a reasonable suspicion that a crime had actually taken place or would occur. Sheriff Deputy Perkins also unreasonably, intentionally, and willfully subjected Plaintiff to, *inter alia*, the use of excessive and deadly force by using a dangerous "takedown" maneuver. The "takedown" maneuver, as implemented and interpreted by Sheriff Deputy Perkins is part of the Sonoma Sheriff's Office training in use of the "Survivors Mindset" that puts the officer's safety over the safety of civilians even in the most benign situations. This takedown maneuver of deadly force and training is approved and sanctioned by Sheriff Essick, Windsor and the County. In implementing the "takedown" procedure, using his own interpretation and/or as taught by the Sheriff's office training and/or sanctioned by Sheriff Essick, Deputy Sheriff Perkins did not consider Plaintiff's state of mind, disability, nor ability to protect his head. In addition Deputy Sheriff Perkins had already restrained and controlled Plaintiff's left hand in cuffs and restricted Plaintiff's ability to break his fall. Rather, with no impending danger or threat, Deputy Sheriff Perkins slammed Plaintiff's head first into the ground. Deputy Sheriff Perkins accelerated the force and momentum of Plaintiff's fall whereby he "drove him to the ground," knocked Plaintiff unconscious,  broke off Plaintiff's two front teeth, and knocked out a third tooth, caused bleeding from the mouth, and caused facial and arm lacerations. Deputy Sheriff Perkins never warned Plaintiff that he was being arrested and that force would be used against him despite Plaintiff's scared, confused, sleepy, and recently-awakened state.

5.      Subsequent to Plaintiff's injuries, Deputy Sheriff Perkins employed a long-time tactic used by and sanctioned by Sheriff Essick, Windsor and the County to falsely arrested Plaintiff for "resisting arrest," which caused Plaintiff to be falsely imprisoned, to have to borrow money to pay bail to get out, to have his car impounded, and to lose the car and belongings in the car because Plaintiff could not afford the unlawful charges. Upon information and belief, Plaintiff believes that the Sonoma County Sheriff's Office has and continues to engage in a longstanding, systemic and deliberate custom and practice of falsely arresting individuals for "resisting arrest" in order to insulate the office and its officers from civil liability by attempting to cause these individuals to be convicted in the criminal courts for "resisting arrest" for purposes of *Heck* preclusion, which is

described in more detail in the seminal United States Supreme Court decision of *Heck v. Humphrey*, 512 U.S. 477 (1994). Upon information and belief, a dirty little secret of police departments is to charge suspects against whom they caused personal injury or other damages, with the fairly benign (and hard to disprove absent video) resisting arrest charge. Those so charged will more often than not plead guilty or no contest because they cannot afford the time or expense. The result, under *Heck* preclusion, is that they cannot sue for damages or civil rights violations.

6.    Here, Deputy Sheriff Perkins's Incident/Investigation Report does not state that Plaintiff was arrested for any other offense or lawful purpose. The lack of any reasonable suspicion or valid probable cause necessarily renders any use of force and detention illegal.

7.    Upon information and belief, and as part of the pattern and practices described above, Admin. Sgt. Kidder administratively rubber-stamped and signed-off on the false arrest charge of "resisting arrest" despite Deputy Sheriff Perkins's excessive use of force under the circumstances of the incident, thereby contributing and acting as an integral part to the continued deprivation of Plaintiff's constitutional rights and a pattern and practice of illegally charging people with "resisting arrest" for *Heck* preclusion protection from civil liability where officers injure civilians.

8.    Defendants then unlawfully had the car Plaintiff had been sleeping in towed and impounded, where it remains today as a result of unaffordable and excessive storage charges.

9.    Despite Admin. Sgt. Kidder's rubber-stamp approval of the incident and Deputy Sheriff Perkins's attempt to disguise the basis for the unlawful arrest, the Sonoma County District Attorney ultimately refused to prosecute Plaintiff for "resisting arrest" after reviewing and evaluating body camera video footage of the incident.

10.    Upon information and belief, Deputy Clegg, personally witnessed but did not intervene in Deputy Sheriff Perkins's use of excessive force on Plaintiff during Plaintiff's welfare check. Deputy Clegg then physically assisted Deputy Sheriff Perkins in an unlawful detention and search of Plaintiff's vehicle while he lay on the ground, looking for contraband. None was found.

11.    Deputy Clegg took pictures of Plaintiff's injuries (which were not attached to his report and remain under the Sheriff's lock and key). Additionally, immediately following the false arrest, Deputy Clegg supervised and assisted in the detention and transport of Plaintiff to the hospital

Amended Complaint for the Violation of Civil Rights                                    - 3
Case No.: 3:20-cv-04183-WHA
010930-11/1339481 V2

with the cruel and unusual use of a spit hood placed over his head (similar to prisoners at Guantanamo Bay), handcuffed for several hours to a hospital bed, and denied water, despite his bloodied, injured condition.

12.     Subsequently, Deputy Clegg supervised and assisted in the transport of Plaintiff to the county jail, and held Plaintiff involuntarily until he could make bail. While Plaintiff was being held in jail and after he paid bail, Plaintiff was never notified nor informed that the charges against him had been dropped by the District Attorney who refused to prosecute Plaintiff for the false charge of "resisting arrest." Only after Plaintiff was forced to attend a court hearing a month later did he learn that he was not being prosecuted after the waste of time and expense.

13.     Thereafter, Plaintiff sought to independently investigate Deputy Sheriff Perkins's use of excessive force against him, his arrest and detention. Similar to other victims in excessive force and police brutality cases, as part of a pattern and practice sanctioned by Sheriff Essick, Windsor and the County, Plaintiff was denied access to the body camera video, complete police reports and photographs of the incident. Only after several written and oral requests and denials, was Plaintiff allowed to view the video footage, but only in the physical presence of a Sonoma County Police officer at the Sheriff's Office. Sonoma County refused to provide Plaintiff with a copy of the body camera video footage. While Plaintiff has received copies of an investigative report, Sonoma County continues to withhold the video footage, and photographs taken of Plaintiff by the police, despite repeated requests and as required under Govt. Code 6254(f)(4).

14.     Govt. Code 6254(f)(4), which was law at the time of the incident, states in unambiguous terms that such body camera footage must be disclosed within 45 calendar days after the date the agency knew or reasonably should have known about the incident and cannot be withheld longer:

> (4)   Notwithstanding any other provision of this subdivision, commencing July 1, 2019, **a video or audio recording that relates to a _critical incident_**, as defined in subparagraph (C), *may be withheld only* as follows: (A) (i) During an active criminal or administrative investigation, disclosure of a recording related to a critical incident may be delayed **for no longer than 45 calendar days after the date the agency knew or reasonably should have known about the incident**, if, based on the facts and circumstances depicted in the recording,

disclosure would substantially interfere with the investigation, such as by endangering the safety of a witness or a confidential source.

A "critical incident" under this statute includes, "[a]n incident in which the use of force by a peace officer or custodial officer against a person resulted in death or in great bodily injury." Sonoma County and the Sheriff's Office claim that the loss of three front teeth and being rendered unconscious through a sudden, unwarranted takedown maneuver is "not great bodily harm," and further argue that the California penal statutes and case law, which are contrary to their position, have no bearing on the Government Code statutes.

15. Sonoma County, Windsor and Sheriff Essick further claim, as part of a pattern or practice, that the loss of three front teeth and being rendered unconscious is also not "serious bodily injury" for purposes of Govt. Code § 12525.2 – a law passed in 2015 that went into force on January 1, 2017 – to require each sheriff and police chief to annually furnish to the California Department of Justice a report of specified incidents when a police officer is involved in the use of force. "Serious bodily injury" under that statute is defined as "a bodily injury that involves a substantial risk of death, unconsciousness, protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member or organ."[1] As a result, it appears evident that Sonoma County, as a matter of custom and practice, fails to report this and other similar incidents of "great bodily harm "or serious bodily injury" to the California Department of Justice as required by Govt. Code § 12525.2.

16. Defendants' actions amount to violations of Plaintiff's, and other citizens' constitutional and state law rights, and are designed to hide a systemic denial of the rights of persons

---

[1] *See also,* Joe Domenic, *Information Bulletin No. 16-12-CJIS*: *Use of Force Incident Reporting*, OFFICE OF THE ATTORNEY GENERAL (Dec. 21, 2016), https://oag.ca.gov/sites/all/files/agweb/pdfs/law_enforcement/16-12-cjis-use-force-incident-reporting-ursus.pdf. [In this bulletin sent to the Sonoma County Sheriff, the Attorney General made clear, four years ago, that serious bodily injury was a low threshold that does not even require a trip to the hospital: "Serious bodily injury should not, however, mean that one must seek or require medical treatment at a hospital (e.g., a person experiences a loss of consciousness or because the injury is such that it is not immediately apparent that hospital care is necessary). Under those or similar circumstances, agencies must still report the use of force incident upon discovering that it resulted in serious bodily injury." Regardless, Plaintiff's injuries were of such a nature that Plaintiff was sent to the hospital by the Defendants.

Amended Complaint for the Violation of Civil Rights                                                                   - 5
Case No.: 3:20-cv-04183-WHA
010930-11/1339481 V2

living in or traveling through Sonoma County and the Town of Windsor. Defendants' actions are also designed to hide police misconduct, brutality, and racism from the citizens of Sonoma County, the State, and the United States of America. As shown below, Defendants' conduct is not isolated and is part of a wider societal, public safety problem in Sonoma County. It is a pattern and practice that has long frustrated and infuriated the local community. More concerning, however, is that policymakers, including Sheriff Essick, and Sonoma County and Windsor have acted deliberately indifferent to this pattern and practice of police misconduct and have failed to reform existing, inadequate policies, trainings, supervision, practices, and customs that have consequently (and unfortunately) allowed the Sheriff Department and its inadequately trained/supervised officers to continue violating the clearly established constitutional rights of individuals whom officers frequently encounter. The existing policing patterns and practices in Sonoma County and the Town of Windsor cannot be allowed to continue.

17.     As a result, Plaintiff seeks monetary damages (special, compensatory, and punitive) against Defendants, declaratory and injunctive relief, as well as an award of costs and attorneys' fees, and such other further relief as the Court deems just and proper.

## II.     JURISDICTION AND VENUE

18.     This action is brought pursuant to 42 U.S.C. § 1983, and the Fourth and Fourteenth Amendments to the United States Constitution. Title 28 of the United States Code, Sections 1331 and 1343 confers jurisdiction upon this Court. Jurisdiction is also vested in this Court under 28 U.S.C. § 1343(a)(3)-(4) for violations of the 1871 Civil Rights Enforcement Act, as amended, including 42 U.S.C. § 1983. Supplemental jurisdiction for pendent state claims is provided pursuant to 28 U.S.C. § 1367(a).

19.     Venue is laid within the United States District Court for the Northern District of California in that Defendants County of Sonoma and Windsor Police Department are located within, and the events giving rise to the claim occurred within the boundaries of the Northern District of California. Venue is proper in the Northern District of California under 28 U.S.C. § 1391(a)-(b).

1

## III.   PARTIES

2        20.     Plaintiff, La'Marcus McDonald ("Plaintiff" or "Mr. McDonald") is a legal resident of

3   the United States and at all times here relevant resided in Sonoma County in the State of California.

