United States District Court
Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

LA'MARCUS MCDONALD,

          Plaintiff,

    v.

COUNTY OF SONOMA, et al.,

          Defendants.

Case No.  20-cv-04183-CRB

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

Plaintiff La'Marcus McDonald brings this private right of action against County of Sonoma, Town of Windsor, Sheriff Mark Essick, Deputy Sheriff ("DS") Travis Perkins, Administrative Sergeant ("Adm. Sgt.") Brent Kidder, and Deputy Gregory Clegg (collectively "Defendants") for various violations of California and Federal civil rights laws.  See generally First Amended Complaint ("FAC") (dkt. 15).  McDonald alleges that DS Perkins and Deputy Clegg unlawfully arrested, used excessive force, and searched McDonald in violation of the Fourth and Fourteenth Amendments, as well as article I, sections 7 and 13 of the California Constitution.  See id. ¶¶ 88–98.  McDonald also alleges that Sonoma County, Town of Windsor, Sheriff Essick, and Adm. Sgt. Kidder effectively acquiesced to and condoned ongoing constitutional violations.  See Opp. (dkt. 29) 8–15.  Defendants now move to dismiss for failure to state a claim.  See generally MTD (dkt 21).  After carefully considering the parties' briefs and oral argument, the Court hereby DENIES Defendants' motion to dismiss, with the sole exception of McDonald's request for injunctive relief.

United States District Court
Northern District of California

# I.    BACKGROUND

## A.    Factual Background

Around 8:34 PM on July 9, 2019, Sonoma County Sheriff Deputies, acting as contracted officers for the Windsor Police Department, responded to a welfare check of La'Marcus McDonald, a Black Sonoma County resident, sleeping alone in a parked car.[1]  See FAC ¶¶ 33–34. Andrew Chambers drove past McDonald and called 9-1-1 to request that an officer check on McDonald's welfare—Chambers suspected that McDonald might have overdosed.  See id. ¶ 33. DS Perkins arrived on scene first and found McDonald asleep in the car with the door open.  See id. ¶ 32.  The vehicle was legally parked, with the ignition off.  See id. ¶ 34.  DS Perkins prodded McDonald awake and reached into the car to take a comb out of McDonald's hair.  See id. ¶¶ 35–36.  When McDonald woke up, DS Perkins asked him if he had consumed any alcohol or drugs. See id. ¶¶ 34–38.  McDonald stated that he had drank alcohol earlier that night.  See id. ¶ 39.  DS Perkins then asked McDonald to step out of the car and turn around—McDonald complied.  See id. ¶ 40.

The parties dispute what occurred next.  The Incident Report[2] states that McDonald tensed up after DS Perkins grabbed his right arm, at which point the officer employed a takedown maneuver to bring McDonald to the ground.  Id. ¶ 44 (citing FAC, Ex A (dkt. 15-2)).  McDonald alleges that DS Perkins, without warning, grabbed McDonald's right arm in an effort to handcuff McDonald.  See id. ¶¶ 40–42.  After DS Perkins grabbed McDonald's arm, McDonald only remembers "waking up bloodied, face first on the ground with pain in his head and mouth."  Id. ¶ 43.  McDonald watched the body camera footage once in the presence of a police officer and observed DS Perkins say "Don't f*****g do that again," just before he slammed McDonald headfirst into the pavement rendering him unconscious and breaking several teeth.  Id. ¶ 44 (citing FAC, Ex A).

---

[1] McDonald resided with his mother, but his mother was in the process of being evicted from her residence.  See FAC ¶ 32.  McDonald's friend allowed McDonald to sleep in the friend's car, after McDonald's mother's landlord said that McDonald was too old to live in the development.  See id.
[2] McDonald describes the incident report as "false," and asserts that it omits important details. FAC ¶¶ 40 n.2, 44.

Deputy Clegg and the paramedics arrived as DS Perkins attempted to handcuff McDonald and witnessed DS Perkins slam McDonald to the pavement.  See id. ¶ 46.  Both officers then searched McDonald and the car for contraband but found nothing.[3]  See id.  The ambulance then transported McDonald, handcuffed while wearing a spit hood, to the hospital.  See id. ¶ 47.  Over the course of several hours, Deputy Clegg refused to provide McDonald with water.  See id.  After being discharged from the hospital, the officers transported McDonald to the county jail without telling McDonald that he was under arrest or charged with anything.  See id. ¶ 48.  On or around July 12, 2019, the District Attorney refused to press charges against McDonald, yet McDonald remained in jail until his relatives bailed him out.  See id. ¶ 49.[4]  The officers also impounded the car that McDonald slept in, and it remained impounded as of September 8, 2020.

McDonald requested the police body cam footage, but Sonoma County refused to provide him with a copy.  See id. ¶ 13.  The County did permit McDonald to watch the footage in the Sonoma County Sheriff's office with presence of a police officer.  See id.  However, Sonoma County recently released the footage to McDonald.  See Opp. at 4.

### B.    Defendants' Motion to Dismiss

McDonald requests general damages, special damages, punitive and exemplary damages, attorneys' fees and costs, statutory damages, costs incurred, prejudgment interest, and declaratory and injunctive relief.  See FAC ¶ 196.  McDonald premises his requested relief on fifteen causes of action:

Count I.      Section 1983 Claim Against DS Perkins and Deputy Clegg for violations of McDonald's Fourth and Fourteenth Amendment Rights.  See id. ¶ 88.

Count II.     Section 1983 Claim Against All Public Entity Defendants (Sonoma and Windsor counties) as a Monell Action, i.e., supervising the violations of McDonald's Fourth and Fourteenth Amendment Rights.  See id. ¶ 99.

---

[3] According to the incident report, the officers found several bottles of alcohol, including one empty bottle.  See FAC, Ex. A.
[4] The FAC does not state how long Plaintiff stayed in jail.

