Reed R. Kathrein (139304)
Wesley A. Wong (314652)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile:  (510) 725-3001
reed@hbsslaw.com
wesleyw@hbsslaw.com

*Attorneys for Plaintiff La'Marcus McDonald*

[Additional counsel on signature page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LA'MARCUS MCDONALD,<br><br>                              Plaintiff,<br><br>     v.<br><br>COUNTY OF SONOMA, TOWN OF WINDSOR, MARK ESSICK, TRAVIS PERKINS, BRENT KIDDER, and GREGORY CLEGG,<br><br>                              Defendants. | No. 3:20-cv-04183-CRB<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO BIFURCATE THE TRIAL AND DISCOVERY OF THE INDIVIDUAL LIABILITY CLAIMS AND THE *MONELL* AND SUPERVISORY LIABILITY CLAIMS**<br><br>Date: August 26, 2021<br>Time: 10:00 a.m.<br>Dept.: Courtroom 6, 17th Floor<br>Judge: Hon. Charles R. Breyer |

1

## TABLE OF CONTENTS

2   I.      INTRODUCTION .................................................................................................1

3   II.     LEGAL STANDARD ...........................................................................................2

4   III.    ARGUMENT .......................................................................................................3

5           A.      The Claims In This Case are Closely Intertwined and Should Not Be Separated. .....3

6           B.      Bifurcation Will Not Facilitate Disposition of the Issues and Is Not in the Interest of
7                   Judicial Economy. ...................................................................................................10

8           C.      Defendants Will Not Suffer Prejudice, Defendants Have Not Met Their Burden in
                    Showing Prejudice, and Bifurcation Will Prejudice Plaintiff. ..................................15

9           D.      Bifurcation is Unnecessary to Avoid Jury Confusion and Any Confusion Can Be
                    Cured Through Limiting Instructions........................................................................17

10  IV.     CONCLUSION ...................................................................................................19

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

### Federal Cases

4

*Afshar v. City of Sacramento*,
   2007 WL 779748 (E.D. Cal. Mar. 14, 2007)....................................................................*passim*

5

6

*Estate of Alderman v. City of Bakersfield*,
   2018 WL 4156740 (E.D. Cal. Aug. 28, 2018) ................................................................*passim*

7

8

*Alexander v. City of Milwaukee*,
   474 F.3d 437 (7th Cir. 2007) .......................................................................................................15

9

*Banks v. Mortimer*,
   2021 WL1599266 (N.D. Cal. Apr. 23, 2021).........................................................................5, 6

10

11

*Bates v. United Parcel Service*,
   204 F.R.D. 440 (N.D. Cal. 2001) ..................................................................................................3

12

*Boyd v. City and County of San Francisco*,
   2006 WL 6800556 (N.D. Cal. Mar. 14, 2006) ............................................................................8

13

14

*Chew v. Gates*,
   27 F.3d 1432 (9th Cir. 1994) ........................................................................................................4

15

16

*City of Los Angeles v. Heller*,
   475 U.S. 796 U.S. 796 (1986) ...................................................................................................8, 9

17

*City of Riverside v. Rivera*,
   477 U.S. 561 (1986)

18

19

*Copart, Inc. v. Spart Consulting, Inc.*,
   2018 WL 1871414 (E.D. Cal. Apr. 19, 2018) ..............................................................................3

20

21

*Dadisman v. County of Los Angeles*,
   2021 WL 888897 (C.D. Cal. Jan. 5, 2021).....................................................................13, 17, 18

22

*Fairley v. Luman*,
   281 F.3d 913 (9th Cir. 2002) .................................................................................................4, 7, 9

23

24

*Green v. Baca*,
   226 F.R.D. 624 (C.D. Cal. 2005)...............................................................................................4, 5

25

26

*Hamm v. American Home Products Corp.*,
   888 F. Supp. 1037 (E.D. Cal. 1995) ...........................................................................................17

27

*Hangarter v. Provident Life & Accident Ins. Co.*,
   373 F.3d 998 (9th Cir. 2004) ........................................................................................................2

28

PL.'S OPP. TO DEFS.' MOT. TO BIFURCATE THE TRIAL AND DISCOVERY OF THE INDIV.
LIABILITY CLAIMS AND THE *MONELL* AND SUPERVISORY LIABILITY CLAIMS - ii
Case No.: 3:20-cv-04183-CRB
010930-11/1577632 V1

*Horton by Horton v. City of Santa Maria*,
  915 F.3d 592 (9th Cir. 2019) ............................................................4, 7

*Long v. County of L.A.*,
  442 F.3d 1178 (9th Cir. 2006) ..........................................................5, 7

*Estate of Lopez v. Suhr*,
  2016 WL 1639547 (N.D. Cal. Apr. 26, 2016) ........................................8

*Monell v. Dept. of Social Services of City of New York*,
  436 U.S. 658 (1978) ..................................................................*passim*

*Neylon v. County of Inyo*,
  2018 WL 3740535 (E.D. Cal. Aug. 3, 2018) ..........................................4

*Parra v. City of Chino*,
  1998 WL 88256 (9th Cir. 1998) ........................................................18

*Quintanilla v. City of Downey*,
  84 F.3d 353 (9th Cir. 1996) ......................................................8, 9, 16

*Ryan v. City of Salem*,
  2017 WL 2426868 (D. Or. June 5, 2017) .......................................*passim*

*Scott v. Henrich*,
  39 F.3d 912 (9th Cir. 194) .................................................................8

*Silva v. City of San Pablo*,
  3:16-cv-04360 (N.D. Cal.) ................................................................5

*Smith v. Wade*,
  461 U.S. 30 (1983) .........................................................................14

*Trevino v. Gates*,
  99 F.3d 911 (9th Cir. 1996) ..........................................................9, 10

*Tsao v. Desert Palace, Inc.*,
  698 F.3d 1128 (9th Cir. 2012) .....................................................4, 7, 8

*Van Patten v. Washington County by and through Washington County Sheriff's Office*,
  2017 WL 2616888 (D. Or. June 16, 2017) ...........................................10

*Vargas v. City of L.A.*,
  2021 WL 2012592 (9th Cir. May 20, 2021) ...........................................8

*Weeks v. Angelone*,
  528 U.S. 225 (2000) .......................................................................18

*Wroth v. City of Rohnert Park,*
   2019 WL 8333513 (N.D. Cal. 2019) ........................................................................4

## Federal Statutes

42 U.S.C. § 1983 ................................................................................................*passim*

Ca. Civ. Code § 52.1 ........................................................................................................9

Cal. Gov. Code § 815.2(a) .............................................................................................12

Cal. Gov. Code, § 825(a) ..........................................................................................12, 15

Cal. Gov. Code § 825(b) ................................................................................................15

Cal. Gov. Code § 12525.2 ...............................................................................................1

## Other Authorities

Fed. R. Civ. P. 42(b) ...................................................................................................2, 9

U.S. Const. amend. IV ..........................................................................................1, 9, 18

U.S. Const. amend. XIV ..................................................................................................1

2017 Edition, Ninth Circuit *Manual of Model Civil Jury Instructions*, Chapter 9 ........19

1

## I.    INTRODUCTION

2        This case is not simply about an isolated incident involving an officer's unlawful detention and

3   use of excessive force against an arrestee. This case is more far-reaching than that. This is a case about