4   He is African-American and was at the time of the incident over the age of 21.

5        21.     Defendant, the County of Sonoma ("Sonoma County" or the "County") is, as all times

6   mentioned in this Complaint, a political subdivision of the State of California, duly authorized and

7   existing under the laws of, and by virtue of, the Constitution and laws of the State of California.

8   Under its supervision, Sonoma County operates the Sonoma County Sheriff's Department (the

9   "Sheriff's Department") which staffs the Windsor Police Department through a contract negotiated

10  between the Town of Windsor and Sonoma County. Sheriff Essick employed, trained and supervised

11  the individual defendants and, along with Sonoma County and the Town of Windsor, set the policies,

12  procedures, trainings, practices, and customs complained of herein.

13       22.     Defendant, the Town of Windsor ("Windsor" or "Town") is a political subdivision of

14  the State of California, and is an incorporated town under California general law in the County of

15  Sonoma, California. Windsor contracts with the County of Sonoma to provide police services

16  through the Sheriff's Department (Sheriff Essick). Windsor is responsible for the conduct herein as it

17  has established the policies, procedures, trainings, practices, and customs complained of herein with

18  the County of Sonoma and the Sheriff's Office.

19       23.     Defendant, Sheriff Mark Essick ("Essick" or "Sheriff Essick") has been a member of

20  the Sonoma County Sheriff's Office since 1994, holding many positions including Sergeant,

21  Lieutenant and Captain, manager of the Sheriff's Office Personnel and Internal Affairs units, has

22  managed the police service contract with Windsor, and has commanded Professional Standards,

23  Investigations/Coroner Bureaus, Personnel, and Community Outreach. Essick was elected

24  Sheriff/Coroner in June of 2018 and was sworn in as Sonoma County's Sheriff on January 7, 2019.

25  In his current position, Essick sets and is responsible for the customs, policies, trainings, supervision,

26  and practices complained of herein. At all times relevant to the acts and omissions herein alleged,

27  Defendant Essick was Sheriff/Coroner, and was acting in the course and scope of his employment

28  with the County of Sonoma and Windsor.

Amended Complaint for the Violation of Civil Rights                          - 7 -
Case No.: 3:20-cv-04183-WHA
010930-11/1339481 V2

24.     Plaintiff is informed and believes and thereupon alleges that Defendant, Deputy Sheriff Travis Perkins ("Deputy Sheriff Perkins") is and at all relevant times mentioned herein is a resident of the State of California and County of Sonoma. At all relevant times stated herein, Deputy Sheriff Perkins was a police officer and was acting in the course and scope of his employment with the County of Sonoma, Windsor, and Sheriff Essick, and is sued in his individual and official capacities.

25.     Plaintiff is informed and believes and thereupon alleges that Defendant, Deputy Gregory Clegg ("Deputy Clegg") is and at all relevant times mentioned herein is a resident of the State of California and County of Sonoma. At all times stated herein, Deputy Clegg was a police officer and was acting in the course and scope of his employment with the County of Sonoma, Windsor, and for Sheriff Essick, and is sued in his individual and official capacities.

26.     Plaintiff is informed and believes and thereupon alleges that Defendant, Administrative Sergeant Brent Kidder ("Admin. Sgt. Kidder") is and at all relevant times mentioned herein is a resident of the State of California and County of Sonoma. Plaintiff is informed and believes and thereupon alleges that at all relevant times Admin. Sgt. Kidder was responsible for supervising and training both Deputy Sheriff Perkins and Deputy Clegg, and signed the false arrest report alleged herein. At all times stated herein, Admin. Sgt. Kidder was a supervising police officer responsible for ensuring the adequate training and supervision of his subordinates; and was acting in the course and scope of his employment with the County of Sonoma, Windsor, and for Sheriff Essick, and is, therefore, sued in his individual and official capacities.

27.     Defendants Deputy Sheriff Perkins, Admin. Sgt. Kidder and Deputy Clegg are collectively referred to herein as the "Individual Officer Defendants."

28.     In doing the acts and/or omissions alleged herein, Defendants, and each of them, acted within the course and scope of their employment.

29.     In doing the acts and/or omissions alleged herein, Defendants, and each of them, acted under color of authority and/or under color of law.

30.     Plaintiff is informed, believes, and therefore alleges that, at all times herein mentioned, each of the Defendants was the agent and/or employee of each of the remaining

Defendants, and in doing the things hereinafter alleged, was acting within the scope of such agency, employment and/or conspiracy and with the permission and consent of other co-Defendants.

### IV.    NOTICE OF TIMELY CLAIM

31.    Within six months of the July 9, 2019, incident, Plaintiff filed a written Claim with the County of Sonoma in substantial compliance with California Government Code section 910, *et seq*. On December 27, 2019, the County mailed a Notice of Rejection of the Claim. This action was filed within 6 months of the mailing of that Notice. Accordingly, as of the date of the filing of the Complaint, said claim had been denied, and the state law claims alleged herein against the County of Sonoma are timely. The federal law claims alleged herein are also timely under California and federal law, and are brought together herein with Plaintiff's state law claims.

### V.    FACTUAL ALLEGATIONS

32.    On July 9, 2019, Plaintiff resided with his mother at 712 Sequoia St., Windsor, CA 95492 who was in the process of being evicted. Together they were waiting to find a new place to live and were in the process of packing up her belongings. Plaintiff was younger than the age allowed in the development where his mother lived and had been asked to sleep elsewhere by the property owner. Without a place to stay, Plaintiff was allowed to sleep in his friend's car parked just outside the development home park located at 7890 Bell Road. On July 9, 2019, Plaintiff was asleep in the car. At some point, the driver's side door was opened for reasons unknown to Plaintiff.

33.    Suspecting a drug overdose, Mr. Andrew Chambers, an individual who drove past Plaintiff sleeping in the car, called 9-1-1 to have someone check on Plaintiff's well-being. Deputy Sheriff Perkins was dispatched, along with an ambulance and one or more patrol officers, including Deputy Clegg.

34.    Deputy Sheriff Perkins did not wait for the ambulance pulling up behind him. Deputy Sheriff Perkins approached the vehicle that Plaintiff, who is an African-American male, was in and observed him curled up in the front driver's seat, facing the open door and street, and sound asleep. Plaintiff was completely inside the car, though the door was open. The vehicle was legally parked, stationary, and the ignition was turned off. There were no other passengers in the vehicle and no other people nearby at approximately 8:35 in the evening.

35.     Deputy Sheriff Perkins attempted to arouse Plaintiff by speaking to him. Plaintiff soon responded to Deputy Sheriff Perkins's physical prodding of Plaintiff's sternum area above his heart. Plaintiff was confused, alarmed, and disoriented. Plaintiff slowly looked at Deputy Sheriff Perkins and attempted to respond to Deputy Sheriff Perkins's questions, while trying to comprehend the scene as other police and paramedic vehicles approached.

36.     Plaintiff was wearing a red plastic comb in his hair. Deputy Sheriff Perkins reached for the red comb and removed the comb from Plaintiff's head, for no lawful reason and without Plaintiff's consent. At this point, any sort of search or touching by Sheriff Deputy Perkins was unjustified given that Plaintiff was neither lawfully detained nor arrested.

37.     Deputy Sheriff Perkins asked Plaintiff if he had been taking any drugs. Plaintiff stated he had not.

38.     Plaintiff pleaded with Deputy Sheriff Perkins that he had not done anything wrong and was not causing any trouble.

39.     When asked if he had been drinking, Plaintiff truthfully responded that he had been drinking earlier that night. At no time, however, did Deputy Sheriff Perkins observe Plaintiff driving the vehicle, drunk, drinking alcohol, endangering himself or others, or engaged in any actions aside from sleeping by himself. Deputy Sheriff Perkins did not conduct any type of sobriety test or blood alcohol content measurements to objectively evaluate Plaintiff's condition or level of intoxication, if any.

40.     Deputy Sheriff Perkins did not ask Plaintiff how he felt or whether he had any health issues. Deputy Sheriff Perkins did not ask Plaintiff whether he has a place to sleep of to close his car door. Deputy Sheriff Perkins did not ask Plaintiff if he had been driving or had any weapons. Rather, without determining any lawful basis to detain or arrest Plaintiff, Deputy Sheriff Perkins instructed Plaintiff to exit the vehicle for no lawful reason. The Incident/Investigation Report ("Incident Report") synopsis says merely: "Dispatched to a check the welfare. Contacted (S) in his parked vehicle. (S) displayed symptoms of intoxication. While attempting to detain (S), he resisted my efforts and was subsequently placed on the ground to gain control. (S) arrested for 148(a) PC and booked into the Sonoma County Jail. Case Status: Closed/Cleared by Arrest." It also falsely

identifies that Plaintiff had "Weapons: Personal Weapons (hands,(sic)". *See* Deputy Sheriff Perkins's Incident Information to the Incident/Investigation Report attached as Exhibit A.[2]

41.     Still trying to wake up from his slumber, Plaintiff complied, slowly putting his feet on the ground and slowly standing up. As he exited the vehicle, Deputy Sheriff Perkins spun Plaintiff around and grabbed his right arm.

42.     This action alone violated Plaintiffs constitutional rights amount to an unlawful search and seizure. Deputy Sheriff Perkins had no grounds to believe Plaintiff was armed or dangerous, and/or that his safety or that of others were in danger. Deputy Sheriff Perkins did not identify any laws that were broken or about to be broken. (The Report merely say Plaintiff "displayed symptoms of intoxication") Deputy Sheriff Perkins did not tell Plaintiff that he was being detained, the basis for any reasonable suspicion justifying the detention, that Plaintiff was under arrest, or to turn around so that Deputy Sheriff Perkins could hand-cuff Plaintiff. In fact, as noted above, no basis for any probable cause to detain or arrest Plaintiff is identified by Deputy Sheriff Perkins in his own Incident Report. Rather, Deputy Sheriff Perkins immediately and aggressively began to forcefully hand-cuff Plaintiff without any explanation, lawful justification, or warning.

43.     In his disoriented and confused condition, Plaintiff reasonably did not understand or necessarily could not comprehend what Deputy Sheriff Perkins was trying to do. The next thing Plaintiff remembers is waking up bloodied, face first on the ground with pain in his head and mouth (Photographs of Plaintiff's damaged teeth attached as Exhibit B).

44.     According to the false Incident Report that was generated after the incident by Deputy Sheriff Perkins (Exhibit A), Deputy Sheriff Perkins claims Plaintiff's body tensed up, after which,

---

[2] Plaintiff does not admit that facts asserted in the incident report are truthful other than to use the Incident Report as admissions of Defendants where relevant to Plaintiff's case. For instance, having been denied access to the video tapes, and other evidence, Plaintiff believes he was entirely in his car, did not attempt to move around in the car and did not attempt to pull his right arm out of Deputy Sheriff Perkins's grasp. Deputy Sheriff Perkins's Incident Report also leaves out relevant facts, including Plaintiff pleading with the Deputy Sheriff that he had done nothing wrong and was a peaceful person. It leaves out that Deputy Sheriff Perkins removed a comb from his hair, and it leaves out that Plaintiff's injuries included that he was knocked unconscious and had his two front teeth broken off as a result of the "takedown" maneuver. The photo of the one tooth knocked out is attached to the Incident report but not Plaintiff's broken teeth, blood and lacerations.

according to body camera footage viewed by Plaintiff, Deputy Sheriff Perkins shouted, "Don't f*****g do that again," and then within milliseconds, Deputy Sheriff Perkins employed (in a display of unreasonable use of deadly force) a dangerous "takedown" maneuver, approved and implemented as a custom and practice by Sheriff Essick, the County and Windsor, to slam Plaintiff head first into the ground while holding Plaintiff's right arm. As described by Deputy Sheriff Perkins, he "drove [Plaintiff] to the ground."