<table>
<tr><td>Count III.</td><td>Section 1983 Against Supervisory Defendants Sheriff Essick and Adm. Sgt. Kidder for violations of McDonald's Fourth and Fourteenth Amendment Rights.  <u>See</u> <u>id.</u> ¶ 115.</td></tr>
<tr><td>Count IV.</td><td>Claims Against all Defendants under Article I, Sections 7 and 13 of the California Constitution.  <u>See</u> <u>id.</u> ¶ 124.</td></tr>
<tr><td>Count V.</td><td>Negligent Hiring and Supervision Claim Against Sheriff Essick.  <u>See</u> <u>id.</u> ¶ 130.</td></tr>
<tr><td>Count VI.</td><td>Negligence Claim Against DS Perkins and Deputy Clegg.  <u>See</u> <u>id.</u> ¶ 137.</td></tr>
<tr><td>Count VII.</td><td>Intentional Infliction of Emotional Distress Claim Against DS Perkins.  <u>See</u> <u>id.</u> ¶ 141.</td></tr>
<tr><td>Count VIII.</td><td>Battery Claim Against DS Perkins.  <u>See</u> <u>id.</u> ¶ 147.</td></tr>
<tr><td>Count IX.</td><td>False Arrest and Imprisonment Claim Against all Individual Officers.  <u>See</u> <u>id.</u> ¶ 153.</td></tr>
<tr><td>Count X.</td><td>Unreasonable Seizure of McDonald's Car Against DS Perkins and Does 1–50. <u>See</u> <u>id.</u> ¶ 160.</td></tr>
<tr><td>Count XI.</td><td>Bane Civil Rights Act Claim, Cal. Civ. Code § 52.1, Against DS Perkins.  <u>See</u> <u>id.</u> ¶ 165.</td></tr>
<tr><td>Count XII.</td><td>Bane Civil Rights Act Claim Against Sheriff Essick and Public Entities.  <u>See</u> <u>id.</u> ¶ 173.</td></tr>
<tr><td>Count XIII.</td><td>Ralph Civil Rights Act Claim, Cal. Civ. Code § 51.7, 52(b), Against DS Perkins.  <u>See</u> <u>id.</u> ¶ 178.</td></tr>
<tr><td>Count XIV.</td><td>Ralph Civil Rights Act Claim Against the Public Entity Defendants and Sheriff Essick.  <u>See</u> <u>id.</u> ¶ 187.</td></tr>
<tr><td>Count XV.</td><td><u>Respondeat Superior</u> State Law Claim, Cal. Gov. Code § 815.2(a), Against Public Entity Defendants.  <u>See</u> <u>id.</u> ¶ 192.</td></tr>
</table>

On September 19, 2020, County of Sonoma, Town of Windsor, Sheriff Essick, DS Perkins, Adm. Sgt. Kidder, and Deputy Clegg filed a motion to dismiss several of McDonald's claims. <u>See, e.g.</u>, MTD.

4

## II.    LEGAL STANDARD

Dismissal is proper where the complaint fails to "state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); see also Fed. R. Civ. P. 8(a)(2).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); see also Fed. R. Civ. P. 12(b)(6).  A court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party."  Usher v. City of L.A., 828 F.2d 556, 561 (9th Cir. 1987).  A court need not, however, "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001); see also Twombly, 550 U.S. at 555 ("[A] formulaic recitation of the elements of a cause of action will not do . . . .").

## III.    DISCUSSION

Defendants move to dismiss several causes of action.  The Court addresses each in turn below.

### A.    DS Perkins and Deputy Clegg: Fourth and Fourteenth Amendment Violations (Count I).

McDonald alleges that DS Perkins and Deputy Clegg violated his Fourth Amendment and Fourteenth Amendment substantive due process rights, which gives rise to liability under 42 U.S.C. § 1983.  See FAC ¶¶ 88–98.  Section 1983 "provides a cause of action for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States."  Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983).  Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred.  See Graham v. Connor, 490 U.S. 386, 393–94 (1989).  To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a person violated a right secured by the Constitution or laws of the United States and (2) that said

person acted under the color of state law when they committed the alleged violation.  See West v.

Atkins, 487 U.S. 42, 48 (1988); Ketchum v. Alameda Cnty., 811 F.2d 1243, 1245 (9th Cir. 1987).

McDonald's claim hinges on whether he agrees with the incident report's assertion that he

"tensed up his body and attempted to pull his right arm" away when DS Perkins attempted to

handcuff him—conduct that may constitute "resisting arrest." FAC, Ex. A at 7.  McDonald denies

the veracity of incident report, including the allegation that he resisted arrest.  See, e.g., id. ¶ 40

n.2; see also Opp. at 22 ("[P]laintiff was not resisting and was cooperating with Perkins's unlawful

detention.").[5]  The Court must therefore presume that McDonald did not resist arrest.

### 1.    Fourth Amendment Right: Unlawful Arrest.

DS Perkins plausibly violated the Fourth Amendment when he arrested[6] McDonald.  See

id. ¶¶ 93, 94.  "[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment

where there is probable cause to believe that a crime has been or is being committed." Devenpack

v. Alford, 543 U.S. 146, 152 (2004).  "It is well established that 'an arrest without probable cause

violates the Fourth Amendment and gives rise to a claim for damages under § 1983.'" Rosenbaum

v. Washoe Cnty., 663 F.3d 1071, 1076 (9th Cir. 2011) (quoting Borunda v. Richmond, 885 F.2d

1384, 1391 (9th Cir.1988)).  "Whether probable cause exists depends upon the reasonable

---

[5] "Plaintiff does not admit that facts asserted in the incident report are truthful other than to use the Incident Report as admissions of Defendants where relevant to Plaintiff's case.  For instance, having been denied access to the video tapes, and other evidence, Plaintiff believes he was entirely in his car, did not attempt to move around in the car and did not attempt to pull his right arm out of Deputy Sheriff Perkins's grasp." FAC ¶ 40 n.2.