4   holding two municipalities and their supervisors accountable for their direct role in the ongoing and

5   continued violations of citizens' constitutional rights. Plaintiff La'Marcus McDonald was simply

6   another victim of the County of Sonoma, the Town of Windsor, Sheriff Mark Essick, and

7   Administrative Sergeant Brent Kidder's perpetuation of unconstitutional policies and deliberate

8   indifference to such policies. As set forth in the Amended Complaint,[1] unconstitutional policies and

9   Defendants' deliberate indifference enabled and caused Officer Travis Perkins and Officer Gregory

10  Clegg to racially profile Plaintiff during a routine welfare check, unlawfully arrest him, use excessive

11  force against him, unlawfully jail him, and avoid accountability by deliberately failing to evaluate and

12  report on Perkins and Clegg's use of excessive force as part of a cover up scheme.[2] Sadly, the natural

13  and direct consequence of these collective actions resulted in the violation of Plaintiff's constitutional

14  rights similar to other victims of excessive force and police killings in Sonoma County over the past

15  twenty-plus years. Indeed, Your Honor held in the Court's order denying in part Defendants' motion

16  to dismiss[3] that the Amended Complaint's allegations were plausibly alleged. This case is not about a

17  single police encounter but instead exposes Defendants' collective and closely intertwined failures that

18  caused and was the moving force behind Plaintiff's injuries in the first instance.

19

20        [1] Unless otherwise noted: (1) all capitalized terms shall have the meanings ascribed to them in the
21  Amended Complaint for the Violation of Civil Rights, 42 U.S.C. § 1983, The Fourth and Fourteenth
    Amendments to the United States Constitution and Pendent State Claims (ECF No. 15) (cited herein
22  as "Amended Complaint" or "Am. Compl."); and (2) "¶ _" are paragraph references to the Amended
    Complaint unless otherwise stated. The Amended Complaint sets forth the relevant facts of this case.

23        [2] *See* Am. Compl., ¶¶ 15, 55 and fn. 1 (describing Defendants' failure to satisfy its use of force
    reporting obligations to the California Department of Justice under Cal. Gov. Code § 12525.2 as part
24  of Defendants' custom and practice); *see also* Am. Compl., Ex. E (Defendants' Use of Force Policy,
    section 300.5.2 entitled "REPORTING TO CALIFORNIA DEPARTMENT OF JUSTICE"
25  mandating the reporting of officer-involved use of force incidents); *see also* Plaintiff's Opposition
    brief to Defendants' Motion to Dismiss (ECF No. 29) at 2, 6-7 (describing and addressing
26  Defendants' cover up scheme).

27        [3] Order Granting in Part and Denying in Part Defendants' Motion to Dismiss for Failure to State
    a Claim (cited herein as "MTD Order") (ECF No. 32). The MTD Order also sets for the relevant
28  facts and the procedural history of this case.

PL.'S OPP. TO DEFS.' MOT. TO BIFURCATE THE TRIAL AND DISCOVERY OF THE INDIV.
LIABILITY CLAIMS AND THE *MONELL* AND SUPERVISORY LIABILITY CLAIMS - 1
Case No.: 3:20-cv-04183-CRB
010930-11/1577632 V1

1       Defendants ask this Court to exercise its discretion under Fed. R. Civ. P. 42(b) to bifurcate

2   discovery and trial in this matter, separating the issues related to the liability claims against Officer

3   Perkins and Officer Clegg from the *Monell* and supervisory liability claims against the County of

4   Sonoma, the Town of Windsor, Sheriff Essick, and Administrative Sergeant Kidder. Defendants have

5   failed to meet their burden to prove that taking this step is necessary to meet the goals listed in Fed. R.

6   Civ. P. 42(b). Further, Defendants mischaracterize the main claims in this case as simply between

7   Plaintiff and the individual officers[4]; and fail to acknowledge that the true underpinnings of this case

8   actually involve systemic, problematic policing practices within Sonoma County that injured Plaintiff

9   independent of Officer Perkins and Clegg. Additionally, an examination of the likely trial process

10  demonstrates that a single trial, with all claims against all parties tried to a single jury, would better

11  meet the goals of expedition and economy, and any prejudice can easily be ameliorated by limiting

12  instructions. Finally, Defendants' proposal to bifurcate discovery and the trial will undoubtedly

13  prejudice Plaintiff.

14      For these reasons, Defendants' motion should be denied in its entirety.

15                          **II.      LEGAL STANDARD**

16      While it is true that Fed. R. Civ. P. 42(b) confers broad discretion on this Court to bifurcate a

17  trial, *see Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1021 (9th Cir. 2004), that

18  discretion is guided by the fact that bifurcation is the exception rather than the rule: "[S]eparation of

19  issues for trial is not to be routinely ordered[.]" Advisory Committee Notes to the 1966 Amendment

20  to Fed. R. Civ. P. 42(b); *Estate of Alderman v. City of Bakersfield*, 2018 WL 4156740, at *1 (E.D. Cal.

21  Aug. 28, 2018) (denying the defendants' motion to bifurcate in a Section 1983 action involving *Monell*

22  claims and stating "separation of issues for trial is not to be routinely ordered.") (internal quotations

23  and citations omitted); *Ryan v. City of Salem*, 2017 WL 2426868, at *1 (D. Or. June 5, 2017) (denying

24  bifurcation of *Monell* claim and stating: "The drafters of the Federal Rules did not intend the routine

---

[4] *See* Defendants' Motion to Bifurcate the Trial and Discovery of the Individual Liability Claims and the *Monell* and Supervisory Liability Claims (ECF No. 37) (cited herein as "MTB") at 3 ("Given the relative simplicity of the main claim of unlawful detention and force against Plaintiff in this isolated event . . . .").

bifurcation of trials."); *Afshar v. City of Sacramento*, 2007 WL 779748, at *1 (E.D. Cal. Mar. 14, 2007) (denying the defendant's motion to bifurcate *Monell* claims and stating that bifurcation should not be routinely ordered); *see also Copart, Inc. v. Spart Consulting, Inc.*, 2018 WL 1871414, at *2 (E.D. Cal. Apr. 19, 2018) ("Courts are more reluctant to bifurcate proceedings when there is 'an overlap of factual issues.'").

District Courts have identified four factors to consider when weighing a request to bifurcate: "(1) whether separation of the issues for trial will expedite disposition of the action; (2) whether such separation will conserve trial time and other judicial resources; (3) whether such separation will avoid prejudice; and (4) whether the issues are essentially independent of each other so that there will be no need to duplicate the presentation of significant areas of the evidence in the separated proceedings." *Afshar*, 2007 WL 779748, at *1. Determining whether to bifurcate a trial is based on factors including "potential prejudice to the parties, potential confusion to the jury, and the relative convenience and economy which would result." *Estate of Alderman*, 2018 WL 4156740, at *1; *Bates v. United Parcel Service*, 204 F.R.D. 440, 448 (N.D. Cal. 2001). The party moving for bifurcation has the burden to prove that bifurcation is appropriate. *Ryan*, 2017 WL 2426868, at *1. A district court's decision of whether to bifurcate is reviewed for an abuse of discretion. *Estate of Alderman*, 2018 WL 4156740, at *1.