45.     At no time did Deputy Sheriff Perkins reasonably believe that Plaintiff presented any imminent threat of death or serious bodily injury to Deputy Sheriff Perkins or any other officer. At no time did Plaintiff present a flight risk for a felony that threatened or resulted in death or serious bodily injury.

46.     Plaintiff was then hand-cuffed by Deputy Sheriff Perkins, unconscious, as the paramedics and Deputy Clegg arrived. Deputy Clegg, who at this point in time understood the incident to be a routine welfare check on Plaintiff for medical attention, personally witnessed but did not intervene in Deputy Sheriff Perkins's ongoing use of excessive force on Plaintiff. Deputy Clegg stated in his Supplement Report that he observed Deputy Sheriff Perkins had Plaintiff face down on the ground and that Plaintiff was bleeding from his mouth (*see* Exhibit A). Deputy Clegg, after personally witnessing the excessive force used against Plaintiff, physically assisted Deputy Sheriff Perkins in unlawfully searching Plaintiff's motionless body while Plaintiff was fully restrained with handcuffs and unconscious on the ground. Thereafter, Deputy Clegg photographed Plaintiff's pool of blood and knocked out teeth on the ground. No contraband was found on Plaintiff. Because of his actions, Deputy Clegg was an integral part in Deputy Sheriff Perkins's violation of Plaintiff's clearly established constitutional rights.

47.     Plaintiff was then forced to wear a spit hood, and transported to the hospital where he was forced to lay in bed handcuffed for hours and denied water by Deputy Clegg without any justification or regard for Plaintiff's medical and/or basic needs as a human being. Deputy Clegg denied Plaintiff water despite Plaintiff's injuries and bloodied condition. Deputy Clegg never requested any medical personnel at the hospital provide water to Plaintiff. Plaintiff, because of the restraints imposed on him, could not care for himself and was fully dependent on Deputy Clegg's

assistance, which was unreasonably withheld. Deputy Clegg's deliberate refusal to provide Plaintiff with even one small cup of water for several hours can only be described as a punitive act amounting to something similar to torture. Bear in mind that at this point Plaintiff was never convicted of any crime (and ultimately never was) that was deserving of any form of punishment by the State.

48.     Still handcuffed, Plaintiff was illegally transported to Sonoma County Jail without being told why he was under arrest or the charges against him. Admin. Sgt. Kidder, Deputy Sheriff Perkins and Deputy Clegg's immediate supervisor who, at all relevant times, was responsible for the actions of his subordinates, administratively rubber-stamped and signed-off on the single false arrest charge of "resisting arrest" without investigating Deputy Sheriff Perkins's excessive use of force or the circumstances of the incident, thereby contributing, as an integral part, to the continued deprivation of Plaintiff's clearly established constitutional rights. Notably, Plaintiff was *never* charged for any offense related to public safety, public drunkenness, traffic laws, vehicle laws, or alcohol consumption.

49.     Plaintiff was held in detention until relatives could post bail. The District Attorney refused to prosecute the charges on or about July 12, 2019, after receipt of the false arrest report and body camera video footage. Shockingly, Plaintiff was never informed or notified while he was in jail that the District Attorney would not prosecute the charges against him. Plaintiff remained detained in jail with no information. Only after Plaintiff was forced to attend a court hearing a month after his relatives posted bail for his release did Plaintiff learn that he was not being prosecuted.

50.     Plaintiff could not afford to get the car out of impoundment. The car remains impounded today and is incurring ever-increasing, unreasonable, and unconstitutional charges as a result of Defendants' actions.

51.     Subsequent to Plaintiff's injuries, Deputy Sheriff Perkins employed a long-time tactic used by and sanctioned by Sheriff Essick, Windsor and the County to falsely arrested Plaintiff for "resisting arrest," which caused Plaintiff to be falsely imprisoned, to have to borrow money to pay bail to get out, to have his car impounded, and to lose the car and belongings in the car because Plaintiff could not afford the unlawful charges. Upon information and belief, Plaintiff believes that the Sonoma County Sheriff's Office has and continues to engage in a longstanding, systemic and

deliberate custom and practice of falsely arresting individuals for "resisting arrest" in order to insulate the office and its officers from civil liability by attempting to cause these individuals to be convicted in the criminal courts for "resisting arrest" for purposes of *Heck* preclusion, which is described in more detail in the seminal United States Supreme Court decision of *Heck v. Humphrey*, 512 U.S. 477 (1994). Upon information and belief, a dirty little secret of police departments is to charge suspects against whom they caused personal injury or other damages, with the fairly benign (and hard to disprove absent video) resisting arrest charge.[3] Those so charged will more often than not plead guilty or no contest because they cannot afford the time or expense. The result, under *Heck* preclusion, is that they cannot sue for damages or civil rights violations.

52.     Upon information and belief, Plaintiff believes discovery will show the Sonoma County Sheriff's Office charges injured suspects with resisting arrest without exception, and that this charge is made even when no underlying reason for an arrest is charged.

53.     Here, Deputy Sheriff Perkins's Incident/Investigation Report does not state that Plaintiff was arrested for any other offense or lawful purpose. The lack of any reasonable suspicion or valid probable cause necessarily renders any use of force and detention illegal.

54.     Upon information and belief, and as part of the pattern and practices described above, Admin. Sgt. Kidder, administratively rubber-stamped and signed-off on the false arrest charge of "resisting arrest" despite Deputy Sheriff Perkins's excessive use of force under the circumstances of the incident, thereby contributing and acting as an integral part to the continued deprivation of

---

[3] Joel Burgess, *Does a resisting arrest charge keep police from getting sued later?*, THE CITIZENS TIMES (Jan. 22, 2019, 12:30 p.m.), https://www.citizen-times.com/story/news/local/2019/01/22/debate-over-resisting-arrest-charges-includes-supreme-court-decision-heck-humphrey-johnnie-rush/2606301002/ (quoting N.C. Central University of Law Professor Scott Holmes, (When he worked as a defense attorney before becoming a professor, Holmes said, he heard officers talk about the strategy, including one who "insisted to a district attorney that the RDO should not be dismissed for that reason."); Jerry L. Steering, *Police Brutality Encouraged by Resisting Arrest & Battery on Officer Prosecutions*, LAW OFFICES OF JERRY L. STEERING, https://steeringlaw.com/police-brutality-is-encouraged-by-public-prosecutors-by-prosecuting-innocents-for-resistance-offenses/ (last accessed Sept. 8, 2020) ("Ask any cop what percentage of Section 148(a)(1) cases (resisting / obstructing / delaying peace officer), Section 69 cases (prevent to deter public officer from performing duty of office via use or threat of violence) Section 243(b) and (c) cases (battery on peace officer) are legitimate, and off the record, they will tell you almost none; maybe one or two percent.").

Plaintiff's constitutional rights and a pattern and practice of illegally charging people with "resisting arrest" for *Heck* preclusion protection from civil liability where officers injure civilians.

55.     After the incident, Plaintiff sought to independently investigate Deputy Sheriff Perkins's use of excessive force against him. Similar to other victims in excessive force and police brutality cases, Plaintiff was denied access to the body camera video footage of the incident. Eventually, after much negotiation with Sonoma County, Plaintiff was allowed to view it in the presence of a Sonoma County Police officer, but was denied a copy of the video. Sheriff Essick refuses to this day to release the video footage, despite demands as required under Govt. Code 6254(f)(4), which went into effect on July 1, 2019, just preceding this incident. Sonoma County and Sheriff Essick claim that having three front teeth knocked out and being rendered unconscious is "not great bodily harm" and claim that California Penal Statutes and case law to the contrary have no bearing on the Government Code statutes. As a result, Sonoma County undoubtedly, as a matter of custom and practice, has failed to report the incident to the California Department of Justice as required by Govt. Code § 12525.2(d) – a law passed in 2015 that went into force on January 1, 2017, that requires each sheriff and police chief to annually furnish to the California Department of Justice a report of specified incidents when a police officer is involved in the use of force.

56.     Plaintiff is informed and believes that evidence will show after discovery, and thereon alleges that Sonoma County, Sheriff Essick, and Windsor breached their duty of care to the public in that they have failed to discipline the Individual Officer Defendants for their respective misconduct and involvement in the incident described herein. Defendants Sonoma County, Sheriff Essick, and Windsor's failure to discipline the Individual Officer Defendants demonstrates the existence of an entrenched culture, policy or practice of promoting, tolerating and/or ratifying with deliberate indifference the use of excessive and/or deadly force and the fabrication of official reports to cover up misconduct.

57.     Specifically, policymakers, including Sheriff Essick, and the legislative bodies of Sonoma County and Windsor have acted deliberately indifferent to the ongoing pattern and practice of police misconduct and have deliberately failed to reform existing, inadequate policies, trainings, supervision, practices, and customs that have consequently allowed the Sheriff Department and its

officers to continue violating the clearly established constitutional rights of individuals whom officers frequently come into contact with.

58.     Moreover, Sheriff Essick, Sonoma County, and Windsor have been on notice of inadequate policies, trainings, supervision, customs, and practices. Despite this, these Defendants have acted with deliberate indifference by failing to supervise or train officers correctly and/or by failing to reform existing policies that are highly likely to cause violations of clearly established constitutional rights when officers carry out existing policies and training procedures.

59.     For example, Sonoma County Sheriff's Office's Arrest/Control training policy (attached as Exhibit C), encourages officers to act first—think and justify use of force later. The training policy directs officers to adopt a "Survivor's mindset" which encourages officers to think only of their own safety and justify their actions, right or wrong, according to base survival instincts: "Stay alive! ***Then prove your conduct was proper***." This might be proper for the military in war. For civilians, it is not. Law enforcement officers are hired to serve and protect.

60.     Furthermore, the "Survivor's mindset" undermines an officer's duty to understand the proper limitations on the use of force by stating that "[a]n officer's worry about administrative and civil issues connected to the use of force may have an impact on their decision process[.]" Additionally, the encouraged mindset philosophy disregards the constitutional rights of individuals that officers encounter by telling officers that paperwork incurred as a consequence of a civil rights violation is less important than using excessive force in order to ensure the officer's survival: "Remember: Your life today is more important than any paperwork tomorrow!" The mindset philosophy also values officers' lives over citizens' lives and liberties: "In a life or death struggle, you MUST have the will and desire to win . . . . Quitting is not an option . . . . No one wants to take a human life, ***but in the end better them than you***."

61.     Putting a premium on and indoctrinating officers, such as the Individual Officer Defendants in this case, with this combative, soldier-like "survivor's mindset" is unlawful in that it directs officers to violate constitutional rights first and then justify their actions. Encouraging officers to "prove your conduct was proper" *after* the violation of an individual's civil rights directs the continued violation of constitutional rights of individuals such as Plaintiff. The Public Entity

Defendants and Sheriff Essick's continued adherence to and failure to supervise, failure to reform, failure to amend, and failure to properly train officers under this policy amounts to deliberate indifference to the likely consequences (and dangers) that trained officers carrying out the "survivor's mindset" will use excessive force when policing the public and violate Fourth and Fourteenth Amendment rights.