[6] McDonald alleges that DS Perkins "unlawfully and sought to and did detain Plaintiff without a reasonable suspicion that a crime had actually taken place or would occur." FAC ¶ 4.  However, McDonald told DS Perkins that he had consumed alcohol earlier, and the incident report notes that DS Perkins ordered McDonald out of the car after he smelled alcohol and observed an empty container under McDonald's back.  See id. ¶ 39, Ex. A at 7.  Even if the Court excludes the incident report as untrue, see FAC ¶ 40 n.2, courts have concluded that reasonable suspicion exists when suspects admit that they have consumed alcohol.  See Vondrak v. City of Las Cruces, 535 F.3d 1198, 1207 (10th Cir. 2008) ("Vondrak's statement that he 'had one beer three hours ago' provided McCants with reasonable suspicion to conduct the field sobriety tests, or at the very least provided her with 'arguable reasonable suspicion' entitling her to qualified immunity." (internal citations omitted)); United States v. Slater, 411 F.3d 1003, 1004, 1006 (8th Cir.2005) ("Jones's admission that he had been drinking earlier that evening gave Officer Perry reasonable suspicion to extend the stop while Jones completed the sobriety tests.").  Thus, DS Perkins could reasonably suspect that McDonald was intoxicated in violation of California's disorderly conduct laws.  See Cal. Penal Code § 647(f) (West 2020).

1   conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." Id.

2   "An officer who observes criminal conduct may arrest the offender without a warrant, even if the

3   pertinent offense carries only a minor penalty." Tatum v. City and Cnty. of San Francisco, 441

4   F.3d 1090, 1094 (2006).

5        The Court must resolve all factual disputes in favor of the McDonald. See Brayton

6   Purcell LLP v. Recordon & Recordon, 606 F.3d 1124, 1127 (9th Cir. 2010).  Because McDonald

7   contests the accuracy of DS Perkins's incident report, the Court must adopt McDonald's narrative,

8   including the allegation that McDonald never resisted DS Perkins's attempt to arrest him.  Thus,

9   DS Perkins lacked probable cause to arrest McDonald for resisting arrest. See, e.g., Vilchis v.

10   City of Bakersfield, 1:10–cv–00893 LJO JLT, 2012 113747, at *9 (C.D. Cal. Jan. 13, 2012)

11   ("Because Plaintiff has presented evidence that he . . . never resisted arrest, the Court must adopt

12   Plaintiff's version of events for purposes of this motion.  Under that factual scenario, Officer

13   Lewis had no probable cause to arrest Plaintiff.  Therefore, Officer Lewis' motion . . . must be

14   DENIED.").

15        Defendants argue that DS Perkins also had probable cause to arrest McDonald for

16   disorderly conduct.  See MTD at 18, 18 n.5 (citing Cal. Penal Code § 647(f) (West 2020)).

> [E]very person who commits any of the following acts is guilty of
> disorderly conduct, a misdemeanor: . . . (f) Who is found in any
> public place under the influence of intoxicating liquor . . . in a
> condition that they are unable to exercise care for their own safety or
> the safety of others, or by reason of being under the influence of
> intoxicating liquor . . . interferes with or obstructs or prevents the
> free use of any street, sidewalk, or other public way.

21   Cal. Penal Code § 647(f).  Section 647(f) consists of four elements: "the arrestee is (1) intoxicated

22   (2) in a public place and either (3) is unable to exercise care for [her] own safety or the safety of

23   others or (4) interferes with or obstructs or prevents the free use of any street, sidewalk, or public

24   way." People v. Lively, 10 Cal. App. 4th 1364, 1368–69 (1992).

25        Defendants argue that the following facts support probable cause to arrest McDonald for

26   disorderly conduct: (1) a witness drove past McDonald, called the police, and stated that he

27   believed McDonald had overdosed; (2) DS Perkins found McDonald asleep; (3) McDonald

28   admitted that he had consumed alcohol earlier that night; (4) McDonald seemed disoriented; and

United States District Court
Northern District of California

(5) the car door was open. <u>See</u> MTD at 18. But DS Perkins did not arrest McDonald for violating section 647(f), let alone conduct any field sobriety tests to determine if McDonald was intoxicated. <u>See</u> FAC ¶ 41. Further, McDonald allegedly complied—albeit slowly—with DS Perkins's commands. <u>See id.</u> ¶¶ 41, Ex. A at 7. Unfortunately, it has become all too common in the Bay Area for homeless people to use cars as shelter to sleep, a fact that does not support Defendants' probable cause theory. While these facts may provide an officer with reasonable suspicion to detain a suspect for public intoxication, <u>see</u> <u>supra</u> note 6, they do not rise to the requisite level of probable cause. <u>See</u> <u>U.S. v. Brown</u>, 401 F.3d 588, 597 (4th Cir. 2005) (concluding that an arrest for public intoxication "based solely on glassy, bloodshot eyes and the strong smell of alcohol" was not supported by probable cause). As a result, DS Perkins did not have probable cause to arrest McDonald.

### 2. Fourth and Fourteenth Amendment: Excessive Force.

Defendants argue that McDonald has not alleged a Fourth Amendment claim because the FAC lacks any allegation that DS Perkins used "deadly force" against McDonald. <u>See</u> MTD at 18–19. An excessive force claim can only be analyzed under the Fourth Amendment, so the Court must analyze McDonald's excessive force claim under the Fourth, not Fourteenth, Amendment.[7] <u>See</u> <u>Graham</u>, 490 U.S. at 394–95; <u>Fontana v. Haskin</u>, 262 F.3d 871, 881–82 (9th Cir. 2001). "[A] constitutional complaint of excessive force arises under the Fourth Amendment and constitutes a claim concerning the overall reasonableness of a seizure." <u>Velazquez v. City of Long Beach</u>, 793 F.3d 1010, 1025 (9th Cir. 2015). "[T]here are no per se rules in the Fourth Amendment excessive force context; rather, courts 'must still slosh [their] way through the factbound morass of 'reasonableness.'" <u>Mattos v. Agarano</u>, 661 F.3d 433, 441 (9th Cir.2011) (en banc) (alteration in original) (quoting <u>Scott v. Harris</u>, 550 U.S. 372, 383 (2007)). To assess the "reasonableness" of a law enforcement officer's conduct, courts first consider the "nature and quality of the alleged

---

[7] This includes McDonald's claim that Deputy Clegg violated McDonald's substantive due process rights when Deputy Clegg deprived McDonald of water. <u>See</u> FAC ¶¶ 47–48; <u>see also</u> <u>Pierce v. Multnomah Cnty., Or.</u>, 76 F.3d 1032, 1042–43 (9th Cir. 1996) (concluding that the Fourth Amendment continues to govern an arrestee's detention before they appear for an arraignment or probable cause hearing).

intrusion," then turn to the governmental interests at stake: "(1) how severe the crime at issue is, (2) whether the suspect posed an immediate threat to the safety of the officers or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight."  Id.