## III.   ARGUMENT

### A.   The Claims In This Case are Closely Intertwined and Should Not Be Separated.

As an initial matter, the claims in this case are closely intertwined and should be tried together after discovery related to all claims concludes. The gist of Defendants argument is contained on page 3 of the MTB. Defendants essentially argue that a defense verdict on phase one of a bifurcated trial involving Officer Perkins and Clegg would obviate the need for a phase two trial involving the County of Sonoma, the Town of Windsor, Sheriff Essick, and Administrative Sergeant Kidder; Defendants treat the claims against Officer Perkins and Clegg as a preliminary issue that, if resolved in their favor, is dispositive of the *Monell* and supervisory liability claims. *See e.g.,* MTB at 6 ("[T]he process of determining *Monell* and supervisory liability will not be necessary if the jury first determines that the Plaintiff did not suffer from a constitutional violation."). Defendants' conclusory, matter-of-fact

characterization of the sequencing of liability[5] in this case is simply inaccurate and ignores the fact that the *Monell* and supervisory liability claims can remain viable even if Officer Perkins and Clegg are exonerated through qualified immunity, summary judgment, or by the jury.[6]

The claims in this case should actually be viewed in the reverse of Defendants' sequencing. Namely, as a case primarily against the municipal and supervisory defendants that take into account the individual officers' actions; individual officers' unconstitutional actions against Plaintiff simply add to/support Plaintiff's case of deliberate indifference against the municipality and its supervisors while also simultaneously forming independent claims of liability against the officers. Viewed in that

---

[5] *See* MTB at 6 (discussing Defendants' contemplation of the "possible outcomes of this case").

[6] *See Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 604-5 (9th Cir. 2019) ("[M]unicipal defendants may be liable under §1983 even in situations in which no individual officer is held liable for violating a plaintiff's constitutional rights. As we have previously acknowledged, constitutional deprivations may occur 'not . . . as a result of actions of the individual officers, but as a result of the collective inaction' of the municipal defendant . . . . [W]e conclude that our holding that [the officer] is entitled to qualified immunity does not preclude the possibility that a constitutional violation may nonetheless have taken place, including as a result of the collective acts or omissions of Santa Maria Police Department officers.") (internal citation omitted); *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1142-43 (9th Cir. 2012) (if a plaintiff establishes he suffered a constitutional injury by the municipality, the fact that individual officers are exonerated, whether or not through qualified immunity, is immaterial to liability against the municipality under Section 1983); *Fairley v. Luman*, 281 F.3d 913, 917 (9th Cir. 2002) ("If a plaintiff establishes he suffered a constitutional injury *by the City*, the fact that individual officers are exonerated is immaterial to liability under §1983.") (emphasis in original); *Chew v. Gates*, 27 F.3d 1432, 1438 (9th Cir. 1994) ("Supervisorial liability may be imposed under section 1983 notwithstanding the exoneration of the officer whose actions are the immediate or precipitating cause of the constitutional injury"); *Wroth v. City of Rohnert Park*, 2019 WL 8333513, at *5 (N.D. Cal. 2019) (recognizing, under *Fairley v. Luman*, that municipalities can be held directly liable for their policy of "collective inaction" that caused the plaintiff's injuries despite the officers' exoneration); *Estate of Alderman*, 2018 WL 4156740, at *2-3 (rejecting the defendants' argument that the plaintiffs will be unable to prevail on *Monell* claims without a finding of liability on the part of the individual officers in the case because "the *Monell* claims are [not] solely premised on a theory that first require a finding of liability on the part of [the] defendant officer[.] . . . . [E]xoneration of the individual officers in the first phase of a bifurcated trial would not preclude a jury verdict imposing *Monell* liability on the City in the second phase of the trial."); *Neylon v. County of Inyo*, 2018 WL 3740535, at *19 (E.D. Cal. Aug. 3, 2018) ("[I]t is possible for liability to attach to a municipality under §1983 when individual officers are exonerated . . . . Liability will attach to a municipality under §1983, despite the exoneration of its officers, if a constitutional injury was nevertheless caused by the municipality itself through its policies, customers, or practices . . . . A constitutional violation remains the touchstone of §1983 liability, even when individual officers are exonerated.") (internal quotations and citations omitted); *Green v. Baca*, 226 F.R.D. 624, 633 (C.D. Cal. 2005) ("[W]e explicitly rejected a municipality's argument that it could not be held liable as a matter of law because the jury had determined that the individual officers had inflicted no constitutional injury . . . . If a plaintiff established he suffered constitutional injury by the City, the fact that individual officers are exonerated is immaterial to liability under §1983[.]") (internal citations and quotations omitted).

1    light, a finding of liability against the officers is not preliminary to or dispositive of a finding of direct

2    liability against the municipalities and its supervisors for deliberate indifference; and a finding of

3    liability against the municipalities and its supervisors for deliberate indifference is not solely derivative

4    of a finding of liability against the individual officers.[7]

5          Defendants cite *Silva v. City of San Pablo*, 3:16-cv-04360 (N.D. Cal.) (Judge Chhabria

6    presiding) and *Banks v. Mortimer*, 2021 WL1599266 (N.D. Cal. Apr. 23, 2021) for the proposition

7    that other judges in the Northern District have ordered bifurcation of *Monell* issues from individual

8    liability claims. MTB at 4. Defendants' citation to *Silva* is to an electronic minute entry for proceedings

9    held on November 15, 2016, that provides *no rationale or analysis* as to why bifurcation was

10   necessary; the minute entry summarily concludes that Defendant requested and was granted

11   bifurcation of the claims, and allowed the plaintiff to file a motion objecting to bifurcation "if they see

12   fit." *See Silva*, 3:16-cv-04360 (N.D. Cal.), ECF No. 16. *Banks* is distinguishable because that case

13   focused on the actions of the defendant individual officers and the plaintiff there had not shown that

14   discovery related to incidents involving non-party officers had "apparent relevance to the claims

15   against the individual officer defendants herein[.]" *Id.* at *3. The *Banks* court quickly qualified its

16   holding to bifurcate discovery and trial by stating: "To the extent that Plaintiffs can show that discovery

17   directly pertains to the individual claims, *it may proceed*." *Id.* (emphasis added).

18         Here, unlike in *Banks* and as stated above, this case is not simply focused on the actions of the

19   individual officers against Plaintiff but rather on the perpetuation of unconstitutional policies and the

20   municipality and supervisor defendants' deliberate indifference to those policies, which caused

21   Plaintiff's injuries during a routine welfare check.[8] This necessitates a review of past/present policing

22

23         [7] *See supra* fn. 6 (collecting cases where claims of municipal and supervisory liability remain
     viable despite officers' exoneration).