62.     Sonoma County Sheriff's Office's Defensive Tactics training policy (attached as Exhibit D) is also unconstitutional in that it sanctions use of a "Take down[]" procedure that has a high probability of leading to death or severe injury in situations where neither is justified, such as the case here between Deputy Sheriff Perkins and Plaintiff. The training policy trains officers in a "Body Fold Takedown" maneuver: "Wrap your arms around the suspect above his/her waistline grasping your own wrist. [Then p]ull the suspect's body into you while bending over at your waist. [Then, a]s the suspect falls, disengage your hands letting the suspect fall to the ground [while] follow[ing] [the] suspect to the ground attempting to obtain a full or side mount control of the suspect." The procedure is not limited to life threatening situations, nor does it provide for any protection of the "suspects" head and does not protect against foreseeable severe injury or death.

63.     Allowing individuals to freefall to the ground without any control is irresponsible in that it could lead to individuals hitting their head on dangerous objects, surfaces, or other places that could cause traumatic injury such as brain hemorrhaging and bleeding from sensitive areas on the face. Moreover, there is the very realistic possibility of death for more vulnerable individuals (e.g., people with disabilities, minors, the elderly, and people who are cognitively impaired). In the instant case, Deputy Sheriff Perkins took the takedown training policy a step further (whether or not as part of unwritten custom and/or practice) and "drove" Plaintiff "to the ground" with an indiscriminate amount of uncontrolled force without disengaging his hands, thereby causing Plaintiff to lose consciousness, break his teeth, create the possibility of choking on a knocked out tooth, suffer lacerations, and leaving a visible pool of blood on the ground.

64.     This unique version of the takedown maneuver went unpunished by any supervisor (Sheriff Essick and/or Admin. Sgt. Kidder) or the Public Entity Defendants. Instead, Deputy Sheriff Perkins's description of his violent encounter and takedown of Plaintiff in his Incident Report and

1    false charge of "resisting arrest" was rubberstamped (despite body camera video footage) and

2    signed-off by Admin. Sgt. Kidder without incident. The Public Entity Defendants and Sheriff

3    Essick's continued adherence to and failure to supervise, failure to reform, failure to amend, and

4    failure to properly train officers under this training policy amounts to deliberate indifference to the

5    likely consequences (and dangers) that inadequately trained officers will continue to use excessive

6    force when attempting to control and restrain individuals.

7            65.     Alternatively, execution of the training policies referenced above conflict with clear

8    mandates set forth in Sonoma County Sheriff's Office's Use of Force policy (see below; also

9    attached as Exhibit E), thereby inadequately training and causing the continued inadequate

10   supervision of officers through divergent, non-uniform customs and practices that are likely applied

11   inconsistently, leading to the likely result that individuals' Fourth and Fourteenth Amendment

12   constitutional rights will be violated. For example, under the Use of Force policy, officers have a

13   duty to intercede when another officer is using objectively unreasonable force. Additionally, officers

14   are obligated to only use reasonable force under the circumstances; must avoid or minimize injury;

15   and must take into consideration a number of factors in order to determine the reasonableness of

16   applying force such as (1) the apparent immediacy and severity of the threat, (2) the conduct of the

17   individual being confronted by the officer, (3) the effects of drugs and alcohol, (4) the individual's

18   apparent mental state/capacity, (5) the individual's ability to understand/comply with officer

19   demands, (6) the degree to which the individual has already been restrained and ability to resist, (7)

20   the availability of other reasonable and feasible options besides using force, (8) the seriousness of the

21   suspected offense or reason for contact with the individual, (9) the potential for injuries, (10) the

22   apparent need for a prompt resolution of the situation, (11) whether there is an imminent threat, and

23   (12) whether the individual is resisting. Moreover, under the Use of Force policy, officers are only

24   supposed to use pain compliance techniques (e.g., a takedown maneuver) only after considering if

25   they have been appropriately trained, if the pain compliance technique can be controlled, whether the

26   individual can comply with directions/orders, and whether the individual has been given a sufficient

27   opportunity to comply with officer commands. Lastly, under the Use of Force policy, officers are

28

1   required to take into account medical considerations and assist physically distressed, injured, or

2   unconscious individuals prior to booking and/or medical assessment.

3        66.     Notwithstanding all the clear Use of Force policy mandates above, officers are

4   indoctrinated under the "survivor's mindset" philosophy and trained – to the contrary – to use

5   combative, uncontrolled takedown maneuvers that are likely to cause traumatic injuries, and are

6   practically able to disregard any prohibitions against using excessive force under the Use of Force

7   policy. Rather officers can rely on Sonoma County, Windsor, and Sheriff Essick's authorization to

8   employ a "survival mindset" that allows officers to prove the properness of their conduct after

9   excessive force has already been used. Officers may also rely on the "better them than you" training

10  slogan to justify use of excessive force. Officers' reliance on training policies that teach and

11  overemphasize a "survivor's mindset" and a "better them than you" philosophy conflicts with the

12  clear limitations and procedures on using force under the Use of Force policy. This conflict creates

13  an unclear, inconsistent path for officers to follow and thereby causes officers to be inadequately

14  trained and supervised. Officers are entitled to use the "survivor's mindset" as a scapegoat and

15  pretext to any allegations of use of excessive force. This leads to the likely and immediate threat that

16  individuals' Fourth and Fourteenth Amendment constitutional rights will continue to be violated by

17  officers who lack clear direction. The Public Entity Defendants and Sheriff Essick's continued

18  adherence to and failure to supervise, failure to reform, failure to amend, and failure to properly train

19  officers under these conflicting policies amounts to deliberate indifference to the likely consequences

20  (and dangers) that inadequately trained officers will continue to use excessive force when

21  encountering the public.

22       67.     In contrast to teaching the "survivors mindset" and "better them not you", Sonoma

23  County, Windsor, and Sheriff Essick's training omits any education of the constitutional rights of its

24  citizens.

25       68.     Sonoma County, Windsor, and Sheriff Essick were, and at all relevant times, on

26  notice that the failure to adequately train , supervise, and reform these existing policies, customs,

27  trainings, and police practices was inflicting harm and causing violations to individuals'

28  constitutional rights in the Sonoma County community. Sonoma County, Windsor, and Sheriff

Essick knew that there was an ongoing history of officers violating the civil rights of individuals, especially Fourth and Fourteenth Amendment rights. Yet, these Defendants were deliberately indifferent and failed to act to prevent further violations, which would have very likely prevented Plaintiff from suffering his unwarranted injuries during the police encounter at issue in this case.

69.     For example, upon information and belief, there have been 1,666 documented use of force cases reported between the years 2011 and 2016. Of these documented cases, only two use of force cases were deemed outside of policy; and, more egregious, *none* resulted in any disciplinary action against deputies. Upon information and belief, the *de facto* policy among Sheriff Essick and the Public Entity Defendants is to not discipline officers for even outrageous uses of force, which amounts to deliberate indifference. Upon information and belief, the Sonoma County Board of Supervisors has, at all relevant times, actively shielded Sheriff Deputies from liability for using excessive force, which also amounts to deliberate indifference.

70.     Relatedly, between 2010 and 2015, there were 1,623 use of force cases at the county jail, none of which were deemed violations of policy. Specifically, a prominent news publication has reported that at least one inmate is shocked with a taser each week (attached as Exhibit F). Although not in the context of an automobile stop or welfare check, these numbers paint a disturbing picture of the Defendants' unreasonable use of and inadequate training in excessive force throughout the County. Sonoma County, Windsor, and Sheriff Essick's knowledge of this amounts to deliberate indifference.

71.     More recently, the use of excessive force during an automobile stop on the night of November 27, 2019, that resulted in the death of David Ward has heightened and renewed Sonoma County, Windsor, and Sheriff Essick's notice of the likelihood that inadequately trained officers, such as Sheriff Deputy Perkins, are using excessive force against individuals in violation of their civil rights (attached as Exhibit G). In the case of David Ward, deputies, who mistakenly thought Mr. Ward had stolen his own car, beat Mr. Ward, slammed his head against the car while forcibly removing the wheelchair bound man from the window of the vehicle, repeatedly shocked Mr. Ward with a taser, and choked him until he slowly suffocated to death on a dark, rural dirt road. The incident was recorded through body camera footage and is publicly available. There is an ongoing

lawsuit that brings similar claims as in this suit. At the very least, the David Ward case represents Sonoma County, Windsor, and Sheriff Essick's continued failure to adequately train and supervise officers under existing policies, customs, and practices. There is no doubt whatsoever that the Public Entity Defendants and Sheriff Essick are certainly aware of the incident involving David Ward. There is also no doubt that the Deputy Sheriffs involved in that case will claim that they acted according to County trainings and policies. However, the fact remains that the Public Entity Defendants and Sheriff Essick remained on notice and deliberately indifferent to the risk of excessive force that ultimately murdered David Ward, especially given that Plaintiff's use of force incident had only occurred 4 months prior to the David Ward incident.

72.     Additionally, taking a broader view of historical problems in the County, in the 1990's, police misconduct was so prevalent in Sonoma County that the California Advisory Committee to the United States Commission on Civil Rights convened hearings and approved by a vote of 13-0 a five page report making recommendations for the County and its towns to adopt.[4] Police and elected officials rejected such proposals, however, calling current review procedures adequate.

73.     Again in 2007, the ACLU facilitated a citizen forum to air frustration over police practices said to include racial profiling, abuse of authority and brutality. The citizen forum again called for the creation of a civilian review board with greater access to investigative reports and improved police training. These recommendations were never adopted by Sonoma County.[5]

74.     Again, in the wake of raucous protests 6 1/2 years ago after a Sheriff's Deputy shot and killed thirteen-year-old Andy Lopez, a Sonoma County task force was formed in order to address

---

[4] California Advisory Committee, *Community Concerns About Law Enforcement in Sonoma County*, U.S. COMMISSION ON CIVIL RIGHTS (May 2000), https://www.usccr.gov/pubs/sac/ca0500/ch5.htm (last visited June 23, 2020).

[5] Mary Callahan, *ACLU forum airs allegations of brutality, racial profiling, abuse of authority*, THE PRESS DEMOCRAT (Oct. 28, 2007), https://legacy.pressdemocrat.com/news/2152609-181/aclu-forum-airs-allegations-of.

the use of excessive force by its police officers.[6] The task force recommended an independent watchdog agency to review the Sheriff's Office investigations of critical incidents, including officer-involved shootings. [7] Sonoma County created the Independent Office of Law Enforcement Review and Outreach ("IOLERO") to be the watchdog. However, relations between the Sheriff's Office and Jerry Threet, the first director of IOLERO were "decidedly frosty." IOLERO's recommendations went nowhere, and the County's supervisors complained that its efforts to shape law enforcement policy were misplaced. Even worse, Sonoma County set up IOLERO in a manner so that it could not effectively do its job. It lacks independence, had and continues to have insufficient resources, it does not have clear authority, and it does not have unfettered access to the information and staff of the Sheriff's Office, where currently such access depends on the discretion of the Sheriff and his staff.[8]

75.    IOLERO issued two annual audit reports (for fiscal years 206-2017 and 2017-18) and two Policy Recommendations.[9] In general the reports found great difficulty on getting access to data or investigative materials and evidence concerning *inter alia* citizen complaints, use of force, and

---

[6] *Community and Local Law Enforcement Task Force (or CALLE)*, COUNTY OF SONOMA, https://sonomacounty.ca.gov/IOLERO/Community-and-Local-Law-Enforcement-Task-Force/ (last visited Sept. 8, 2020).