Assuming the allegations in the FAC to be true, DS Perkins allegedly slammed a compliant McDonald to the pavement, knocking him and several of his teeth out in the process.  See FAC ¶¶ 44–45.  Not only does DS Perkins's conduct severely intrude on McDonald's Fourth Amendment rights, but none of the countervailing factors support the government's interests.  See, e.g., Santos v. Gates, 287 F.3d 846, 853–54 (9th Cir. 2002) (concluding that the police officers who gently shoved a suspect to the ground severely invaded the suspect's Fourth Amendment rights because he suffered a broken back and temporary immobility).  First, disorderly conduct via public intoxication does not constitute a "severe crime."  Id. at 854.  Second, neither the FAC nor incident report suggest that McDonald posed a threat to DS Perkins.  Third, McDonald denies resisting arrest.  See FAC ¶¶ 40 n.2, 43.  Thus, the nature of the intrusion disproportionately outweighs the government's interest, which demonstrates that DS Perkins's alleged conduct constituted excessive force in violation of McDonald's Fourth Amendment rights.  See, e.g., Santos, 287 F.3d at 854–55.

### 3.    Fourth Amendment: Unlawful Search.

Officers must have probable cause to conduct a search incident to arrest.  See Chimel v. California, 395 U.S. 752, 762–63 (1969); Maryland v. Dyson, 527 U.S. 465, 467 (1999).  As determined above, DS Perkins lacked probable cause to arrest McDonald, therefore DS Perkins and Deputy Clegg lacked probable cause to search McDonald.  See supra III.A.1.  McDonald may therefore proceed with his § 1983 unlawful search claim against DS Perkins and Deputy Clegg.

### B.    Section 1983 Claims Against Sheriff Essick, Sergeant Kidder, and Deputy Clegg (Counts I & III).

McDonald argues that Sheriff Essick, Sergeant Kidder, and Deputy Clegg "were each knowingly and actively involved in the decisions that led to McDonald's illegal search, false arrest and cover-up," and should therefore be liable for damages and injunctive relief under § 1983.

United States District Court
Northern District of California

1   Opp. at 11; see also FAC ¶¶ 5–17.  McDonald plausibly alleges that, as supervisors, Sheriff Essick

2   and Adm. Sgt. Kidder acted with deliberate indifference to ongoing constitutional violations

3   within the department.  McDonald also plausibly alleges that Deputy Clegg participated in and

4   failed to stop DS Perkins' allegedly unlawful conduct, which gives rise to liability under § 1983.

5               **1.      Sheriff Essick (Count III).**

6       McDonald argues that the Court can impose liability on Sheriff Essick under three theories

7   of § 1983: (1) integral participant doctrine; (2) duty to intercede; and (3) supervisory liability.  See

8   Opp. at 8, 12, 15.  While McDonald's first two theories fail, McDonald alleges a cognizable

9   supervisory liability claim.

10              **a.      Integral Participant.**

11      A plaintiff may assert a § 1983 claim against officers who did not directly cause the

12  constitutional violation but served as integral participants in the unlawful conduct.  See Boyd v.

13  Benton Cnty., 374 F.3d 774, 780 (9th Cir. 2004).  To assert a § 1983 claim under the integral

14  participant doctrine, the defendant's role must exceed the role of a bystander but need not rise to

15  the level of a constitutional violation.  See Reynaga Hernandez v. Skinner, 969 F.3d 930, 941 (9th

16  Cir. 2020) (citing Bravo v. City of Santa Maria, 665 F.3d 1076, 1090 (9th Cir. 2011)).

17  McDonald's allegations fail to show that Sheriff Essick planned, participated in, or assisted DS

18  Perkins's unlawful conduct, and as a result, McDonald's integral participant claim fails.

19      McDonald alleges that Sheriff Essick failed to properly train and supervise his subordinate

20  officers, condoned unlawful uses of excessive force in other cases, and implemented policies to

21  immunize officers from liability for unlawful arrests and batteries.  See FAC ¶¶ 51, 54, 57–77.

22  These failures, McDonald argues, caused deputies like DS Perkins to violate suspects'

23  constitutional rights.  See Opp. at 13.  But McDonald cites no case that recognizes an integral

24  participant theory based on policies alone.  See, e.g., Opp. at 13.  Defendants correctly note that

25  the Ninth Circuit has only found integral-participant liability against officers who planned or

26  physically participated in the specific violation.  See MTD at 9 (citing Boyd, 374 F.3d at 780).

27  Thus, McDonald cannot proceed with his integral participant claim absent allegations that Sheriff

28

United States District Court
Northern District of California

Essick somehow participated in the unlawful conduct.  See Blankenhorn v. City of Orange, 485 F.3d 463, 487 n.12 (9th Cir. 2007) (concluding that an officer who arrived after the use of excessive force did not participate in the unlawful conduct).

### b.    Duty to Intercede.

"[P]olice officers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen."  United States v. Koon, 34 F.3d 1416, 1447 n.25 (9th Cir. 1994), rev'd in part on other grounds by 518 U.S. 81 (1996).  "Importantly, however, officers can be held liable for failing to intercede only if they had an opportunity to intercede." Cunningham v. Gates, 229 F.3d 1271, 1289–90 (9th Cir. 2000).  None of McDonald's allegations suggest that Sheriff Essick had an opportunity to intercede at the scene of the violation.  As a result, McDonald fails to allege a plausible duty to intercede claim against Sheriff Essick.

### c.    Supervisory Liability.

"A supervisor may be held liable under § 1983 'if he or she was personally involved in the constitutional deprivation or a sufficient causal connection exists between the supervisor's unlawful conduct and the constitutional violation.'"  Lolli v. Cnty. of Orange, 351 F.3d 410, 418 (9th Cir. 2003) (quoting Jackson v. City of Bremerton, 268 F.3d 646, 653 (9th Cir. 2001)).  Under the latter theory of liability, "[a] supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others."  Starr v. Baca, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting Watkins v. City of Oakland, 145 F.3d 1087, 1093 (9th Cir.1998)) (internal alteration and quotation marks omitted).  The following analysis demonstrates that McDonald alleges a plausible supervisory liability claim against Sheriff Essick.