24
           [8] *Long v. County of L.A.*, 442 F.3d 1178, 1190 (9th Cir. 2006) ("For a policy to be the moving
25   force behind the deprivation of a constitutional right, the identified deficiency in the policy must be
     closely related to the ultimate injury . . . . The plaintiff's burden is to establish that the injury would
26   have been avoided had proper policies been implemented.") (internal quotations and citations
     omitted); *Green*, 226 F.R.D. at 631-32 (rejecting bifurcation and noting: "the principal issue at trial
27   will be whether defendant's policies and customs were the moving force behind a deprivation of
     plaintiff's constitutional rights . . . . Bifurcation of causation from the existence of an unlawful policy
28   is not a feasible option as a result.").

incidents and an evaluation of the municipalities and supervisors' patterns and practices in order to fairly prosecute a claim for deliberate indifference. Unlike *Banks*, discovery on these issues directly pertains to the claims against the individual officers because it informs how the individual officers here were trained, supervised, and would likely interact with citizens such as Plaintiff.[9] And Your Honor has, in the Court's MTD Order, established the causal relationship between the unconstitutional actions of the municipalities and its supervisors and the unconstitutional actions of the individual officers:

> McDonald cites studies, audits, and reports that summarize Sonoma County's history of law enforcement misconduct . . . . Collectively, these policies, incidents, and reports suggest that Sheriff Essick acted with callous indifference to the rights of others . . . . ***McDonald established a plausible nexus between DS Perkins's wrongdoing and Sheriff Essick's policies and acquiescence to police misconduct*** . . . . Just as Sheriff Baca had a duty to protect inmates, . . . Sheriff Essick has a duty to protect the public . . . . Yet despite this duty, McDonald plausibly alleges that Sheriff Essick effectively condoned these ongoing constitutional violations . . . . Instead of implementing policies to address his subordinates' use of excessive force, Sheriff Essick allegedly maintained policies that plausibly increased police misconduct, including the survivor's mindset and body-fold policies . . . . McDonald's allegations plausibly demonstrate that Sheriff Essick knew about his officers' culpable conduct and failed to take any action to mitigate the ongoing violations, effectively acquiescing to police misconduct. Sheriff Essick's alleged acquiescence suffices to show that he personally played a role in the alleged constitutional violations.

MTD Order at 12-13 (internal citations and quotations omitted) (emphasis added).

\* \* \*

> ***Adm. Sgt. Kidder's alleged failure to properly train, supervise, and review DS Perkins's conduct effectively ratifies the unlawful conduct***, which plausibly gives rise to supervisory liability under § 1983.

*Id.* at 14 (emphasis added).

\* \* \*

> McDonald plausibly alleges that Sonoma County and Town of Windsor's response, or lack thereof, to their history of excessive force

---

[9] *Estate of Alderman*, 2018 WL 4156740, at \*2, fn. 1 ("Evidence of prior complaints of excessive force against a defendant officer may not be admitted to prove character, but may be admissible to show that the municipality had 'proof of knowledge' in the context of a *Monell* claim.") (internal citation omitted); *Afshar*, 2007 WL 779748, at \*1 ("It is clear that evidence regarding the constitutional injury is relevant to the question of whether there is a policy or custom of abuse. For instance, proof of a constitutional violation might (although not necessarily) be probative of official government policy.").

plausibly exhibits a deliberate indifference to widespread constitutional violations . . . McDonald alleges that Sonoma County and Town of Windsor's failures to address the persistent use of excessive force effectively condoned officers' disregard for constitutional rights. This allegation alone, would be too conclusory to satisfy the plausibility standard; . . . however, McDonald bolsters his theory with factual allegations that parallel the evidence in <u>Rodriguez</u> . . . . ***This evidence supports McDonald's claim that Sonoma County and Town of Windsor condoned, and therefore exhibited deliberate indifference to, law enforcement's use of excessive force.***

*Id.* at 16-17 (citations omitted) (emphasis added).

Plaintiff's claims are not solely premised on the individual officers' actions, which would allow for a clear separation in discovery and at trial from the *Monell* and supervisory liability claims. The claims here are not distinct and resulted from the collective inaction[10] of Defendants. *Fairley v. Luman*, 281 F.3d 913, 917 (9th Cir. 2002) ("These alleged constitutional deprivations were not suffered as a result of actions of the individual officers, but as a result of the collective inaction of the Long Beach Police Department."); *Horton by Horton*, 915 F.3d at 604-5 (citing *Fairley* and concluding in a Section 1983 case against individual officers, a municipality, and the police department that "a reasonable jury might be able to conclude that [the plaintiff] suffered a constitutional deprivation as a result of the collective inaction of the Santa Maria Police Department . . . or of officers' adherence to departmental customs or practices . . . . [A] constitutional violation may nonetheless have taken place, including as a result of the collective acts or omissions of Santa Maria Police Department officers.") (internal quotations and citations omitted). Here, Defendants' collective inaction resulted from the municipalities and the supervisors' adoption of unconstitutional policies, customs, and patterns which caused and was the moving force behind the individual officers violating Plaintiff's constitutional rights. *Tsao*, 689 F.3d at 1143 (explaining a municipality's "policy" can be "two types of policies: [(1)] those [policies of action] that result in the municipality itself violating someone's constitutional rights or instructing its employees to do so, and [(2)] those [policies of inaction] that result, through

---

[10] *See Long*, 442 F.3d at 1189 (holding that a city's failures and omissions can constitute a policy of deliberate indifference: "This court consistently has found that a county's lack of affirmative policies or procedures to guide employees can amount to deliberate indifference, even when the county has other general policies in place."); *see also supra* fn. 6 above.

omission, in municipal responsibility for a constitutional violation by one of its employees, even though the municipality's policies were facially constitutional, the municipality did not direct the employee to take the unconstitutional action, and the municipality did not have the state of mind required to prove the underlying violation.") (internal citations and quotations omitted). This case involves a policy of inaction due to Defendants' deliberate indifference. *Id.* ("A policy of inaction or omission may be based on failure to implement procedural safeguards to prevent constitutional violations . . . . To establish that there is a policy based on a failure to preserve constitutional rights, a plaintiff must show, in addition to a constitutional violation, that this policy amounts to deliberate indifference to the plaintiff's constitutional rights, . . . and that the policy caused the violation, in the sense the municipality could have prevented the violation with an appropriate policy.") (internal citations and quotations omitted).

Thus, Defendants' citation to *Estate of Lopez v. Suhr*, 2016 WL 1639547, at *6 (N.D. Cal. Apr. 26, 2016) and *Boyd v. City and County of San Francisco,* 2006 WL 6800556, at *2 (N.D. Cal. Mar. 14, 2006) are inapposite because the claims here are *not* distinct of each other and are closely intertwined because of Defendants' collective inaction through the municipalities and supervisors' deliberate indifference which amounted to policies of inaction that failed to prevent the defendant individual officers from violating Plaintiff's civil rights.[11]

Further, Defendants' citations to *Quintanilla v. City of Downey*, 84 F.3d 353 (9th Cir. 1996), *City of Los Angeles v. Heller*, 475 U.S. 796 U.S. 796 (1986) (cited by *Quintanilla*), and *Scott v. Henrich*, 39 F.3d 912, 916 (9th Cir. 194) for the proposition that bifurcation (in the way proposed by Defendants) is appropriate are not dispositive of what the court must do in this case[12]; this Court still

---

[11] *Cf. Estate of Lopez*, 2016 WL 1639547, at *7 (holding that individual liability and supervisory liability claims were distinct and unrelated: "In short, Plaintiff's claims against Chief Suhr are conceptually distinct from their claims against the officers: their ratification theory involves only post-shooting facts, while their failure to train theory involves pre-shooting facts that do not directly relate to Perez Lopez's case."). This case is not like *Lopez* because the claims here are not clearly distinct from each other.