[7] *Final Recommendations Report, Volume 1,* SONOMA COUNTY COMMUNITY AND LOCAL LAW ENFORCEMENT TASK FORCE, https://sonomacounty.ca.gov/WorkArea/DownloadAsset.aspx?id=2147582563 (May 12, 2015). (One of its primary findings was community concern on use of force, and the lack of transparent data concerning the use of force by Sonoma County and the Sheriff).

[8] Nashelly Chavez, *Retired Sonoma County Sheriff's Office watchdog seeks ballot measure to expand former agency*, THE PRESS DEMOCRAT (Oct. 19, 2019), https://www.pressdemocrat.com/article/news/retired-sonoma-county-sheriffs-office-watchdog-seeks-ballot-measure-to-exp/; *County Sheriff's watchdog urges Sonoma County supervisors to bolster independence of his office*, ARGUS COURIER (Dec. 4, 2018), https://legacy.petaluma360.com/news/9031923-180/county-sheriffs-watchdog-urges-sonoma; Jerry Threet, *Evelyn Cheatham Effective IOLERO Ordinance Brief Summary*, SONOMA COUNTY GAZETTE (Mar. 16, 2020), https://www.sonomacountygazette.com/sonoma-county-news/evelyn-cheatham-effective-iolero-ordinance-brief-summary-by-jerry-threet; The Editorial Board, *PD Editorial: The road from demonstrations to police reforms*, THE PRESS DEMOCRAT (June 14, 2020), https://www.pressdemocrat.com/article/opinion/pd-editorial-the-road-from-demonstrations-to-police-reforms/.

[9] IOLEROS two annual reports and reports and recommendations, as well as responses by the Sheriff, and IOLEROS response can be found at https://sonomacounty.ca.gov/IOLERO/. In general, the Sheriff takes the position that neither the watchdog nor the community are entitled to the evidence needed to quantify and review police misconduct except in the narrowest of circumstances that the Sheriff already cannot control.

bias. As a result, the first director, Jerry Threet announced his resignation in August 2018 effective

year end. No annual reports or recommendations have been issued since. Instead, the Community

banded together and pressured the County's Board of Supervisors to put on this year's ballot an

initiative to open up transparency from the Sheriff. The Evelyn Cheatham Ordinance would, among

other things, expand oversight of IOLERO to review an analyze complaints against the Sheriff by (1)

providing an objective, independent, and appropriate review and audit of law enforcement

administrative investigations, including allegations of misconduct by Sheriff-Coroner personnel; (2)

providing an alternative avenue for members of the public to file complaints against law enforcement

agencies' personnel, including the Sheriff-Coroner; (3) increasing transparency; (4) conducting

public outreach and community engagement; and (5) proposing policy recommendations to the

Sheriff-Coroner. This Ordinance would add more specificity to the complaints that IOLERO review

to include review of all complaints: (1) filed with IOLERO regardless of the allegations; (2)

involving issues of excessive force; (3) alleging violation of individual constitutional rights; (4)

alleging bias in policing or corrections; (5) alleging sexual harassment or sexual assault by law

enforcement personnel; (6) involving issues of dishonesty; and (7) that become a matter of media

interest. Further, it would vest IOLERO with, among other things, the authority to: (1) directly

access and independently review any and all sources of investigative evidence; (2) directly contact

complainants and witnesses; (3) contact custodians of evidence; and (4) independently subpoena

records.[10]

76.     Also recently, news reports reveal Sonoma County continues to tolerate its police

officers using excessive and deadly force and lying about it in court.[11] In addition, on July 10, 2020,

the Sonoma County Commission on Human Rights details scores of other examples of the Sonoma

County Sheriffs' continued violations of the constitutional rights of its citizens and failing to

adequately investigate the incidents. In part the background summary states:

---

[10] *County Counsel's Ballot Title and Summary,* AFLCIO UNION HALL,
https://unionhall.aflcio.org/system/files/co._council_titlesummary.pdf (last visited Sept. 8, 2020).

[11] Sukey Lewis, *In-Custody Death: Sonoma County Deputy Lied in Court About Past Carotid Hold*, KQED (Dec. 5, 2019), https://www.kqed.org/news/11789667/in-custody-death-sonoma-county-deputy-lied-in-court-about-past-carotid-hold.

This Commission has received numerous reports that law enforcement agencies regularly engage in arbitrary stops and questioning of BIPOC residents, and that racial profiling is understood to have been the standard procedure of all LEAs in Sonoma County for generations. This Commission has received multiple reports of concerns of LEAs harboring active white supremacists within officer ranks as well as officers who, while perhaps not members of active groups, espouse white supremacist and white nationalist ideologies which present themselves with most interactions with BIPOC residents. These presentations include disrespectful behavior, aggression, racial slurs, escalation, interrogation, physical violence and assault.

***

This relationship has been further strained over the years by a series of high-profile cases of police use of force, brutality and killings involving Santa Rosa Police Department, Rohnert Park Police Department, the Sonoma County Sheriff's Office, and other LEA's. Since the year 2000, there have been at least 91 community members who have been killed in an incident involving local law enforcement, averaging almost 5 deaths per year. There have also been numerous community driven efforts to address use of force by law enforcement as well as recommendations made by the Independent Office of Law Enforcement Review and Oversight and its Citizen's Advisory Committee, that have not been adopted by law enforcement. Additionally, the community has viewed videos of highly graphic and violent arrests, use of force injuries, and deaths of citizens committed by law enforcement in released body camera footage. These incidents are not new, but more visible since the adoption of body worn camera policies by LEAs.

(attached as Exhibit H).

77.     Sheriff Essick has been on notice of the inadequate training policies and supervision of deputies even before he was elected Sheriff in June 2018. In March 2018, while still a Sheriff Captain, Essick testified against Deputy Scott Thorne in an excessive force case that involved Thorne responding to an alleged domestic dispute (attached as Exhibit H). Deputy Thorne forced himself into the home where the dispute had allegedly occurred; tasered a non-combative man lying on a bed after the man said he wanted to call his lawyer; viciously beat the man with a baton; and then choked the man with the baton while the man was on his stomach. Deputy Thorne then arrested the man for resisting arrest. The District Attorney refused to file charges against the man and body worn camera footage later supported an assault charge against Deputy Thorne. *At trial, other deputies supported Deputy Thorne's actions as being in line with policies and trainings regarding the proper use of force.* Despite Essick's testimony against Deputy Thorne's use of force, Deputy Thorne was found not guilty. Despite Sheriff Essick's history with the County officers' problematic

interpretation of policies and trainings regarding the proper use of force, Sheriff Essick has made no attempt to reform the training or supervision of the officers and subordinates within his office. Instead, Sheriff Essick's actions amount to deliberate indifference. Sheriff Essick continues to implement and advance unlawful policies that requires subordinates to commit Fourth Amendment and Fourteenth Amendment constitutional violations against individuals.

78.     Plaintiff is informed and believes that further evidence will show after discovery, and thereon alleges that members of the Sonoma County and Windsor Police Department, including, but not limited to, the Individual Officer Defendants and/or each of them, have individually and/or while acting in concert with one another, engaged in a repeated pattern and practice of using excessive, arbitrary and/or unreasonable force against individuals, including, but not limited to Plaintiff.

79.     Plaintiff is informed and believes that further evidence will show after discovery, and thereon alleges that as a matter of official policy – rooted in an entrenched posture of deliberate indifference to the constitutional rights of citizens who live in Sonoma County and Windsor – Defendants Sonoma County, Windsor, and Sheriff Essick have long allowed its citizens, such as Plaintiff, to be abused by its police officers, including by the Individual Officer Defendants and/or each of them, individually and/or while acting in concert with one another.

80.     Plaintiff is informed and believes that further evidence will show after discovery, and thereon alleges that Sonoma County and Windsor police officers have a history of using excessive force to carry out corrupt schemes and motives. Sonoma County, Windsor, and Sheriff Essick have failed to discipline or retrain any of the officers who used excessive force for corrupt purposes. Sonoma County and Windsor's failure to discipline or retrain any of the involved officers is evidence of an official policy, entrenched culture, and posture of deliberate indifference toward protecting citizen's rights and the resulting police brutality and injuries is a proximate result of the Sonoma County and Windsor's failure to properly supervise its police officers.

81.     Plaintiff is informed and believes that believes that further evidence will show after discovery and thereon alleges that Sonoma County, Windsor, and Sheriff Essick are acutely aware of racism within the Sonoma County Sheriff's office, but knowingly turn a blind eye towards that

racism, and in fact, aid and conspire to cover up that racism and the subsequent violation of the civil rights of residents of Sonoma County and those passing through.

82.     Plaintiff is further informed and believes that further evidence will show after discovery, and thereon alleges that Sonoma County and Windsor knew, had reason to know by way of actual or constructive notice of the aforementioned unlawful policies, culture, supervision, trainings, pattern and/or practices and the complained of conduct, failures, and resultant injuries/violations.

83.     The acts complained of herein, were so patently violative of the constitutional rights of Plaintiff that a reasonable officials would know without guidance from the courts that the action was unconstitutional.

## VI.     DAMAGES AND DECLARATORY RELIEF

84.     As a direct and proximate result of the acts of Defendants, Plaintiff suffered the following injuries and damages, and/or is entitled to declaratory relief:

    a.     Violation of his civil rights under 42 U.S.C. § 1983. Specifically, violations of his rights under the Fourth and Fourteenth Amendment to the United States Constitution to be free from an unreasonable search and seizure of his person and property; for deprivation of his due process rights; and for deprivation of his right to liberty, life, and property;

    b.     Violation of his California Constitutional rights under Article 1, Section 13 to be free from an unreasonable search and seizure;

    c.     Violation of his California Constitution rights under Article 1, Section 7 to due process;

    d.     Violation of the Tom Bane Civil Rights Act Cal. Civ. Code § 52.1;

    e.     Violation of the Ralph Civil Rights Act of 1976 Cal. Civ. Code § 51.7;

    f.     Physical pain and suffering;

    g.     Emotional trauma and suffering, including fear, embarrassment, humiliation, emotional distress, frustration, extreme inconvenience, anxiety;

    h.     Loss of liberty; and

    i.     Punitive and Statutory Damages.

85.     The conduct of the Individual Officer Defendants was malicious, wanton and oppressive. Plaintiff is therefore entitled to an award of punitive damages against the Individual Officer Defendants.

86.     Plaintiff found it necessary to engage the services of private counsel to vindicate his rights under the law. Plaintiff is therefore entitled to an award of attorneys' fees and/or costs pursuant to statute(s) in the event that they are the prevailing parties in this action under 42 U.S.C. §§ 1983, 1985-86 and 1988.