McDonald repeatedly alleges that Sheriff Essick has

> acted deliberately indifferent to the ongoing pattern and practice of police misconduct and [has] deliberately failed to reform existing, inadequate policies, trainings, supervision, practices, and customs that have consequently allowed the Sheriff Department and its officers to continue violating the clearly established constitutional rights of individuals whom officers frequently come into contact

United States District Court
Northern District of California

with.

FAC ¶ 57; see id. ¶¶ 17, 68, 71, 104, 120, 121.  To support these conclusions, McDonald cites two

policies, two incidents, and several studies that allegedly demonstrate Sheriff Essick's deliberate

indifference.  See, e.g., id. at 59–61, 71.  First, the training policy directs officers "to adopt a

'Survivor's mindset' which encourages officers to think only of their own safety and justify their

actions, right or wrong, according to base survival instincts: 'Stay alive! Then prove your conduct

was proper.'"  Id. ¶ 59 (quoting Ex. C (dkt. 15-3) at 9).  Second, the Sonoma County Sheriff's

Office's defensive tactic training policy instructs officers to conduct a "body fold takedown"

maneuver against resisting arrestees without protecting the suspect's head.  Id. ¶ 62–63.  Third, the

family of now-deceased David Ward sued Sheriff Essick, Sonoma County, and several local

police officers for the death of Ward at the hands of law enforcement officers who mistakenly

believed that Ward had committed a crime.  See id. ¶ 71.  Fourth, prior to becoming a Sheriff,

then-Sheriff Captain Essick testified against a fellow deputy's use of excessive force against a

suspect.  Id. at 77.  Finally, McDonald cites studies, audits, and reports that summarize Sonoma

County's history of law enforcement misconduct.  See id. ¶¶ 23, 72–76.  Collectively, these

policies, incidents, and reports suggest that Sheriff Essick acted with "callous indifference to the

rights of others."  Watkins, 145 F.3d at 1093.

     In Starr, the Ninth Circuit concluded that Sheriff Baca's failure to maintain safety within

the county jail exhibited deliberate indifference to ongoing constitutional violations.  652 F.3d at

1208.  Several inmates and one deputy attacked Starr after a deputy opened the gate to Starr's cell.

See id. at 1204.  Starr sued Sheriff Baca alleging that he knew about these ongoing violations yet

did nothing, which effectively condoned and ratified his subordinates use of excessive force.  See

id. at 1212.  To support his allegations, Starr cited specific examples of unconstitutional inmate

abuse within the county jail and several reports detailing Sheriff Baca and Los Angeles County's

failure to address continuous constitutional violations.  See id. at 1209–12.  The court held that

Starr's allegations plausibly demonstrated that Sheriff Baca acquiesced to the unlawful conduct,

and that such acquiescence caused Starr's injuries.  See id. at 1208.

     Like Starr, here McDonald establishes a plausible nexus between DS Perkins's

wrongdoing and Sheriff Essick's policies and acquiescence to police misconduct.  See id. at 1208.

Just as Sheriff Baca had a duty to protect inmates, see id. at 1208–09, Sheriff Essick has a duty to

protect the public.  See Cal. Gov't Code § 26600 (West 2020); Calatayud v. State of California, 18

Cal. 4th 1057, 1068–69 (1998).  Yet despite this duty, McDonald plausibly alleges that Sheriff

Essick effectively condoned these ongoing constitutional violations.  See, e.g., 71–78.

For example, McDonald cites the Sonoma County Independent Office of Law

Enforcement Review & Outreach's ("IOLERO") audit reports, which disagreed with the sheriff's

office's conclusions regarding several instances of excessive force.  See FAC ¶ 75 (citing FY

2017–18 Annual Report, Independent Office of Law Enforcement Review & Outreach,

https://sonomacounty.ca.gov/IOLERO/Annual-Reports/).  IOLERO asserted that the sheriff's

office lacked transparency with regard to incidents of excessive force and proposed further

oversight over the office.  See FAC ¶¶ 74–75.  Sonoma County supervisors and the sheriff's office

objected to IOLERO's proposal.  See id.  The Sonoma County Human Rights Report also

documents constitutional violations and describes the tension between community members and

the Sonoma County Sheriff's Office[8] in the wake of police shootings and incidents of excessive

force.  See FAC, Ex. H.  Notably, this report cites law enforcement's unwillingness to adopt

community-driven requests for more oversight of and responsiveness to the use of force.  See id. ¶

76.  Instead of implementing policies to address his subordinates' use of excessive force, Sheriff

Essick allegedly maintained policies that plausibly increased police misconduct, including the

survivor's mindset and body-fold policies.  See id. ¶ 62–63.

McDonald's allegations plausibly demonstrate that Sheriff Essick knew about his officers'

culpable conduct and failed to take any action to mitigate the ongoing violations, effectively

acquiescing to police misconduct.  Sheriff Essick's alleged acquiescence suffices to show that he

"personally played a role in the alleged constitutional violations."  Starr, 652 F.3d at 1208

(quoting Menotti v. City of Seattle, 409 F.3d 1113, 1149 (9th Cir.2005)) (internal quotation marks

omitted).  McDonald may therefore proceed with his supervisory liability claim against Sheriff

---

[8] As well as other law enforcement offices within Sonoma County.  See FAC, Ex. H.

1  Essick.

2  ### 2.    Adm. Sgt. Kidder (Count III).

3  McDonald argues that Adm. Sgt. Kidder can also be held liable under the same three

4  theories of § 1983 liability: integral participant doctrine, duty to intercede, and supervisory

5  liability.  See Opp. at 10–12.  McDonald alleges that Adm. Sgt. Kidder "administratively rubber-

6  stamped and signed-off on the false arrest charge of 'resisting arrest.'"  FAC ¶ 7.  McDonald's

7  integral participant and duty to intercede claims fail for the same reasons as the claims against

8  Sheriff Essick: (1) Adm. Sgt. Kidder did not plan, facilitate, or participate in DS Perkins and

9  Deputy Clegg's violations; and (2) Adm. Sgt. Kidder never had an opportunity to physically

10  intervene and stop the officers' violations.  See supra Subpart III.B.1.a–b.