[12] *Afshar*, 2007 WL779748, at *2 (stating that the general principal in *Heller* that a public entity is not liable for §1983 damages unless a fact finder concludes that an individual officer, acting pursuant to policy, inflicted constitutional harm "does not, without more, justify bifurcation" because there are less burdensome ways to deal with potentially prejudicial and confusing evidence such as using limiting instructions or a special verdict form.); *Vargas v. City of L.A.*, 2021 WL 2012592, at

PL.'S OPP. TO DEFS.' MOT. TO BIFURCATE THE TRIAL AND DISCOVERY OF THE INDIV. LIABILITY CLAIMS AND THE *MONELL* AND SUPERVISORY LIABILITY CLAIMS - 8
Case No.: 3:20-cv-04183-CRB
010930-11/1577632 V1

1   retains its discretion to determine whether to bifurcate despite rulings in other cases.[13] Moreover, these

2   authorities lose their appeal given that it is very likely that a reasonable jury will find that Plaintiff

3   suffered constitutional violations at the hands of the individual officers,[14] which would then necessitate

4   a second trial against the municipalities and supervisors anyway if the case were bifurcated. This

5   likelihood moots Defendants' argument that precious judicial resources should be used in a first trial

6   to determine the individual officers' liability when it is already very likely that a second trial will occur

7   anyway that resolves the *Monell* and supervisory liability claims. It is more efficient for the Court and

8   the parties to try all claims at once and not engage in separate trials.

9        Similarly, Defendants' reliance on *Trevino v. Gates*, 99 F.3d 911, 920-21 (9th Cir. 1996) for

10   the argument that the *Monell* claims depend on a finding of supervisory liability is unpersuasive. The

11   plaintiff in *Trevino* argued that the supervisor in that case *ratified* unconstitutional conduct of those

12   who caused constitutional violations, which may impose municipal liability. Here, the direct liability

13   claims against the supervisors are focused on their *deliberate indifference*, *not their ratification* of

14   conduct. MTD Order at 12 (stating Plaintiff's supervisory liability theory: "Collectively, these policies,

15   incidents, and reports suggest that Sheriff Essick acted with callous indifference to the rights of

16   others.") (internal citations and quotations omitted); *see also* Am. Compl. ¶¶ 58, 61, 64, 66, 69, 70, 77,

17   79, 80, 93, 102, 106, 112, 113, 120, 122 (describing Plaintiff's claim for supervisory liability). Thus,

18

19

20   *2 (9th Cir. May 20, 2021) ("*Heller* does not present a categorical bar to *Monell* liability in the absence of individual liability."); *see Fairley*, 281 F.3d at 916 (holding that exoneration of officers under *Heller* and *Quintanilla* does not automatically preclude municipal liability).

21

22   [13] *Estate of Alderman*, 2018 WL 4156740, at *1 (Rule 42(b) confers broad discretion upon the district court to bifurcate).

23   [14] This Court found that the Amended Complaint plausibly alleged constitutional violations that would support liability against the individual officers. *See e.g.,* MTD Order at 7 ("Thus, DS Perkins lacked probable cause to arrest McDonald for resisting arrest."); MTD Order at 8 ("DS Perkins did not have probable cause to arrest McDonald"); MTD Order at 9 ("Thus, the nature of the intrusion disproportionately outweighs the government's interest, which demonstrates that DS Perkins's alleged conduct constituted excessive force in violation of McDonald's Fourth Amendment rights."); MTD Order at 9 ("DS Perkins lacked probable cause to arrest McDonald, therefore DS Perkins and Deputy Clegg lacked probable cause to search McDonald."); MTD Order at 15 ("Deputy Clegg participated in and failed to intervene and stop the underlying unlawful conduct, which plausibly gives rise to liability under the integral participant doctrine."); MTD Order at 19-20 (Plaintiff plausibly alleges Bane Act violations for interference with constitutional rights).

24

25

26

27

28

PL.'S OPP. TO DEFS.' MOT. TO BIFURCATE THE TRIAL AND DISCOVERY OF THE INDIV.
LIABILITY CLAIMS AND THE *MONELL* AND SUPERVISORY LIABILITY CLAIMS - 9
Case No.: 3:20-cv-04183-CRB
010930-11/1577632 V1

the ratification theory discussed in *Trevino* does not control the bifurcation calculus in this case for deliberate indifference.

Based on the above, it is clear that Plaintiff's claims against Defendants are closely intertwined because of Defendants' collective inactions. The claims should not be separated because they are inseparable: Defendants' policies of inaction caused the individual officers to violate Plaintiff's civil rights and deliberate indifference is illustrated through the individual officers' actions. Bifurcation of discovery and trial is therefore inappropriate. Bifurcation will only serve to prejudice Plaintiff in the preparation and prosecution of his claims by enabling Defendants to withhold critical discovery and forcing Plaintiff to make disjointed arguments relating to overlapping issues and facts at trial.

**B.      Bifurcation Will Not Facilitate Disposition of the Issues and Is Not in the Interest of Judicial Economy.**

Bifurcation of the issues is not in the interest of judicial economy. As an initial consideration, Defendants are just bringing their MTB now (over 10 months after the Amended Complaint was filed and almost 7 months after this Court issued its MTD Order) after allegedly being served with "overbroad, sweeping and burdensome discovery." MTB at 2. Plaintiff has attempted to meet and confer with Defendants after submitting a letter to them outlining many deficiencies in their untimely discovery responses,[15] but Defendants have delayed producing relevant documents[16] and have failed to meaningfully engage Plaintiff to narrow any disputed discovery requests.[17] Plaintiff can only suspect that the current MTB is a pretext for an undue delay tactic employed to avoid meaningfully addressing/responding to Plaintiff's discovery requests[18] so that Defendants can move the case forward

---

[15] *See* Declaration of Wesley A. Wong in Support of Plaintiff's Opposition to Defendants' Motion to Bifurcate the Trial and Discovery of the Individual Liability Claims and the *Monell* and Supervisory Liability Claims ("Wong Decl."), Ex. A.

[16] Wong Decl., Ex. B. (emails illustrating Defendants' delay in responding to discovery, producing documents, and showing the scheduling of a meet and confer conference on May 26, 2021).

[17] The parties last engaged in a meet and confer session on May 26, 2021, in order to discuss Plaintiff's requested discovery. There was no meaningful discussion to narrow Plaintiff's discovery requests to reasonable limitations, and Defendants were unwilling to withdraw their meritless objections, specifically related to the "official information" privilege. Defendants stood on their objections and Plaintiff continues to seek requested discovery. *See* Wong Decl., Ex. A, and Ex. B.

[18] *Van Patten v. Washington County by and through Washington County Sheriff's Office*, 2017 WL 2616888, at *4 (D. Or. June 16, 2017) (holding that the defendant's unexpected "delay in

PL.'S OPP. TO DEFS.' MOT. TO BIFURCATE THE TRIAL AND DISCOVERY OF THE INDIV. LIABILITY CLAIMS AND THE *MONELL* AND SUPERVISORY LIABILITY CLAIMS - 10
Case No.: 3:20-cv-04183-CRB
010930-11/1577632 V1

1   to Plaintiff's detriment (Plaintiff does not have all the discovery he requested and needs). This is

2   especially so given that the parties are on the eve of scheduling depositions (where critical documents

3   relating to all claims will be needed) and given that Defendants are now pressuring Plaintiff to provide

4   his availability for deposition dates despite the parties' outstanding, unresolved discovery issues.[19]

5   Plaintiff foresees that given these circumstances, Plaintiff will suffer prejudice and judicial resources

6   will be wasted on drawn out motion practice to compel discovery responses especially if current

7   discovery disputes are complicated further with an order bifurcating discovery and trial.