## VII.    INJUNCTIVE RELIEF

87.     As a direct and proximate result of the acts of Defendants, Plaintiff is entitled to prohibitory injunctive relief. Plaintiff requests the following to be enjoined against the County, Windsor and Sheriff Essick:

a.   The use of unreasonable or excessive force;

b.   Racial bias in the use of force and arrests;

c.   Training and usage of the pattern and practices outlined above, including the "survivor's mindset", "better them not you", "act then justify";

d.   Training and usage of "takedown" procedures without due consideration for the protection of the suspects head;

e.   Charging of suspects with "resisting arrest" when there is no underlying crime, nor when it is employed to protect the officers from civil liability for causing damages to suspects;

f.   The refusal to release all video or recordings of incidents within 45 days whenever the suspect is injured when such injury is in the report or when the suspect claims injury;

g.   The failure to inform suspects that they are being arrested or detained, and will be handcuffed, prior to handcuffing unless the circumstance do not allow time to do so; and

h.   The towing of suspect vehicles when they are legally parked, or unnecessary to preserve evidence.

In addition Plaintiff is entitled to mandatory injunctive relief. The Plaintiff requests that the Court enter an order against the County, Windsor and Sheriff Essick mandating the establishment of an independent monitor to report back to this Court compliance with the prohibitions above, and that the monitor be given full access to the records of the County, Windsor and Sheriff Essick to assure such compliance.

**FIRST CAUSE OF ACTION**
**(Violation of Plaintiff's Civil Rights, 42 U.S.C. § 1983,**
**Against Defendants Deputy Sheriff Perkins, Deputy Clegg)**

88.     Plaintiff restates and incorporates by reference the foregoing paragraphs of this complaint as if set forth in full at this point.

89.     This Count is alleged against Defendants Deputy Sheriff Perkins and Deputy Clegg, in their individual capacities, and brought to redress their deprivation of Plaintiff's Fourth and Fourteenth Amendment rights, under color of statute, ordinance, regulation, policy, custom, practice or usage of a right, privilege and immunity secured to these defendants. The Count is based on unreasonable use of deadly force, unreasonable search and seizure, unlawful and false arrest, deprivation of due process rights, and unconstitutional detention.

90.     During all times mentioned herein, the Public Entity Defendants employed these defendants. Said Public Entity Defendants provided these Defendants and their agents with official badges and identification cards which designated and described the bearers as employees of the Public Entity Defendants.

91.     During all times mentioned herein, these Defendants, and each of them, separately and in concert, acted under color and pretense of law under color of the statutes, ordinances, regulations, polices, practices, trainings, customs, and usages of the County of Sonoma, Windsor, and Sheriff Essick.

92.     Each of these Defendants, separately and in concert, have deprived Plaintiff of his civil, constitutional and statutory rights, privileges and immunities secured to him by the Fourth and Fourteenth Amendments to the United States Constitution and by the laws of the United States and are liable to Plaintiff under 42 U.S.C. § 1983.

93.     The foregoing claim for relief arose when, as described above, Defendant Deputy Sheriff Perkins, on July 9, 2019, unlawfully seized and assaulted, battered and seriously injured Plaintiff by throwing a cooperative, confused and fearful Plaintiff to the ground, headfirst, with one arm held behind his back, and then unlawfully arrested Plaintiff, filed a false police report and falsely imprisoned Plaintiff, with the assistance, cooperation, integral participation, and/or supervision of Defendants Deputy Clegg, Admin. Sgt. Kidder, and Sheriff Essick. Each and every Individual Officer Defendant failed to intervene in each other's obviously illegal actions and continued the ongoing deprivation of Plaintiff's civil rights. This alleged conduct constituted excessive, unjustifiable, and unreasonable force in violation of and with deliberate indifference to Plaintiff's constitutional right to be free from unreasonable searches and seizures. By causing the alleged injuries to Mr. McDonald during and after the incident, these actions additionally violated Plaintiff's Fourteenth Amendment rights to substantive due process, right to liberty, right to privacy, and his right to be free from arbitrary and unreasonable government intrusions, as Defendants and each of them unlawfully intruded upon Plaintiff's rights with deliberate indifference, and the injuries and constitutional violations set forth herein were proximately caused by the customs, practices, policies and decisions of the Defendant Sonoma County and Sheriff Essick, including but not limited to, inadequately training and supervising police officers, including Deputy Sheriff Perkins, Deputy Clegg, and Admin. Sgt. Kidder, with respect to the reasonable and proper use of deadly force against civilians generally, and specifically, persons operating motor vehicles and persons present in vehicles.

94.     Specifically, as detailed more above, Deputy Sheriff Perkins's use of unreasonable, excessive force during Plaintiff's welfare check without any reasonable suspicion to detain and/or probable cause to arrest amounted to a violation of Plaintiff's Fourth Amendment rights. Deputy Sheriff Perkins subjected Plaintiff to a highly unusual and excessive amount of force by using a dangerous takedown maneuver that left Plaintiff unconscious, with lacerations and missing teeth, in a pool of his own blood.

95.     Additionally, as detailed more above, Deputy Clegg personally witnessed but failed to intercede/intervene in Deputy Sheriff Perkins's ongoing violation of Plaintiff's Fourth Amendment

1    rights. Instead, Deputy Clegg participated in said violation and caused additional injuries to Plaintiff.

2    Moreover, Deputy Clegg unreasonably deprived Plaintiff with basic human needs and medical

3    assistance while Plaintiff was handcuffed and unable to care for himself at the hospital. This punitive

4    conduct taken toward a non-convicted detainee charged for a minimal offense shocks the conscience

5    and amounts to a violation of Plaintiff's Fourteenth Amendment right to liberty, life, and property.

6        96.    Deputy Sheriff Perkins's and Deputy Clegg's conduct deprived Plaintiff of his right to

7    be free of searches and seizures and deprived him of his right to liberty, life, and property, in

8    violation of the Fourth and Fourteenth Amendments to the United States Constitution. Deputy

9    Sheriff Perkins and Deputy Clegg's conduct also deprived Plaintiff of his right to due process of law,

10   pursuant to the Fourteenth Amendment of the United States Constitution.

11       97.    Deputy Sheriff Perkins and Deputy Clegg acted under color of law by unreasonably

12   using excessive force, subjecting Plaintiff to infringement of certain constitutionally protected rights

13   as are substantively guaranteed by the Fourth and Fourteenth Amendments to the United States

14   Constitution.

15       98.    Plaintiff has been damaged as a result of these Defendants' wrongful acts.

**SECOND CAUSE OF ACTION**
**(Violation of Plaintiff's Civil Rights, 42 U.S.C. § 1983 – *Monell* Action,**
**Against the Public Entity Defendants)**

18       99.    Plaintiff re-alleges all prior paragraphs of this complaint and incorporates the same

19   herein by this reference as if those paragraphs were set forth in full herein.

20       100.   This Count is alleged against Defendants Sonoma County and Windsor for: 1) their

21   own culpable action or inaction in the training, supervision, or control of subordinates; 2) their

22   acquiescence in the constitutional deprivation of which a complaint is made; or 3) for conduct that

23   showed a reckless or callous indifference to the rights of others. These claims are based on the long

24   standing adherence, acquiescence or reckless or callous indifference to the rights of Plaintiff and

25   others in the unconstitutional policies, practices, trainings, supervision, and customs alleged above.

26       101.   As detailed more above, Defendants Sonoma County and Windsor, maintained

27   inadequate customs, policies practices, supervision, and trainings that were likely to lead to the

28

Amended Complaint for the Violation of Civil Rights                                    - 30 -
Case No.: 3:20-cv-04183-WHA

1   violation of individuals' civil rights when officers, such as Deputy Sheriff Perkins and Deputy Clegg,

2   performed their duties. Plaintiff further alleges that the acts and/or omissions alleged in the

3   Complaint herein are indicative and representative of a repeated course of conduct by members of

4   Defendant Sonoma County and Windsor tantamount to a custom, policy or repeated practice of

5   condoning and tacitly encouraging the abuse of police authority, and disregard for the constitutional

6   rights of citizens, such as Plaintiff.

7        102.   Plaintiff is informed and believes and thereon alleges that the acts and/or omissions

8   alleged herein are the legal, proximate, foreseeable and actual result of inadequate and deficient

9   customs, policies, patterns, trainings, supervision, and practices of deliberate indifference by

10   Defendants Sonoma County and Windsor to the repeated violations of the constitutional rights of

11   citizens by Sonoma County and Windsor, which have included, but are not limited to, repeated acts

12   of: using excessive force, unlawful deprivations of civil rights, making false reports, providing false

13   and/or misleading information in causing detentions, arrests, imprisonments and/or malicious

14   prosecutions based on fabricated and/or misleading statements and/or engaging in similar acts of

15   misconduct on a repeated basis and failure to institute and enforce a consistent disciplinary policy

16   and/or early warning system.

17        103.   Plaintiff is further informed and believes and thereon alleges that the acts and/or

18   omissions alleged herein are the proximate result of customs, policies, patterns, trainings,

19   supervision, and practices of deliberate indifference by Defendants Sonoma County and Windsor to

20   the repeated violations of the constitutional rights of citizens by Sonoma County and Windsor, which

21   have included, but are not limited to, using excessive and/or deadly force on a repeated basis.

22        104.   The County, Windsor, and the Sheriff Essick are liable for the damages suffered by

23   Plaintiff as a result of the conduct of their employees, agents, and servants, in that, after learning of

24   their employees' violation of Plaintiff's constitutional rights, they deliberately failed to remedy the

25   wrong; they have created policies, trainings, and customs under which unconstitutional practices

26   occurred and allowed such policies, trainings, and customs to continue, and they have been grossly

27   negligent and deliberately indifferent in managing subordinates who caused unlawful conditions or

28   events.

105.     Significantly, as detailed more above, the County, Windsor, and the Sheriff Essick have allowed the continued use of a dangerous takedown maneuver, have indoctrinated officers with a "survivor's mindset," and have failed to resolve conflicts between highly combative training policies and the Use of Force policy, which has caused and increased the likelihood that officers will continue violating individuals' civil rights and will use excessive force in violation of the Fourth and Fourteenth Amendments. Moreover, the County, Windsor, Sheriff Essick have failed to properly train and supervise officers in the performance of their duties and have failed to adopt/amend policies to remedy existing deficiencies, despite being on repeated notice that ongoing policing customs, practices, and policies were causing constitutional rights violations.

106.     The County, Windsor, and Sheriff Essick have been alerted and have been on notice of the regular use of excessive force and false arrests by its police officers, but have nevertheless exhibited deliberate indifference to such excessive force and false arrests; that deliberate indifference legally, proximately, foreseeably and actually caused the violation of Plaintiff's constitutional rights in this case.

107.     The County, Windsor, and Sheriff Essick have purposefully hid their misconduct by failing to reveal body camera footage and reporting the use of force causing great bodily injury to the Department of Justice as required by statute.

108.     The aforesaid event was not an isolated incident. Upon information and belief the County, Windsor, and Sheriff Essick has been aware that their police officers use excessive force, unlawfully search and seize citizens, bring charges against citizens with no legal basis, perjure themselves in charging instruments and testimony, and fail to intervene in and report the obviously illegal actions of their fellow officers. Nevertheless, these Defendants have allowed policies and practices that allow the aforementioned to persist.