11  However, McDonald alleges a plausible supervisory liability claim against Adm. Sgt.

12  Kidder.  McDonald alleges that Adm. Sgt. Kidder supervised and trained DS Perkins and Deputy

13  Clegg.  See FAC ¶¶ 9, 26, 58.  McDonald also alleges that Adm. Sgt. Kidder violated the Sonoma

14  County Sheriff's Office's use of force policy when he stamped the officers' arrest charge without

15  investigating DS Perkins's use of force or the circumstances of McDonald's arrest.  See id.; see

16  also FAC, Ex. E (dkt. 15-5).  Adm. Sgt. Kidder's alleged failure to properly train, supervise, and

17  review DS Perkins's conduct effectively ratifies the unlawful conduct, which plausibly gives rise

18  to supervisory liability under § 1983.  See, e.g., Watkins, 145 F.3d at 1093–94 (concluding that the

19  chief of police could be held liable under § 1983 for dismissing a complaint despite evidence of

20  unlawful conduct).  Thus, the Court DENIES Defendants' motion to dismiss McDonald's § 1983

21  claim against Adm. Sgt. Kidder for supervisory liability.

22  ### 3.    Deputy Clegg (Count I).

23  The Ninth Circuit requires that the constitutional violation be plainly obvious to an alleged

24  integral participant.  See, e.g., Sjurset v. Button, 810 F.3d 609, 619 (9th Cir. 2015) ("Boyd thus

25  supports the notion that even officers who are integral participants in an unconstitutional search

26  are immune from liability if the unlawfulness of the conduct is not clearly established." (internal

27  citations omitted)).  The integral participant doctrine applies to an officer who provides armed

28

backup during an unconstitutional search, but not a nearby officer who interviews a witness and does not participate whatsoever in the search.  Compare Boyd, 374 F.3d at 780 (concluding that officers who provided armed backup to an unconstitutional search were integral participants) with Hopkins v. Bonvicino, 573 F.3d 752, 770 (9th Cir. 2009) (concluding that the integral participant doctrine did not apply to an officer who interviewed a witness while his fellow officers executed an unlawful search).  Deputy Clegg falls within the former category.

McDonald alleges that Deputy Clegg "personally witnessed but did not intervene in DS Perkins's use of excessive force on Plaintiff during Plaintiff's welfare check."  See FAC ¶¶ 10, 46. After witnessing DS Perkins's use of excessive force, Deputy Clegg allegedly helped DS Perkins search McDonald, instead of intervening to stop the unlawful search and continued seizure.  See id.  McDonald's allegations suggest that, at the very least, Deputy Clegg participated in and failed to intervene and stop the underlying unlawful conduct, which plausibly gives rise to liability under the integral participant doctrine.  See Cunningham, 229 F.3d 1289–90.  As a result, the Court DENIES Defendants' motion to dismiss McDonald's § 1983 claim against Deputy Clegg.

### C.   Monell Claims Against Sonoma County and Town of Windsor (Count II).

"A local government is liable for a constitutional violation if its policies, official decisions, or informal customs cause the violation."  S.R. Nehad v. Browder, 929 F.3d 1125, 1141 (9th Cir. 2019).  Two out of the three circumstances that give rise to municipal liability under Monell apply to this case: (1) "when implementation of its official policies or established customs inflicts the constitutional injury," Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 708 (1978) (Powell, J. concurring); and (2) when a municipality fails to train its employees "in a manner that amounts to 'deliberate indifference'" to certain constitutional rights, "such that 'the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need."  Rodriguez v. Cnty. of Los Angeles, 891 F.3d 776, 802 (9th Cir. 2018) (internal citations omitted).  In order to establish Monell liability, a plaintiff must show that a municipality's policy "amounts to deliberate indifference to the plaintiff's constitutional

1   right," and "that the policy is the moving force behind the constitutional violation." <u>Plumeau v.</u>

2   <u>Sch. Dist. No. 40 Cnty. of Yamhill</u>, 130 F.3d 432, 438 (9th Cir.1997)).  "Deliberate indifference"

3   exists when a municipality "fail[s] to investigate and discipline employees in the face of

4   widespread constitutional violations." <u>Hunter v. City of Sacramento</u>, 652 F.3d 1225, 1234 n.8

5   (9th Cir. 2011).  Here, McDonald plausibly alleges that Sonoma County and Town of Windsor's

6   response, or lack thereof, to their history of excessive force plausibly exhibits a deliberate

7   indifference to widespread constitutional violations.

8        In <u>Rodriguez</u>, the Ninth Circuit concluded that substantial evidence supported the

9   plaintiffs'—five prisoners in the L.A. County Men's Central Jail—claim against Los Angeles

10   alleging that the L.A. County Sheriff's Department ("LASD") "had adopted a custom or practice

11   of condoning excessive force." 891 F.3d at 803.  The plaintiffs suffered injuries after LASD used

12   excessive force to extract the plaintiffs out of their jail cells. <u>See id.</u> at 784–87.  To support their

13   <u>Monell</u> claim, the plaintiffs presented the following evidence to show that LASD had a custom of

14   ignoring and condoning excessive force: (1) a report concluding that senior management at the

15   Men's Central Jail failed to investigate excessive use of force claims; (2) testimony from a former

16   jail commander that the incidents of excessive force increased under a specific captain; (3)

17   evidence that LASD had not monitored the use of force against prisoners; and (4) evidence that

18   supervisors observed unlawful practices but did nothing. <u>See id.</u> at 803.  The court held that the

19   plaintiffs' evidence supported the jury's conclusion that LASD acted deliberately indifferent to the

20   ongoing violations. <u>See id.</u>

21        McDonald alleges that Sonoma County and Town of Windsor's failure to address the

22   persistent use of excessive force effectively condoned officers' disregard for constitutional rights.

23   <u>See</u> FAC ¶¶ 68–77, 101.  This allegation alone, would be too conclusory to satisfy the plausibility

24   standard; <u>see Iqbal</u>, 556 U.S. at 678; however, McDonald bolsters his theory with factual

25   allegations that parallel the evidence in <u>Rodriguez</u>, 891 F.3d at 803. <u>See</u> FAC ¶¶ 68–77.