8          Judicial economy is also not served given the nature of the claims. The claims against the

9   municipalities and the supervisors are *not* dependent on the success of the claims against the individual

10  officers. *See supra* footnote 6 above (collecting cases where courts have stated that even if individual

11  officers are exonerated, liability can still be found against municipalities and supervisors). The claims

12  here involve "both policies of action and inaction by the [municipal and supervisor Defendants] that,

13  if proven, may constitute constitutional injuries to Plaintiff independent of [the individual officers] . .

14  . . If proven, th[ese] allegation[s] may suffice as the basis for an independent constitutional injury

15  inflicted by the [municipalities and supervisors] that is unaffected by potential exoneration of the

16  individual officers . . . . ***This example alone warrants declining to bifurcate the trial***, as exoneration

17  of the individual officers in the first phase of a bifurcated trial would not preclude a jury verdict

18  imposing *Monell* liability on the [municipalities and supervisors] in the second phase of the trial."

19  *Estate of Alderman*, 2018 WL 4156740, at *3 (denying a defendants' motion to bifurcate) (emphasis

20  added). Further, "[w]ithout assurance that resolution of the first phase of the trial could be dispositive

21  of the entire case, ***bifurcating the Monell claims from the individual claims appears to have no***

22  ***purpose other than resulting in duplicative proceedings undermining judicial economy***." *Id.*

23

---

24  seeking bifurcation weighs against separate trials . . . . The County did not raise the issue of
    bifurcation [previously] or at any time in the five months prior to filing its motion for bifurcation . . .
25  . The County does not offer, nor can the court discern, any basis for the County's delay in seeking
    bifurcation. Such delay is not harmless—ordering separate trials mere weeks before trial would be
26  prejudicial to Plaintiff's preparation of her trial strategy. Such unexplained delay further supports
    denying Defendants' motion [to bifurcate].").

27         [19] Defendants continue to pressure Plaintiff for deposition dates despite knowing that Defendants
28  have not resolved outstanding discovery disputes. *See* Wong Decl., *See* Ex. B and Ex. C.

1   (emphasis added). Moreover, "bifurcating the trial as suggested by [Defendants] would require the

2   repetition of both lay and expert witness testimony." *Afshar*, 2007 WL 779748, at *1 (denying

3   defendant's motion to bifurcate).

4          Additionally, "[t]he amount of time saved in the event of a defense verdict in the first trial

5   would be nominal. If a jury finds that there was a constitutional violation, the second phase of trial

6   would likely result in a longer aggregate time for trial than would a single trial on both claims . . . .

7   [B]ifurcated trials on *Monell* claims consume more judicial resources if the jury finds a constitutional

8   violation in the first trial[.]" *Ryan*, 2017 WL 2426868, at *2 (denying the defendants' motion to

9   bifurcate) (internal citations omitted).

10         Lastly, Defendants' argument relating to the recovery of compensatory damages, *see* MTB at

11   6, is unpersuasive. Defendants cite Cal. Gov. Code, § 825(a), and argue "[i]n the event compensatory

12   damages are awarded against the individual officers in this case, *the municipality will be liable as well*

13   *in terms of respondeat superior for state claims and also would cover constitutional findings and*

14   *damages* (other than punitive damages)." MTB at 6 (emphasis added). Defendants are essentially

15   arguing that if compensatory damages related to all state and federal claims are awarded against the

16   individual officers in the first phase of a bifurcated trial, then it would obviate the need for a

17   determination of damages against the municipalities and supervisors in a second trial because the

18   municipalities would be vicariously liable for the damages awarded against their employees. This

19   argument is without merit. Despite a municipality's vicarious liability for state law claims, *see* Cal.

20   Gov. Code §§ 815.2(a), 825(a), the Supreme Court in *Monell* expressly rejected the concept of a

21   municipality incurring vicarious liability for Section 1983 violations (a federal claim). *Monell v. Dept.*

22   *of Social Services of City of New York*, 436 U.S. 658, 690 (1978) ("[W]e conclude that a municipality

23   cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot

24   be held liable under § 1983 on a *respondeat superior* theory."). Thus, there is no merit in Defendants'

25   assertion that bifurcation benefits judicial economy because damages awarded against the individual

26   officers in the first phase of a bifurcated trial will not automatically be assumed by the municipalities;

27   and the case will drag out longer, necessitating a second trial with the municipalities to assess any

28   damages for *Monell* liability. Judicial economy is better served if all parties are tried in a single trial

1    so that damages for Section 1983 violations can be collectively assessed/awarded against the

2    municipalities and the individual Defendants.

3           In fact, Defendants cited case *Dadisman v. County of Los Angeles*, 2021 WL 888897 (C.D.

4    Cal. Jan. 5, 2021) does not even support their argument. In that case, the defendant presented the exact

5    same judicial economy argument in support of their motion to bifurcate; the defendants presented

6    "three possible outcomes of the individual liability trial" that exactly mirrors the three possible

7    options/scenarios Defendants present here. *See Dadisman*, 2021 WL888897, at *3; MTB at 6. The

8    *Dadisman* defendants, similar to the Defendants here, argued that there would be no need for a second

9    trial because "under California law, a municipality is liable for compensatory damages awarded against

10   the individual [employee defendants] . . . . Thus, "bifurcating trial is more likely to save time and

11   resources because the first trial will probably moot the need for a second trial." *Id.* (internal quotations

12   and citations omitted).

13          Notably, the *Dadisman* court rejected the defendants' argument that "a second trial [to

14   determine *Monell* liability] would be unnecessary in Scenario 3" where the "jury finds a constitutional

15   violation and the individual defendants are not entitled to qualified immunity." *Id*. The *Dadisman* court

16   held that the defendants wrongly assumed "that the only benefit of the *Monell* trial is compensatory

17   damages" and that "a successful civil rights plaintiff often secures important social benefits that are

18   not reflected in nominal or relatively small damages awards" and, thus, "a *Monell* trial is possible in

19   two out of three of Defendants' scenarios, and is not as remote as Defendants claim." *Id.* (internal

20   quotations and citations omitted) (citing *City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986)

21   (discussing that civil rights suits are unlike private tort cases because a civil rights plaintiffs seeks to

22   vindicate important civil and constitutional rights that cannot be valued solely in monetary terms)).

23   Thus, the court held that judicial economy would not be served by bifurcating the case because the

24   jury would likely still need to decide the *Monell* claims in a second trial even if compensatory damages

25   were awarded during the first trial. The *Dadisman* court's rationale should similarly be applied here to

26   this case because Plaintiff, in addition to seeking damages, is seeking to vindicate his civil rights

27   against the municipality and supervisory defendants who have perpetuated ongoing, systemic,

28

problematic, and unconstitutional policing practices.[20] Hence, keeping the claims together in a single trial will better serve judicial economy.