109.     The County, Windsor, and Sheriff Essick have no procedure to notify individual officers or their supervisors of unfavorable judicial review of their conduct. Without this notification, improper search and seizure practices and inaccurate testimony go uncorrected. The County, Windsor, and Sheriff Essick have procedurally and policy-wise isolated their law department from the discipline of police officers, so that civil suits against police officers for actions taken in their

1  capacity as police officers have no impact on the officers' careers, regardless of the outcome of the

2  civil actions. The process to file complaints with Sonoma County or Windsor is not provided to those

3  who are detained or arrested.

4          110.    The County, Windsor, and Sheriff Essick have also purposefully created a fictitious

5  audit function of police behavior to isolate itself from liability or the rage of its citizens.

6          111.    The County, Windsor, and Sheriff Essick are aware that all of the aforementioned has

7  resulted in violations of citizens' constitutional rights. Despite such notice, the County has failed to

8  take corrective action. This failure and these policies caused the officers in the present case to violate

9  Plaintiff's civil rights, without fear of reprisal.

10         112.    Plaintiff has been damaged as a result of the deliberate indifference of the County,

11  Windsor, and the Sheriff's Office to the constitutional rights of the County's inhabitants.

12         113.    The County, Windsor, and Sheriff Essick are liable for the damages suffered by

13  Plaintiff as a result of the conduct of their employees, agents, and servants, in that, after learning of

14  their employees' violation of Plaintiff's constitutional rights, they failed to remedy the wrong; they

15  have created a policy or custom under which unconstitutional practices occurred and allowed such

16  policies or customs to continue, and they have been grossly negligent in managing subordinates who

17  caused the unlawful condition or event. The County, Windsor, and Sheriff Essick have been alerted

18  to the regular use of excessive force and false arrests by its police officers, but have nevertheless

19  exhibited deliberate indifference to such excessive force and false arrests; that deliberate indifference

20  caused the violation of Plaintiff's Fourth and Fourteenth Amendment constitutional rights in this

21  case.

22         114.    The Court should enter an order awarding damages, declaring that Sonoma County's,

23  Windsor's, and Sheriff Essick's past and present conduct illegal and enter injunctive relief to be

24  determined to remedy such illegality going forward.

25

26

27

28

1

2

### THIRD CAUSE OF ACTION
#### (Violation of Plaintiff's Civil Rights, 42 U.S.C. § 1983,
#### Against Supervisory Defendants Sheriff Essick and Admin. Sgt. Kidder)

3

4

115.    Plaintiff re-alleges all prior paragraphs of this complaint and incorporates the same

herein by this reference as if those paragraphs were set forth in full herein.

5

6

116.    This Count is alleged against Defendants Sheriff Essick and Admin. Sgt. Kidder. As

7

detailed more above, these defendants, acting under the color of law, violated Plaintiff's procedural

8

due process rights and rights to life, liberty, and property by detaining him, falsely arresting him, and

9

failing to inform him of the reason he was being detained. Even after the District Attorney

10

determined that they refused to prosecute the action, Plaintiff was not informed and Plaintiff was still

11

required to attend a Court hearing to learn that the charges had been dismissed at the cost of time and

expense to Plaintiff.

12

13

117.    Based on information and belief, it is the custom or policy of Defendants to not

14

inform detainees or those who are arrested of the reasons they have been detained or arrested until

such time as they appear in court, even if they are required to post bail.

15

16

118.    The aforementioned conduct is ongoing and poses and immediate irreparable threat to

the civil rights of every citizen who travels in or through Sonoma County.

17

18

119.    The Individual Officer Defendants' conduct deprived Plaintiff of his right to

19

substantive due process, and were in violation of the Fourth and Fourteenth Amendments to the

United States Constitution.

20

21

120.    Moreover, as discussed in more detail above, Defendants Sheriff Essick and Admin.

22

Sgt. Kidder, as a supervisory authorities in Sonoma County and Windsor, were deliberately

23

indifferent to the adequacy of training policies, and supervision processes which amounted to a

24

failure to train and supervise their subordinates. Despite these defendants having knowledge of

25

ongoing civil rights violations committed by their subordinates, none of these defendants sought to

26

remedy deficient policies that were carried out by their subordinates, better train their subordinates,

27

better supervise their subordinates, and failed to reform ongoing customs and practices in order to

reduce the likelihood of future constitutional violations committed by subordinates.

28

Amended Complaint for the Violation of Civil Rights                                          - 34
Case No.: 3:20-cv-04183-WHA
010930-11/1339481 V2

121.     Additionally, as described more above, Defendants Sheriff Essick and Admin. Sgt. Kidder were integral parts in Deputy Sheriff Perkins and Deputy Clegg's ongoing violation of Plaintiff's Fourth and Fourteenth Amendment rights. Sheriff Essick did not correctly train or supervise his subordinates thereby causing Plaintiff's injuries and violations to Plaintiff's Fourth and Fourteenth Amendment rights. Admin. Sgt. Kidder was an integral part in the violation of Plaintiff's Fourteenth Amendment rights by failing to investigate the circumstances of Plaintiff's arrest and use of force pursuant to written policy and allowed Plaintiff to remain unlawfully detained in jail. Further, Admin. Sgt. Kidder caused Plaintiff's car to be impounded and he signed off and rubberstamped the false arrest report, after presumably reviewing the body camera video pursuant to the Public Entity and Sheriff Essick's policies. Admin. Sgt. Kidder was deliberately indifferent to Plaintiff's circumstances because he was deliberately indifferent to the deficient, ongoing unlawful practices at Sheriff Essick. His actions shock the conscious.

122.     Furthermore, Admin. Sgt. Kidder was an integral part in violating Plaintiff's Fourth Amendment rights in that he is responsible for the supervision and training of Deputy Sheriff Perkins and Deputy Clegg. Had Admin. Sgt. Kidder not acted deliberately indifferent to the training and supervision of these deputies, Admin. Sgt. Kidder could have ensured compliance with more appropriate policing policies, customs, practices, and procedures that would have prevented Plaintiff's injuries and violations to his civil rights during the police encounter with Deputy Sheriff Perkins. His deliberate indifference toward the overall supervision and training of his subordinates shock the conscience.

123.     The Court should enter an order awarding damages, declaring Defendants' conduct to be illegal and enter injunctive relief to be determined to remedy such illegality.

## FOURTH CAUSE OF ACTION
### (Violation of Plaintiff's Civil Rights under California Constitution Against All Defendants)

124.     Plaintiff re-alleges all prior paragraphs of this complaint and incorporates the same herein by this reference as if those paragraphs were set forth in full herein.

125.    This Count is alleged against all Defendants. These claims are based on unreasonable and/or unnecessary use of deadly force, unreasonable search and seizure, unlawful and false arrest, and unconstitutional detention, as well as failure to inform of charges.

126.    Defendants, acting under color of law, violated Plaintiff's rights pursuant to § 7 (the right not be deprived of life, liberty, or property without due process of law or denied equal protection of the laws) and § 13 (the right to be secure against unreasonable seizures and searches) of the California State Constitution.

127.    Notably, among other acts described above, the detention of Plaintiff and requirement that Plaintiff post bail without being notified of the charges against Plaintiff, and the month-long delay in being brought before a magistrate or judge, is unconstitutional and violates Penal Code Section 849. The process is also a denial of equal protection as it impacts the poor and minorities disproportionately.

128.    The unconstitutional conduct alleged herein violated Plaintiff's rights has legally, proximately, foreseeably and actually caused Plaintiff to suffer damages according to proof at the time of trial.

129.    An award of damages, declaratory and injunctive remedy here is necessary to effectuate the purposes of § 7 and § 13 of the California State Constitution, and appropriate to ensure full realization of Plaintiff's rights under those sections.

### FIFTH CAUSE OF ACTION
#### (Negligent Hiring, Retention & Supervision
#### Against Defendant Sheriff Essick)

130.    Plaintiff re-alleges all prior paragraphs of this complaint and incorporates the same herein by this reference as if those paragraphs were set forth in full herein.

131.    This count is alleged against Defendants Sheriff Essick owed a duty of care to Plaintiff to prevent injuries and the loss of liberty and mental abuse sustained by Plaintiff.

132.    Defendant Sheriff Essick owed a duty of care to Plaintiff because under the same or similar circumstances a reasonable, prudent and careful person should have anticipated an injury to Plaintiff or those in a position similar to Plaintiff's as a result of this conduct.

133.    Upon information and belief, Individual Officer Defendants were incompetent and unfit for their positions.

134.    Upon information and belief, Sheriff Essick knew or should have known through exercise of reasonable diligence that the Individual Officer Defendants were potentially dangerous and had previously used excessive force and falsely arrested civilians without probable cause.

135.    Defendant Sheriff Essick negligence in hiring, retaining and supervising the Individual Officer Defendants proximately caused and was a substantial factor in causing Plaintiff's injuries.

136.    Because of the Defendant Sheriff Essick's negligent hiring and retention of Individual Officer Defendants, Plaintiff incurred damages described above.

**SIXTH CAUSE OF ACTION**
**(Negligence**
**Against Defendants Deputy Sheriff Perkins and Deputy Clegg)**

137.    Plaintiff re-alleges all prior paragraphs of this complaint and incorporates the same herein by this reference as if those paragraphs were set forth in full herein.

138.    This Count is alleged against Defendants Deputy Sheriff Perkins and Deputy Clegg. Defendant Deputy Sheriff Perkins and Deputy Clegg owed Plaintiff a duty of care in carrying out their officer responsibilities in a reasonable manner.

139.    Defendants Deputy Sheriff Perkins and Deputy Clegg breached the duty of care required of law enforcement officers when performing welfare checks, by detaining and unlawfully using force on Plaintiff without regard for his health and safety.

140.    As a direct and proximate cause of Defendants' actions and orders, Plaintiff suffered the injuries described herein.

**SEVENTH CAUSE OF ACTION**
**(Intentional Infliction of Emotional Distress**
**Against Defendant Deputy Sheriff Perkins)**

141.    Plaintiff re-alleges all prior paragraphs of this complaint and incorporates the same herein by this reference as if those paragraphs were set forth in full herein.

142.    This Count is alleged against Defendant Deputy Sheriff Perkins. It is also alleged against all other Defendants to the extent to which is a known custom, training, practice, or policy, as it is well known that the results of the above actions causes emotional harm.

143.    Defendants' above-described conduct was illegal, extreme, unreasonable, and outrageous. Plaintiff did not consent to the conduct.

144.    In engaging in the above-described conduct, Defendants intentionally caused and/or ignored or recklessly disregarded the probable or foreseeable risk that Plaintiff would suffer extreme emotional distress as a result.

145.    Plaintiff has in fact suffered severe emotional distress as a result of the actions described herein.

146.    As a direct and proximate cause of the above described conduct, Plaintiff suffered severe emotional distress and was harmed. Defendants' conduct was a substantial factor in causing Plaintiff's severe emotional distress.

## EIGHTH CAUSE OF ACTION
### (Battery
### Against Defendant Deputy Sheriff Perkins)

147.    Plaintiff re-alleges all prior paragraphs of this complaint and incorporates the same herein by this reference as if those paragraphs were set forth in full herein.

148.    This Count is alleged against Defendant Deputy Sheriff Perkins. Defendant Deputy Sheriff Perkins touched Plaintiff, as described above with the intent to harm or offend Plaintiff. Alternatively, Defendant Deputy Sheriff Perkins used unreasonable, excessive force in touching Plaintiff.