26   McDonald relies on the IOLERO audit reports and the Sonoma County Human Rights Report,

27   both of which describe Sonoma County's alleged unwillingness to address ongoing constitutional

28   violations. <u>See supra</u> Subpart III.B.1.c (citing FAC ¶¶ 75, 76).  McDonald also cites specific

United States District Court
Northern District of California

16

1   incidents of excessive force: the unlawful killing of David Ward, who police mistakenly believed

2   stole a car; an officer-involved shooting of thirteen-year-old Andy Lopez; and Sheriff Essick's

3   own testimony against a deputy's alleged use of excessive force.  See FAC ¶¶ 71, 73, 77.  This

4   evidence supports McDonald's claim that Sonoma County and Town of Windsor condoned, and

5   therefore exhibited deliberate indifference to, law enforcement's use of excessive force.  Contra

6   MTD at 16.

7       Defendants cite distinguishable cases to argue that McDonald only asserts conclusory

8   allegations.  See MTD at 14 (citing John v. Lake County, C 18-06935 WHA, 2019 WL 859227, at

9   *4 (N.D. Cal. Feb. 22, 2019); Connick v. Thompson, 563 U.S. 51, 62 (2011)).

10      In John, the complaint contained contradictory allegations, and the plaintiff failed to

11  identify how a lack of training relates to the excessive force claim at issue.  2019 WL 859227, at

12  *4.  Here, the FAC does not contain contradictory allegations.  Contra id.  Further, McDonald

13  draws a connection from Sonoma County and Town of Windsor's failure to implement policies

14  that address concerns about the police's use of force to an increased likelihood that officers like

15  DS Perkins would engage in unlawful behavior.  See, e.g., Rodriguez, 891 F.3d at 802 ("[S]uch

16  that 'the need for more or different training is so obvious, and the inadequacy so likely to result in

17  the violation of constitutional rights, that the policymakers of the city can reasonably be said to

18  have been deliberately indifferent to the need.").

19      Defendants also rely on Connick to argue that McDonald has not demonstrated that

20  Sonoma County and Town of Windsor had notice—in the form of patterns of unconstitutional

21  conduct—of any deficient training.  See MTD at 14–15 (citing 563 U.S. at 62).  But McDonald

22  does not limit its allegations to training alone, McDonald cites numerous instances where Sonoma

23  County and Town of Windsor ignored the public's requests for reform.  See FAC ¶¶ 68–77.[9]

24  Further, IOLERO's audits, coupled with the human rights report, provide sufficient notice to

25  Sonoma County and Town of Windsor of the unconstitutional patterns.  See id.  These factual

26

27  _____

28  [9] Defendants also overlook Connick's caveat that "the unconstitutional consequences of failing to train could be so patently obvious that a city could be liable under § 1983 without proof of a pre-existing pattern of violations."  563 U.S. at 64.

United States District Court
Northern District of California

allegations plausibly demonstrate Defendants' deliberate indifference to the need for law enforcement reform.

The Court therefore DENIES Defendants' motion to dismiss McDonald's <u>Monell</u> claim against Sonoma County and Town of Windsor.

### D.    Negligent Hiring Claim (Count V).

In order to impose vicarious liability on a supervising entity for negligent hiring, retention, or supervision, a plaintiff must demonstrate that a supervisor's employee breached a duty.  <u>See</u> <u>C.A. v. William S. Hart Union High School Dist.</u>, 53 Cal. 4th 861, 865 (2012).  McDonald premises his negligent hiring theory on Sheriff Essick's alleged deliberate indifference under § 1983, which also satisfies the standard of fault for negligent hiring.  <u>See</u> <u>Blankenhorn</u>, 485 F.3d at 484–85.  McDonald alleges that Sheriff Essick retained and supervised DS Perkins and Deputy Clegg who violated their duties when they unlawfully searched and seized McDonald.  <u>See</u> FAC ¶¶ 130–36.   As a result, McDonald alleges a plausible claim that Sheriff Essick acted negligently when he allegedly retained and failed to supervise DS Perkins and Deputy Clegg.  <u>See</u> <u>supra</u> Subpart III.B.1.c.  Defendants' motion to dismiss McDonald's negligent hiring claim is therefore DENIED.

### E.    Intentional Infliction of Emotional Distress Against DS Perkins (Count VII).

McDonald must satisfy three elements to proceed with his intentional infliction of emotion distress ("IIED") claim against DS Perkins: (1) a defendant must engage in "extreme and outrageous conduct . . . with the intention of causing, or reckless disregard of the probability of causing, emotional distress;" (2) a plaintiff must "suffer severe or extreme emotional distress;" and (3) a defendant's conduct must be the "actual and proximate causation of [the plaintiff's] emotional distress."  <u>Christensen v. Sup. Ct.</u>, 54 Cal. 3d 868, 903 (1991).  McDonald plausibly alleges that DS Perkins's unlawful arrest, search, and use of excessive force satisfies the required elements for IIED.

Defendants argue that DS Perkins's actions cannot constitute extreme or outrageous conduct as a matter of law.  <u>See</u> MTD at 21–22.  As a matter of law, "extreme and outrageous

United States District Court
Northern District of California

18

conduct" includes the unlawful arrest and use of excessive force against a suspect.  See, e.g., Blankenhorn, 485 F.3d at 487 n.17; Warren v. Marcus, 78 F. Supp. 1228, 1250 (N.D. Cal. 2015); Jamarillo v. City of San Mateo, 76 F. Supp. 3d 905, 926 (N.D. Cal. 2014).  DS Perkins allegedly knocked McDonald unconscious and broke several of his teeth, causing McDonald to suffer emotional distress.  See FAC ¶¶ 32–46, 145.  Further, because DS Perkins lacked probable cause to arrest and search McDonald, DS Perkins's perpetuated his conduct with "reckless disregard for the probability of causing emotional distress."  Christensen, 54 Cal. 3d at 903; see Jamarillo, 76 F. Supp. 3d at 926 (concluding that a reasonable jury could conclude that officers who intentionally kneeled on a suspect acted with reckless disregard for the probability of causing emotional distress).  Defendants motion to dismiss McDonald's IIED claim is therefore DENIED.[10]