Defendants' argument also fails because it ignores the possibility that Plaintiff is entitled to punitive damages that are separate from any compensatory damages awarded against the individual officers. Defendants argue that "Plaintiff cannot recover additional damages for any *Monell* or supervisory liability claims as Plaintiff's damages are what Plaintiff's damages are for the claimed unlawful police contact. Therefore, bifurcating trial and discovery would enable efficiency and the preservation of judicial economy, since the first trial will likely be dispositive of the second trial, no matter the outcome." MTB at 6. As discussed at length above, a determination of non-liability against the individual officers is not dispositive of the *Monell* and supervisory liability claims against the municipalities and the supervisor defendants. *See e.g., supra* footnote 6 above and related discussion. Additionally, Defendants' assertion that Plaintiff "cannot recover additional damages for any *Monell* or supervisory liability claims" is incorrect. MTB at 6. Plaintiff is seeking and is entitled to punitive damages[21] against the individual officers, Sheriff Essick, and Administrative Sergeant Kidder as a result of Section 1983 liability. *Smith v. Wade*, 461 U.S. 30, 56 (1983) (the U.S. Supreme Court held: "We hold that a jury may be permitted to assess punitive damages in an action under §1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others. We further hold that this threshold applies even when the underlying standard of liability for compensatory damages is one of recklessness.").

Therefore, depending on how and if the jury awards punitive damages in addition to any compensatory damages, the amount of punitive damages awarded against each individual defendant

---

[20] Although Plaintiff is no longer seeking injunctive relief, Plaintiff anticipates that much needed policy, social, and police reforms may result in Sonoma County if the claims in his case are kept together and Plaintiff is able to try his Section 1983 *Monell* claims for damages against the municipalities and its supervisors alongside the claims against the individual officer defendants.

[21] *See* Am. Compl. at pg. 44 (Plaintiff's Prayer for Relief seeks punitive damages in addition to other damages).

1   in this case may vary.[22] *See Alexander v. City of Milwaukee*, 474 F.3d 437, 454-55 (7th Cir. 2007)

2   ("Punitive damages should be proportional to the wrongfulness of **each defendant's actions** . . . .

3   Although the jury was instructed to consider the reprehensibility of the Defendants' conduct . . . [the

4   jury] should have been more clearly instructed that **each individual defendant's actions and fault**

5   must serve as the basis for fashioning an appropriate punitive damages award.") (internal quotations

6   and citations omitted) (emphasis added). Indeed, any damages awarded against Defendants Perkins

7   and Essick may be significantly higher than awards against the other Defendants.[23] Thus, even if

8   compensatory damages are awarded in a first trial based on the individual officers' actions, bifurcation

9   will only serve to prolong the length of this case and utilize more judicial resources because punitive

10  damages for the other Defendants must be assessed at a separate trial.[24] This is burdensome and

11  inefficient. A single trial with a well-crafted verdict form will remedy this dilemma and preserve

12  judicial economy.

13  **C.      Defendants Will Not Suffer Prejudice, Defendants Have Not Met Their Burden in Showing Prejudice, and Bifurcation Will Prejudice Plaintiff.**

14

15          Defendants argue that they will suffer undue prejudice if this case is not bifurcated and Plaintiff

16  is allowed to introduce evidence of the Defendants' past behavior at trial. MTB at 7-8. Strangely,

17  Defendants cite in support *Ryan*, which is a non-supporting case where bifurcation was denied and the

18  defendants' arguments relating to undue prejudice was rejected. There, the defendants' "only specific

19  argument for prejudice [was] the possibility of evidence of 'bad acts' by the [municipal defendant]."

20  *Ryan*, 2017 WL 2426868, at *2. The court found this insufficient to show undue prejudice. Here, too,

21          [22] This does not even take into account any statutory damages that Plaintiff is entitled to, which

22  may cause damages to vary even more from defendant to defendant depending on what the jury finds.

23          [23] *See supra* footnote 14 (citing the MTD Order's description of constitutional violations

24  committed by Defendants Perkins and Essick); *see also* MTD Order at 12: "Sheriff Essick acted with callous indifference to the rights of others." (internal quotations and citations omitted). A punitive

25  damages award may be significantly higher if awarded against Sheriff Essick because of his "callous indifference."

26          [24] The jury must assess punitive damages as to each defendant. *Alexander*, 474 F.3d at 454-55.

27  Defendants' citation to Cal. Gov. Code § 825(a) is unhelpful to their vicarious liability argument because that code section does not mandate that a municipality automatically assumes liability for punitive damages. The municipality's governing body must assess any punitive damages award

28  before paying. Cal. Gov. Code § 825(b).

PL.'S OPP. TO DEFS.' MOT. TO BIFURCATE THE TRIAL AND DISCOVERY OF THE INDIV.
LIABILITY CLAIMS AND THE *MONELL* AND SUPERVISORY LIABILITY CLAIMS - 15
Case No.: 3:20-cv-04183-CRB
010930-11/1577632 V1

1    Defendants similarly argue that there is "an inherent risk that the jury will consider the past behavior

2    of the County generally, and incorrectly apply their findings to the individual defendants in the current

3    case, resulting in undue prejudice." MTB at 7. Defendants fail to describe specifically how or why

4    they would be prejudiced by the introduction of "past behavior of the County generally" aside from

5    asserting this generalization. Their prejudice argument should fail on this basis alone because

6    Defendants have failed to satisfy their burden as the moving party.

7           Defendants attempt to redeem their prejudice argument by citing *Quintanilla*. In that case, the

8    court ordered bifurcation because "the plaintiff's strategy was to convince the jury to award him

9    damages on the strength of evidence concerning police dog attacks on others [more severe than the

10   plaintiff's attack]." *Quintanilla*, 84 F.3d at 356. The *Quintanilla* court found this type of evidence to

11   be prejudicial. However, *Ryan* is instructive in interpreting *Quintanilla*'s limitations relating to

12   prejudice.

13          In *Ryan*, the defendants attempted to cite *Quintanilla* in the same way as Defendants here in

14   order to argue prejudice to move for bifurcation. However, the *Ryan* court stated that "[t]he evidence

15   Defendants rely on [to prove prejudice] . . . is ***less prejudicial*** than the evidence in *Quintanilla*[.]"

16   *Ryan*, 2017 WL 2426868, at *2 (emphasis added). In determining the less prejudicial effect of this

17   evidence, the court stated that the Plaintiff sought to introduce "use-of-force reports documenting other

18   police-dog bites, without photographs or videos of bites and injuries, and written City policy

19   documents." *Id.* at *3. The court concluded that "the evidence of other-police-dog bites offered here is

20   not so prejudicial that a limiting instruction could not cure any resulting prejudice[.] . . . Written

21   accounts of police-dog bites and written policy documents are not the type of highly prejudicial

22   evidence warranting bifurcation." *Id.*

23          Here, Plaintiff seeks similar, non-prejudicial evidence through discovery requests.[25] Similar to

24   the plaintiff in *Ryan*, Plaintiff is seeking use of force reports, written policy documents, written

25   accounts, and other relevant, non-prejudicial evidence to prosecute his *Monell* and supervisory liability

26   claims. This type of evidence was found not to be prejudicial in *Ryan*. Likewise, it is not prejudicial

27

28   _____

     [25] *See* Wong Decl., Exs. A and B.