149.    Plaintiff did not consent to the touching.

150.    Plaintiff was harmed or offended by Defendant Deputy Sheriff Perkins's conduct.

151.    The above-described conduct and/or the unreasonable force was a substantial factor in causing Plaintiff's harm.

152.    As a direct and proximate result of Defendant Deputy Sheriff Perkins's actions, Plaintiff suffered damages in the amount to be proven at trial.

1

2

**NINTH CAUSE OF ACTION**
**(False Arrest and Imprisonment**
**Against the Individual Officer Defendants)**

3

4

153.    Plaintiff re-alleges all prior paragraphs of this complaint and incorporates the same

herein by this reference as if those paragraphs were set forth in full herein.

5

6

154.    This Count is alleged against the Individual Officer Defendants. These claims are

based on unlawful and false arrest, and unconstitutional detention.

7

8

9

155.    Plaintiff was falsely and/or fraudulently arrested by Defendants, without a warrant

and/or probable cause. Alternatively, Deputy Sheriff Perkins intentionally deprived Plaintiff of his

freedom of movement by use of force.

10

11

156.    The arrest and/or confinement described above compelled Plaintiff to be imprisoned

by Defendants for some appreciable time.

12

157.    Plaintiff was actually harmed by the arrest and/or confinement described above.

13

14

158.    Individual Officer Defendants' conduct was a substantial factor in causing Plaintiff's

harm.

15

16

159.    As a direct and proximate result of Individual Officer Defendants' actions, Plaintiff

suffered damages in the amount to be proven at trial.

17

18

**TENTH CAUSE OF ACTION**
**(Unreasonable Seizure**
**Against Defendant Deputy Sheriff Perkins and Does 1-50)**

19

20

160.    Plaintiff re-alleges all prior paragraphs of this complaint and incorporates the same

herein by this reference as if those paragraphs were set forth in full herein.

21

22

161.    This Count is alleged against the Individual Defendants. These claims are based on

the unreasonable search and seizure of Plaintiff's automobile and possessions.

23

24

162.    Deputy Sheriff Perkins and other unnamed officers of the Sonoma County Sheriff's

Office searched Plaintiff's automobile without a warrant and/or probable cause. Even if Defendants

25

26

did have probable cause, they found no contraband or illegal substance. Moreover, no reasonable

suspicion existed for Plaintiff to be detained or subjected to the use of force. Subsequent to this

27

28

Amended Complaint for the Violation of Civil Rights                                          - 39
Case No.: 3:20-cv-04183-WHA
010930-11/1339481 V2

1    finding, Defendant directed and were responsible for Plaintiff's vehicle being towed and put into

2    storage.

3       163.   Plaintiff requested the return of the car, but was denied being informed that Plaintiff

4    had to pay more than the car was worth. Plaintiff's car remains in Defendants' possession and

5    therefore Plaintiff was harmed by the seizure.

6       164.   As a direct and proximate result of Defendants' actions, Plaintiff suffered damages in

7    the amount to be proven at trial.

8    **ELEVENTH CAUSE OF ACTION**
     **(Violation of Cal. Civ. Code § 52.1, *Bane* Civil Rights Act Claim,**
9    **Against Defendant Deputy Sheriff Perkins)**

10      165.   Plaintiff re-alleges all prior paragraphs of this complaint and incorporates the same

11   herein by this reference as if those paragraphs were set forth in full herein.

12      166.   This Count is alleged against Defendant Deputy Sheriff Perkins. These claims are

13   based on Defendant Deputy Sheriff Perkins's interference with Plaintiff's legal and civil rights by

14   threats, intimidation and/or coercion of Plaintiff.

15      167.   Defendant Deputy Sheriff Perkins intentionally interfered with Plaintiff's legal rights

16   when he forcefully attempted to handcuff Plaintiff, threatened violence against Plaintiff when he

17   yelled, "Don't F*****g do that again," pulled on Plaintiff's arm, and threw Plaintiff face first into

18   the ground, holding one hand behind his back.

19      168.   Defendant Deputy Sheriff Perkins acted violently against Plaintiff. Alternatively,

20   Defendant Deputy Sheriff Perkins had no probable cause to arrest Plaintiff. Plaintiff also had no legal

21   obligation to allow himself to be handcuffed.

22      169.   Defendant Deputy Sheriff Perkins's threats caused Plaintiff to reasonably believe that

23   if he exercised his right defend himself against such violence, Defendant Deputy Sheriff Perkins

24   would commit violence against him and his property and that Defendant Deputy Sheriff Perkins had

25   the ability to carry out the threat.

26

27

28

170.     Defendant Deputy Sheriff Perkins did and intended to commit the above-mentioned act to prevent Plaintiff from protecting himself and/or to retaliate against Plaintiff for having exercised his right to defend himself from Defendant Deputy Sheriff Perkins.

171.     Defendant Deputy Sheriff Perkins's conduct directly and proximately caused and was a substantial factor in causing the above-mentioned harm to Plaintiff.

172.     As a direct and proximate cause of Defendant Deputy Sheriff Perkins's actions, Plaintiff suffered damages in the amount to be proven at trial.

### TWELFTH CAUSE OF ACTION
**(Violation of Cal. Civ. Code § 52.1, *Bane* Civil Rights Act Claim, Against the Public Entity Defendants and Defendant Sheriff Essick)**

173.     Plaintiff re-alleges all prior paragraphs of this complaint and incorporates the same herein by this reference as if those paragraphs were set forth in full herein.

174.     This Count is alleged against Defendants Sonoma County, Windsor, and Sheriff Essick.

175.     Defendants Sonoma County, Windsor, and Sheriff Essick aided, incited and conspired Defendant Deputy Sheriff Perkins to use violence, intimidation or coercion against residents of the County of Sonoma or persons passing through, even where no probable cause for arrest exists. Alternatively, Sonoma County, Windsor, and Sheriff Essick condone through policy, practice or custom, the use of threats, intimidation, or coercion, or attempts to interfere by threat, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state.

176.     Defendants' conduct substantially caused the above pled harm to Plaintiff, and is a pattern or practice of conduct that continues.

177.     As a direct and proximate result of Defendants' actions, Plaintiff suffered damages in the amount to be proven at trial.

**THIRTEENTH CAUSE OF ACTION**
(Violation of Cal. Civ. Code § 51.7, 52(b), *Ralph* Civil Rights Act Claim,
Against Defendant Deputy Sheriff Perkins)

178.    Plaintiff re-alleges all prior paragraphs of this complaint and incorporates the same herein by this reference as if those paragraphs were set forth in full herein.

179.    This Count is alleged against Defendant Deputy Sheriff Perkins. These claims are based on Defendant Deputy Sheriff Perkins's acts of threats of violence and violence against Plaintiff because of Plaintiff's status as an African American man.

180.    Defendant Deputy Sheriff Perkins threatened violence and committed a violent act against Plaintiff when he forcefully attempted to handcuff Plaintiff, yelled, "Don't F*****g do that again," pulled on Plaintiff's arm, and threw Plaintiff face first into the ground, holding one hand behind his back. Defendant Deputy Sheriff Perkins then unlawfully restrained and imprisoned Plaintiff.

181.    Defendant Deputy Sheriff Perkins acted violently against Plaintiff because of Plaintiff's race. Alternatively, Defendant Deputy Sheriff Perkins had no probable cause to arrest Plaintiff. Plaintiff also had no legal obligation to allow himself to be handcuffed.

182.    A substantially motivating reason for Defendant Deputy Sheriff Perkins conduct was his perception of Plaintiff's race.

183.    A reasonable person in Plaintiff's position would have believed that Defendant Deputy Sheriff Perkins would carry out his threat.

184.    A reasonable person in Plaintiff's position would have been intimidated by Defendant Deputy Sheriff Perkins's conduct.

185.    Plaintiff was harmed.

186.    Defendant Deputy Sheriff Perkins conduct was a substantial factor in causing the above-mentioned harm to Plaintiff.

## FOURTEENTH CAUSE OF ACTION
### (Violation of Cal. Civ. Code § 51.7, 52(b), *Ralph* Civil Rights Act Claim, Against the Public Entity Defendants and Defendant Sheriff Essick)

187.    Plaintiff re-alleges all prior paragraphs of this complaint and incorporates the same herein by this reference as if those paragraphs were set forth in full herein.

188.    This Count is alleged against Defendants Sonoma County, Windsor and Sheriff Essick.

189.    Defendants Sonoma County, Windsor, and Sheriff Essick aided, incited and conspired Defendant Deputy Sheriff Perkins to use violence, intimidation or coercion against African-American and other minority residents of the County of Sonoma or persons passing through, and Plaintiff in particular.

190.    Defendants' intentional conduct caused the above pled harm to Plaintiff, and is a pattern or practice of conduct that continues.

191.    As a direct and proximate result of Defendants' actions, Plaintiff suffered damages in the amount to be proven at trial.

## FIFTEENTH CAUSE OF ACTION
### (*Respondeat Superior* - State Law Claims, Cal. Gov. Code § 815.2(a), Against Public Entity Defendants)

192.    Plaintiff re-alleges all prior paragraphs of this complaint and incorporates the same herein by this reference as if those paragraphs were set forth in full herein.

193.    This Count is alleged against Defendants Sonoma County Windsor, and Sheriff Essick.

194.    Individual Defendants' intentional tortious acts were undertaken within the scope of their employment by Defendant Sonoma County, Windsor, and Sheriff Essick, and in furtherance of the Defendant County of Sonoma, Windsor and Sheriff Essick's interest.

195.    As a result of Individual Defendants' tortious conduct in the course and within the scope of their employment with Defendant Sonoma County, Windsor, and Sheriff Essick, Plaintiff suffered damages in the amount to be proven at trial.

196. Defendants are liable for Plaintiff's state law claims under the theory of *respondeat superior* under California Government Code, section 815.2.

## VII.    PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against the Defendants, jointly and severally, as follows:

**A.**    General damages in a sum to be determined by proof;

**B.**    Special damages, including but not limited to, past, present and/or future wage loss, income and support, medical expenses, physical pain and mental suffering and other special damages in a sum to be determined according to proof;

**C.**    Punitive damages and exemplary damages in amounts to be determined according to proof.

**D.**    Reasonable attorneys' fees, costs and disbursements of this action, including pursuant to 42 U.S.C. § 1988;

**E.**    Statutory damages and reasonable attorney's fees for violation of Cal. Civ. Code §§ 52 and 52.1;

**F.**    Punitive damages up to three times actual damages ($4,000 minimum) against Defendant agents and/or officers, $25,000.00 for each offense and reasonable attorney's fees, for violation of Cal. Civ. Code § 52(b);

**G.**    Cost of suit herein incurred;

**H.**    Prejudgment interest;

**I.**    Declaratory and injunctive relief; and

**J.**    Such other and further relief as the Court deems just and proper.

### JURY DEMAND

Plaintiff demands a trial by jury.

DATED: September 8, 2020

Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

By  */s/ Reed. R. Kathrein*

Reed R. Kathrein (139304)
Wesley A. Wong (314652)
715 Hearst Avenue, Suite 202
Berkeley, CA  94710
Telephone: (510) 725-3000
Facsimile:  (510) 725-3001
reed@hbsslaw.com
wesleyw@hbsslaw.com

Steve W. Berman
Jacob P. Berman (327179)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile:  (206) 623-0594
steve@hbsslaw.com
jakeb@hbsslaw.com

*Counsel for Plaintiff La'Marcus McDonald*