### F.      Bane Act Claims (Count XI & XII).

Like 42 U.S.C. § 1983, California's Bane Act, Cal. Civ. Code §§ 52.1(a) and (b), provides a private right of action to plaintiffs for damages "against any person, whether acting under color of law or not, who interferes or attempts to interfere 'by threats, intimidation, or coercion with the exercise or enjoyment" of their civil rights under the laws of the United States or California. Martinez v. Cnty. of Sonoma, 15–cv–01953–JST, 2015 WL 5354071, at *9 (N.D. Cal. Sept. 14, 2015) (quoting M.H. v. Cnty. of Alameda, No. 11–CV–02868 JST, 2013 WL 1701591, *5 (N.D. Cal. Apr. 18, 2013)).  A plaintiff may assert a Bane Act claim when a defendant uses threats, intimidation, or coercion to deprive the plaintiff of their constitutional or statutory rights.  See King v. State of California, 242 Cal. App. 4th 265, 294–95 (2013).  "Where . . . an arrest is unlawful and excessive force is applied in making the arrest, there has been coercion 'independent from the coercion inherent in the wrongful detention itself.'"  Bender v. Cnty. of Los Angeles, 217 Cal. App. 4th 968, 978 (2013).  Coercion therefore exists, for the purpose of a Bane Act violation, when a defendant unlawfully arrests and uses excessive force against a suspect.  See id.; see also Rodriguez, 891 F.3d at 801–02 (applying Bender).

---

[10] Town of Windsor and Sonoma County can also be held vicariously liable under section 815.2(a) of the California Government Code for McDonald's negligent retention and IIED claims.  See De Villers v. Cnty. of San Diego, 156 Cal. App. 4th 238, 248 (2007); Blankenhorn, 485 F.3d at 488.

Contrary to Defendants' argument that McDonald "fails to plead any cognizable . . . predicate constitutional violation," MTD at 23, McDonald has plausibly alleged that DS Perkins unlawfully arrested and used excessive force against McDonald in violation of his Fourth Amendment rights.  See Supra Subpart III.A.1–2.  Thus, the Court DENIES Defendants' motion to dismiss McDonald's Bane Act claim.

### G.  Request for Injunctive Relief.

McDonald has standing to obtain injunctive relief if he can demonstrate that he has suffered or is threatened with a "concrete and particularized legal harm . . . coupled with a sufficient likelihood that he will again be wronged in a similar way."  Canatella v. State of California, 304 F.3d 843, 852 (9th Cir. 2002) (emphasis added).  McDonald's request for injunctive relief fails because he has not shown a sufficient likelihood that police officers will further violate his rights.  Contra Opp. at 24.

In Hodgers-Durgin v. de la Vina, the Ninth Circuit concluded that the plaintiffs, two U.S. citizens, failed to demonstrate "a sufficient likelihood of injury to warrant equitable relief."  199 F.3d 1037, 1044 (9th Cir. 1999).  The U.S. Border Patrol allegedly stopped both plaintiffs separately without reasonable suspicion or probable cause.  Id. at 1039.  Plaintiffs sought injunctive relief barring the Border Patrol from conducting unconstitutional stops and requiring the Border Patrol to implement measures to prevent other unlawful conduct.  Id.  The court denied the plaintiffs' request for injunctive relief because the plaintiffs had only been stopped once over the course of ten years despite substantial exposure to Border Patrol agents.  See id. at 1044.  The court held that one stop in ten years did not establish a future likelihood of injury.  See id.

Just as in Hodgers-Durgin, McDonald has not identified a likelihood of future injury.  See 199 F.3d 1044.  McDonald acknowledges that the specific incident occurred on a single day yet argues that he faces imminent future risk of dangerous encounters.  See Opp. at 23.  McDonald neither identifies prior brushes with law enforcement nor provides plausible allegations suggesting why law enforcement officials might target him again.  McDonald argues that the "ongoing, continuous, and real history of violence" against Black residents of Sonoma County creates a risk

of future harm.  See id.  But the Supreme Court has cautioned courts against entertaining claims for equitable relief based on broad allegations of unconstitutional conduct, absent evidence that the specific individual plaintiff will be harmed again.  See City of Los Angeles v. Lyons, 461 U.S. 95, 111–12 (1983); see also Clapper v. Amnesty Int'l USA, 568 U.S. 398, 409 (2013) ("[The] "threatened injury must be certainly impending to constitute injury in fact, and allegations of possible future injury are not sufficient." (internal citations omitted)).  The FAC lacks allegations that McDonald, specifically, will be subject to future harm, and as a result, McDonald lacks standing to assert a claim for injunctive relief.  Defendants' motion to dismiss McDonald's claim for prospective injunctive relief is therefore GRANTED WITHOUT PREJUDICE.  McDonald shall have an opportunity to seek injunctive relief provided that a factual basis exists for doing so.

## IV.    CONCLUSION

For the foregoing reasons, the Court GRANTS in part and DENIES in part, Defendants' motion to dismiss with respect to the following causes of action.

   a.    COUNT I: Section 1983 Claim Against Deputy Clegg and DS Perkins: DENIED.

   b.    COUNT II: Section 1983 Monell Claim Against Sonoma County and Town of Windsor: DENIED.

   c.    COUNT III: Section 1983 Claim Against Sheriff Essick and Adm. Sgt. Kidder: DENIED.

   d.    COUNT V: Negligent Hiring Claim Against Sheriff Essick: DENIED.

   e.    COUNT VII: Intentional Infliction of Emotional Distress Claim Against DS Perkins: DENIED.

   f.    COUNT XI: Bane Act Claim Against DS Perkins: DENIED.

   g.    COUNT XII: Bane Act Claim Against Public Entity Defendants and Sheriff Essick: DENIED.

   h.    COUNT XV: Respondeat Superior Claim Against Sonoma County and Town of Windsor: DENIED.

   i.    Injunctive Relief: GRANTED WITHOUT PREJUDICE.

1    McDonald shall have thirty days to amend and add allegations to the FAC supporting his

2   claim for injunctive relief.

3

4        **IT IS SO ORDERED.**

5        Dated: December 11, 2020



6                                                          CHARLES R. BREYER
                                                          United States District Judge
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

22