PL.'S OPP. TO DEFS.' MOT. TO BIFURCATE THE TRIAL AND DISCOVERY OF THE INDIV.
LIABILITY CLAIMS AND THE *MONELL* AND SUPERVISORY LIABILITY CLAIMS - 16
Case No.: 3:20-cv-04183-CRB
010930-11/1577632 V1

1   here, especially since Defendants have failed to meet their burden in specifically describing any

2   potential prejudice. Any perceived prejudice can be cured with a limiting instruction and/or the scope

3   of discovery can be limited through reasonable meet and confer sessions.[26]

4        In fact, Plaintiff will actually be the one who suffers prejudice if the case is bifurcated.[27]

5   Defendants' argument that Plaintiff is engaged in discovery that "have nothing to do with the incident

6   involving Plaintiff" is unfounded because the crux of Plaintiff's claim focuses on Defendants'

7   deliberate indifference and collective inaction which caused Plaintiff's civil rights violations. Plaintiff

8   requires broad discovery on past incidents/events to assess his claims for deliberate indifference.

9   Although Plaintiff served numerous discovery requests on Defendants, a large number of discovery

10  requests, which Plaintiff is entitled to under the Federal Rules, does not justify a nonresponse from

11  Defendants. Defendants are a county, a town, a sheriff, and employees of the county. It is beyond

12  dispute that these Defendants have access to many more resources than Plaintiff. Defendants' failure

13  to describe the prejudice they face is insufficient to meet their burden.

14       Plaintiff has remained ready and willing to meet and confer over reasonable limitations on

15  Plaintiff's requests but Defendants have not engaged and stand on their meritless, broad objections.[28]

16  Bifurcating discovery and trial will allow Defendants to continue being deliberate indifferent and

17  perpetuate their unconstitutional policies of inaction without any deterrent. This will certainly

18  prejudice Plaintiff and other citizens.

19  **D.    Bifurcation is Unnecessary to Avoid Jury Confusion and Any Confusion Can Be Cured Through Limiting Instructions.**

20       Lastly, Defendants speculate without authority that the jury will be confused if the case is not

21  bifurcated. MTB at 8-9. Defendants do not consider the value of limiting instructions and/or a special

22

23

---

24   [26] *Dadisman*, 2021 WL 888897, at *4 (denying bifurcation of the trial and *Monell* related discovery, and stating that "[b]ecause the Court declines to bifurcate the trial, a [*Monell* related discovery] stay is not warranted. Defendants' concerns can be addressed by limiting the scope of the discovery sought rather than delaying discovery all together.").

25

26   [27] *See Hamm v. American Home Products Corp.*, 888 F. Supp. 1037, 1039 (E.D. Cal. 1995) (E.D. Cal. Judge William Shubb denying the defendants' request for bifurcation and explaining how bifurcating a trial creates problems that "would be unfair to the plaintiff.").

27

28   [28]*See* Wong Decl., Exs. A and B.

PL.'S OPP. TO DEFS.' MOT. TO BIFURCATE THE TRIAL AND DISCOVERY OF THE INDIV. LIABILITY CLAIMS AND THE *MONELL* AND SUPERVISORY LIABILITY CLAIMS - 17
Case No.: 3:20-cv-04183-CRB
010930-11/1577632 V1

1    verdict form. Defendants once again focus on the allegedly burdensome discovery requested by

2    Plaintiff.

3          There are several problems on the face of Defendants' argument. Defendants give the Court no

4    facts from which the Court could conclude that their concerns are well founded. Defendants do not

5    identify any particular evidence or "irrelevant information," *see* MTB at 9, that is likely to produce

6    juror confusion or explain why any particular evidence is so prejudicial or confusing that a limiting

7    instruction would be insufficient to address their concerns. There can be no real question that a

8    bifurcated trial would take longer than a single trial where all claims against all parties are presented

9    to a single jury. Defendants do not describe how bifurcating this case will reduce confusion as opposed

10   to a single trial. Defendants simply speculate, prematurely, that jurors cannot distinguish between past

11   and present factual accounts/information that will inevitably (at some point) be needed anyway to

12   assess Plaintiff's deliberate indifference claims.[29]

13         If there are concerns that  evidence against the Defendants is inadmissible because of prejudice

14   or potential juror confusion, Defendants are entitled to limiting instructions. It is well established that

15   juries are assumed to follow instructions. *See e.g., Weeks v. Angelone*, 528 U.S. 225, 234 (2000).[30]

16   Both the jury instructions and the verdict form itself can easily walk the jury through the deliberation

---

[29] *See Dadisman*, 2021 WL 888897, at *4 (in denying the defendants' motion to bifurcate, the court was not convinced of the defendants' premature argument that the jury would be confused by evidence of deliberate indifference to be used only against the County of Los Angeles and evidence which should only be used against the individual defendants.").

[30] *See also Estate of Alderman*, 2018 WL 4156740, at *3 (rejecting defendant's argument of jury confusion on trying both the individual liability and *Monell* claims "in part due to the multitude of facts relating to prior incidents of alleged officer impropriety" and recommending the use of limiting jury instructions: "limiting jury instruction… will certainly be less significant than precluding plaintiffs from presenting a theory of *Monell* liability for which the municipality may be liable, independent of the individual defendants."); *Ryan v. City of Salem*, 2017 WL 2426868, at *3 (D. Or. Jun. 5, 2017) ("The court is confident in the jury's ability to follow the court's instructions and apply the Fourth Amendment to [the Defendants'] conduct."); *Afshar v. City of Sacramento*, 2007 WL 779748, at *2 (E.D. Cal. Mar. 14, 2007) ("Concerns about potential prejudice to the defendant may be directly addressed with appropriate limiting instructions. The court may also use a special verdict form which would instruct the jury to determine the question of injury before determining the question of policies or customs."); *Parra v. City of Chino*, 1998 WL 88256, at *6 (9th Cir. 1998) (approving the use of a special verdict form to avoid prejudicial effect).

1   process.[31]

2   **IV.   CONCLUSION**

3   Bifurcation is unnecessary. The simple fact is that there is nothing unique about this case that

4   requires the cumbersome procedures of bifurcation. The closely intertwined claims should be tried

5   together, and discovery should proceed accordingly.

6

7   DATED: July 23, 2021                    Respectfully submitted,

8                                           HAGENS BERMAN SOBOL SHAPIRO LLP

9

10  By  */s/ Wesley Wong*
                                                WESLEY A. WONG

11

12  Reed R. Kathrein (139304)
    Wesley A. Wong (314652)

13  715 Hearst Avenue, Suite 202
    Berkeley, CA  94710

14  Telephone: (510) 725-3000
    Facsimile:  (510) 725-3001

15  reed@hbsslaw.com
    wesleyw@hbsslaw.com

16

17  Steve W. Berman
    Jacob P. Berman (327179)

18  HAGENS BERMAN SOBOL SHAPIRO LLP
    1301 Second Avenue, Suite 2000

19  Seattle, WA  98101
    Telephone: (206) 623-7292

20  Facsimile:  (206) 623-0594
    steve@hbsslaw.com

21  jakeb@hbsslaw.com

22  *Counsel for Plaintiff La'Marcus McDonald*

23

24

25

26

27  ────────────────
    [31] *See e,g,,* 2017 Edition, Ninth Circuit *Manual of Model Civil Jury Instructions*, Chapter 9 (Civil

28  Rights Actions) (last updated Mar. 2021).

PL.'S OPP. TO DEFS.' MOT. TO BIFURCATE THE TRIAL AND DISCOVERY OF THE INDIV.
LIABILITY CLAIMS AND THE *MONELL* AND SUPERVISORY LIABILITY CLAIMS - 19
Case No.: 3:20-cv-04183-CRB
010930-11/1577632 V1