

T 510.725.3000    F 510.725.3001

Wesley Wong
**HAGENS BERMAN SOBOL SHAPIRO LLP**
715 HEARST AVENUE, SUITE 202
BERKELEY, CA  94710
www.hbsslaw.com
**Direct (510) 725-3033**
**WesleyW@hbsslaw.com**

February 23, 2023

**VIA ECF**

Hon. Sallie Kim
United States Magistrate Judge
United States District Court
Northern District of California
San Francisco Courthouse, Courtroom C—15th Floor
450 Golden Gate Ave.
San Francisco, California 94102

      Re: *McDonald v. County of Sonoma, et al.* **(3:20-cv-04183-CRB-SK)**

Dear Judge Kim:

The Court's assistance is requested to resolve the below discovery dispute.[1]

## I. Background and Unresolved Dispute

On May 24, 2022, the parties submitted a joint discovery letter brief seeking to resolve Defendants' claims of privilege over most all documents requested by Plaintiff concerning matters other than his concerning the use of excessive force, racial profiling and bias, officer disciplinary/termination records, and police reform/oversight and audit efforts (a process begun almost 2 years ago in March 2021). *See* ECF 53. The Court considered Defendants' claims of privilege, but deferred ruling on them and agreed with Defendants that Plaintiff's requests were overbroad and suggested "[a] more focused approach might be for Plaintiff to seek lists of claims and lawsuits and then pursue a subset of specific documents." *See* ECF No. 56 (June 13. 2022 Order Regarding Discovery Dispute).

---

[1] Counsel for Plaintiff La'Marcus McDonald ("Plaintiff") and counsel for Defendants County of Sonoma, Town of Windsor, Sheriff Mark Essick, Deputy Sheriff Travis Perkins, Deputy Sheriff Gregory Clegg, and Administrative Sergeant Brent Kidder (collectively, "Defendants") attest that they have met and conferred telephonically several times and in good faith to resolve the disputes set forth below. Counsel for Plaintiff and Defendants attest further that they have complied with Section 9 of the Northern District's Guidelines for Professional Conduct regarding discovery prior to filing this joint letter.

SEATTLE   BOSTON   CHICAGO   COLORADO SPRINGS   LOS ANGELES   NEW YORK   PHOENIX   SAN FRANCISCO   SAN DIEGO   WASHINGTON, D.C.

010930-11/2187442 V2

February 23, 2023
Page 2

To resolve the overbreadth, Plaintiff narrowed the request to police investigation documents, communications, source materials, and audit materials related to excessive force claims and lawsuits used by Sonoma County's Independent Office of Law Enforcement Review and Outreach ("IOLERO")[2] in coordination with the Sonoma County Sheriff's Office to prepare police audit reports and policy recommendations during the relevant discovery period.[3] Defendants however continue to argue privilege and work-product issues and after months of sending draft joint letters back-and-forth Defendants argue that the documents sought by plaintiff either do not exist, are not in IOLERO's custody and control, are already publicly available, and/or are protected from discovery by the attorney-client privilege and the work product doctrine. Plaintiff argues that IOLERO related documents and communications are discoverable and not protected because such documents are relevant to prosecute Plaintiff's claims for *Monell* and supervisory liability and are not prepared in anticipation of litigation or as legal advice but rather in the ordinary course of business.

## II. Plaintiff's Position

Since Plaintiff sent Defendants the first draft of this joint dispute letter, Defendants' position has continued to morph, each time with another supporting document and now claims that the sought-after documents do not exist or not in IOLERO's custody (which is irrelevant since the discovery is against the County and the Sheriff's Office). No matter who amongst the Defendants have the documents, the requested IOLERO discovery should be produced[4] and the assertion of the attorney-client privilege and

---

[2] IOLERO's website can be found here: https://sonomacounty.ca.gov/administrative-support-and-fiscal-services/independent-office-of-law-enforcement-review-and-outreach (last visited Jan. 4, 2023).

[3] The Court ordered that the time period for relevant discovery is limited to "incidents that occurred between January 1, 2015 and July 9, 2019 or information that was provided in that time period, even if the documents themselves were created after July 9, 2019." ECF No. 56, at p. 4, lines 6-9. The relevant discovery period referred to in Plaintiff's portion herein is January 1, 2015 to July 9, 2019.

[4] The requested IOLERO discovery includes Plaintiff's Requests for Production Nos. 31, 43, and 52. *See* ECF No. 54-1 (Plaintiff's First Set of Discovery Requests). Defendants argue that these requests are "overly expansive." However, during the parties' meet and confer on narrowing discovery, Plaintiff's counsel suggested limitations but has been unable to narrow these requests with Defendants' counsel because Defendants claim that *all* IOLERO materials are privileged and not discoverable. This has stalled further discussions on narrowing.

February 23, 2023
Page 3

the work product doctrine should be denied. IOLERO related materials generated during the relevant discovery period are relevant for Plaintiff's *Monell* claims and were prepared in the ordinary course of business and not in anticipation of litigation or for provision of legal advice.

*Firstly*, the Court stated in its Order Regarding Discovery Dispute (ECF No. 56) that "[g]iven that the District Court held that Plaintiff's allegations referring to the prior incidents of force, **the IOLERO audit reports and policy recommendation… support Plaintiff's claims for Monell liability for the County of Sonoma and supervisory liability, Plaintiff should be able to obtain that information.**" *Id.* at 3-4 (emphasis added).

*Secondly*, the attorney-client privilege and work product doctrine does not shield from discovery routine investigation related documents and communications that are prepared in the ordinary course of business (not as legal advice) regardless of the existence of any pending litigation. *See Anderson v. Marsh*, 312 F.R.D. 584, 590-93 (E.D. Cal. 2015) (rejecting defendants' arguments that attorney-client privilege and work product doctrine applied to California Highway Patrol departmental investigation documents relating to an officer's use of force because "investigations are not subject to attorney-client privilege"; and because the documents were created in the ordinary course of business "regardless of whether there would be litigation regarding the incident."); *Mollica v. County of Sacramento*, 2022 WL 317004, at *5 (E.D. Cal. Feb. 2, 2022) ("Documents a law enforcement agency creates routinely, regardless of potential litigation, are not created in anticipation of litigation; they are created in the ordinary course of business. California district courts are united in this conclusion.").

Here, IOLERO is not a law firm and, pursuant to the Ordinance establishing it, its intent and purposes does not include the routine provision of legal advice.[5] It's mission is "to provide an objective,

---

[5] *See* Board of Supervisors Ordinance No. 6174 (dated Sept. 13, 2016) mandating creation and describing function of IOLERO as an audit, investigations, community relations, and policy making agency. https://sonomacounty.ca.gov/Main%20County%20Site/Administrative%20Support%20%26%20Fiscal%20Services/IOLERO/Documents/Archive/Department%20Info/_Right%20Column%20Content/Ordinance-6174-%282016%29.pdf (last visited Jan. 4, 2023); Ordinance No. 6174 is filed as **Pltf. Ex. A** to the Declaration of Wesley A. Wong in Support of Joint Discovery Dispute Letter ("Wong Declaration"), filed herewith.

February 23, 2023
Page 4

*independent* and appropriate review and audit of law enforcement administrative investigations"; "propose thoughtful *policy* recommendations"; "help increase transparency"; and "strengthen the relationship between law enforcement …and the communities…."[6] As part of its ordinary course of business, IOLERO reviews and evaluates prepared Sheriff's Office investigation materials[7] and citizen complaints that *are not* prepared in anticipation of any litigation and *are not* prepared because Defendants seek confidential legal advice. *See Marsh*, 312 F.R.D. at 584 (no attorney-client privilege for investigation reports created by Sergeant and not created for purpose of obtaining legal advice). Also, as part of its ordinary course of business, IOLERO routinely publishes summaries of its investigations in publicly available annual reports.[8] The Sheriff's Office provides source materials for these public reports in the ordinary course of business not for the purpose of obtaining legal advice but for police audits and transparency because it is mandated to do so. *See* Wong Declaration, Pltf. Ex. A, p. 2, Sec. 2-394(b); *Marsh*, 312 F.R.D. at 591 ("It is vital to the attorney-client privilege that the communication be *made in confidence* for the purpose of obtaining *legal advice from the lawyer*.") (quotes and cite omitted) (emphasis in original).

---

[6] *Id.* (emphasis added). IOLERO is an "independent, non-police county agency [and its] mission is to strengthen the relationship between the Sheriff's Office and the community it serves. IOLERO's primary functions include reviewing complaints against the Sheriff's Office, community outreach, and making policy recommendations to the Sheriff's Office." *See* https://sonomacounty.ca.gov/administrative-support-and-fiscal-services/independent-office-of-law-enforcement-review-and-outreach/who-we-are (last visited Jan. 4, 2023); *see also* ECF No. 56 at p. 2 ("The IOLERO is an agency that Sonoma County created in 2016 to be a 'watchdog' for Sonoma County law enforcement."); *see also Dudgeon v. County of Sonoma*, 2021 WL 5407519, at *5 (N.D. Cal. Nov. 18, 2021) (describing routinely-generated IOLERO report that described use of force incident that was subject of lawsuit); *see also* https://sonomacounty.ca.gov/Main%20County%20Site/Administrative%20Support%20%26%20Fiscal%20Services/IOLERO/Documents/Archive/Department%20Info/_Right%20Column%20Content/IOLERO-Brochure-rem.pdf (" Is IOLERO affiliated with the Sheriff's Office? No. IOLERO is an independent, non-police county agency.") (last visited Jan. 4, 2023) (Wong Declaration, **Pltf. Ex. B**).

[7] These Sheriff's Office investigation materials are prepared, reviewed, and approved by the Sheriff's Office's Professional Standards Lieutenant *prior to* audit by IOLERO and/or its attorney director. *See* Wong Declaration, Defs. Ex. B-1 (2016 Op. Agrmt., p. 1, Item F.) and Defs. Ex. B-2 (2019 Op. Agrmt., p. 1, Item F.).

[8] Link to IOLERO's Annual Reports: https://sonomacounty.ca.gov/administrative-support-and-fiscal-services/independent-office-of-law-enforcement-review-and-outreach/annual-reports (last visited Jan. 4, 2023) (Wong Declaration, **Pltf. Ex. C** (IOLERO's Annual Reports for years 2016-2017, 2017-2018, 2019-2020, and 2020-2021)).

February 23, 2023
Page 5

Moreover, past and current Operational Agreements[9] between IOLERO and the Sheriff's Office do not create an attorney-client relationship. First, an agreement between IOLERO and the Sheriff's Office cannot alter the non-attorney-client, public-entity relationship created by Ordinance No. 6174.[10] *Hayes v. City and Cnty. of S.F.*, 2007 WL 2021865, at *5-6 (N.D. Cal. Jul. 12, 2007) (affirming that the basis of the attorney-client relationship in the case of public attorneys is not contractual, as in the case of the normal attorney-client relationship, but rather is statutory or mandated by county or city charter). Ordinance No. 6174 does not evidence the Sheriff's Office's intent to seek legal advice from IOLERO as an agency, and does not specify an attorney-client relationship between IOLERO as an agency and the Sheriff's Office.[11] [12]

Defendants attach a Legal Services Agreement[13] with IOLERO Director Jerry Threet, which is purportedly described in Sec. 2-393(c) of Ordinance No. 6174. This Legal Services Agreement was only just produced in late December 2022 right before the holidays during the late stages of drafting this

---

[9] Link to latest 2022 Operational Agreement between IOLERO and the Sheriff's Office: https://sonomacounty.ca.gov/Main%20County%20Site/Administrative%20Support%20%26%20Fiscal%20Services/IOLERO/Documents/Measure%20P%20Information/Operational-Agreement-IOLERO-Sonoma-County-Sheriff.pdf (last visited Jan. 4, 2023) (Wong Declaration, **Pltf. Ex. D**); *see also* Wong Declaration, Defs. Exs. B-1 and B-2 (2016 and 2019 Op. Agrmts.). **Plaintiff notes that both Defs. Exs. B-1 and B-2 were only recently produced to Plaintiff's counsel during the drafting of this letter**. It is unclear why Defendants failed to previously produce these agreements. Plaintiff continues to question what other relevant discovery is being withheld. Contrary to Defendants' assertion that Plaintiff is attempting to confuse the Court by referencing different versions of the Operational Agreement from 2016, 2019, and 2022, Plaintiff addresses these documents only <u>because Defendants cite and attach the 2016 and 2019 versions in their portion of the letter. Furthermore, viewing the 2016 and 2019 versions, including the current version, illustrates the non-legal-services functions of IOLERO.</u>

Defendants note that these documents were publicly available and not specifically sought in any discovery requests.

[10] Plaintiff agrees with Defendants that Ordinance No. 6174 is a legislative act of the Sonoma County Board of Supervisors—which *did not* create an attorney-client relationship with IOLERO as an agency but rather mandated a "special" legal services agreement with only one person: IOLERO's attorney director Jerry Threet.

[11] *Huntington Bank, Inc. v. Gilchrist Timber Co.*, 1995 WL 710843, at *1 (9th Cir. Nov. 30, 1995) ("putative client must show his subjective intent to enter relationship, and evidence of objective facts supporting subjective intent, notice to the lawyer of that intent, that the lawyer shared the intent, or that the lawyer acted to induce a reasonable person in client's position to rely on lawyer's professional advice.").

[12] Notably, there is no counter signature by an attorney or attorney representative in Ordinance 6174 evidencing an attorney-client relationship with IOLERO as an agency.

[13] *See* Wong Declaration, Defs. Ex. C.

February 23, 2023
Page 6

letter.[14] Despite this late production, the Legal Services Agreement only applies to Jerry Threet, IOLERO's Director, *as an individual attorney* and does not apply wholesale to IOLERO as a public agency as a whole—as would be the case for an entire law firm rendering legal services to a client as part of the ordinary course of business and in anticipation of litigation. The Legal Services Agreement does nothing to nullify IOLERO's non-legal, ordinary-course-of-business audit/investigation functions—functions that would still generate voluminous amounts of non-legal documents and items relevant to Plaintiff's *Monell* discovery—but simply protects from disclosure Mr. Threet's individual "provision of analyses, opinions and recommendations on specialized legal matters"—the key words being "specialized legal matters" which only constitute a "part of [Mr. Threet's] function as Director of IOLERO" to provide "special legal services." IOLERO as an agency cannot even compel by subpoena production of documents, which a legal services organization can easily and readily do—further distinguishing IOLERO from a legal services provider. Moreover, because the Legal Services Agreement has a non-assignment and non-delegation provision, it clearly does not apply to other IOLERO staff except the Director. Further, as Defendants readily concede, the next IOLERO Director, Karlene Navarro—**who was the IOLERO Director at the time of Plaintiff's police encounter with Defendants on July 9, 2019**—<u>did not even enter into a Legal Services Agreement</u> when she was appointed in March 2019,[15] which further evidences the lack of an attorney-client relationship with IOLERO. The fact that no Legal Services Agreement existed under Ms. Navarro further undermines Defendants' blanket assertion that the privilege associated with her work as an individual attorney should be conflated with and applied to IOLERO as a wholesale prohibition against all IOLERO-related discovery.

---

[14] Defendants only produced this agreement while further revising their portion of this letter after several rounds of prior revisions since Plaintiff sent his original draft portion in early September 2022.

[15] https://norcalpublicmedia.org/2019041020652/news-feed/attorney-karlene-navarro-appointed-head-of-watchdog-office-responsible-for-auditing-sonoma-county-sheriff-s-department (introducing IOLERO Director Navarro) (last visited Jan. 4, 2023).

010930-11/2187442 V2

February 23, 2023
Page 7

Moreover, neither the 2016 nor current Operational Agreements defines an attorney-client relationship or impose any privileges.[16] Only the April 25, 2019 agreement (2 months before the incident) attempts to label communications as related to legal advice, despite the fact that IOLERO is not authorized to practice law and no legal services are specified outside of the individual attorney director's services.[17] Additionally, the 2019 Operational Agreement section cited by Defendants as a basis to claim privilege only relates to Item H in the "Complaints received" sections and **not** to the "Access," the public "Annual Report" and audits, or "Training" sections. Further, under the Operational Agreements, materials shared by the Sheriff's Office are not identified as attorney legal communications, but as investigatory/case materials reviewed for completeness by the Professional Standards Lieutenant who only forwards such materials up the Sheriff's Office's chain of command for approval.

Defendants have the burden of establishing privilege.[18] Simply because IOLERO's director is an attorney who entered into a Legal Services Agreement that generally asserts privilege does not automatically create an impenetrable, blanket attorney-client relationship. The County Ordinance's explicit purpose for IOLERO is to "provide an objective, independent and appropriate review and audit of law enforcement" to "help increase transparency."[19] The Ordinance *does not* define any specific privileges or protections and Defendants provide no privilege log laying out what exactly Defendants claim fall within a request for legal advice aside from a blanket assertion that privilege applies to all of IOLERO's

---

[16] For example, the current Operational Agreement simply encourages compliance with protecting material but does not mandate bilateral privileges between IOLERO and the Sheriff's Office. The 2016 agreement is silent.

[17] *See* Defendants' Ex. B-2 to this letter (2019 Op. Agrmt. at pg. 1, Item H. under "Complaints received by IOLERO" section). Item H also conflates the "thoughts, analyses and opinions of the IOLERO director" with IOLERO as an agency, which by ordinance is not intended to be a legal services firm.

[18] *U.S. v. Richey*, 632 F. 3d 559, 566 (9th Cir. 2011) ("The party asserting the attorney-client privilege has the burden of establishing the relationship and privileged nature of the communication."); *Marsh*, 312 F.R.D. at 591 ("The attorney-client privilege applies only when necessary to effectuate its limited purpose[.]"); *Dominguez v. City of L.A.*, 2017 WL 10605960, at *4 (C.D. Cal. 2017) ("Failure to provide sufficient information may constitute a waiver of the privilege. Asserting a 'blanket objection'… will be found to be insufficient and improper.").

[19] *See* Board of Supervisors Ordinance No. 6174 (dated Sept. 13, 2016), at p. 1; *see also Ward v. Equilon Enterprises, LLC*, 2011 WL 13257271, at *6-8 (N.D. Cal. Feb. 24, 2011) (no attorney-client privilege or work product protection because dominant purpose of investigation was not legal advice, attorney mental impressions, or preparing for litigation **but rather to comply with statutory law**) (emphasis added).

February 23, 2023
Page 8

documents and source materials.[20] Defendants cannot broadly assert that there is blanket protection for all IOLERO materials that are both legal and non-legal in nature.[21] IOLERO's primary purpose is to audit and investigate the Sheriff's Office and, as the Ninth Circuit has held, "the primary-purpose test applies to attorney-client privilege claims for dual-purpose communications"—so even if IOLERO's director is an attorney who may be independently consulted for "specialized" legal advice at times, the primary purpose of IOLERO as an agency is not for the provision of legal advice and IOLERO's non-legal communications are therefore not protected by the attorney-client privilege. *See In re Grand Jury*, 23 F. 4th 1088, 1092-93 (9th Cir. 2021) (primary purpose test applies to dual-purpose communications).

Even if an attorney-client relationship existed, the described workflow Items A through G in the 2019 Operational Agreement[22] clearly evidences that there exists other non-privileged work up source materials in investigative files that are possessed by IOLERO (e.g., e-mails, allegation descriptions, case numbers, updates, investigations, etc.) not covered by Item H of the 2019 Operational Agreement. Defendants' assertion that these items do not exist or are not in IOLERO's control defies logic and is untenable given that IOLERO is a public agency that produces day-to-day, non-legal, audit, and investigatory work product notwithstanding any remote access database that the Sheriff's Office independently provides. Moreover, even if IOLERO's director reviews documents and communications in the ordinary course of business, these items are not always "created for the purpose of obtaining legal advice, but as part of the investigation" and "[t]he purpose… is to determine what occurred during the

---

[20] *See* FRCP 26(b)(5)(A) ("When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must:(i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed— and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.").

[21] *Richey*, 632 F. 3d at 567 ("It is also significant that Richey and the Peskys did not make a specific proffer of what communications, if any, exist in the appraisal work file, that are allegedly the proper subject of the attorney-client privilege…. It was therefore clear error for the district court to conclude that the entire appraisal work file is protected by the attorney-client privilege.").

[22] Similar workflow itemization lists appear in the 2016 and current Operational Agreements. The Operational Agreements detail similar routine procedures of coordinating/sharing non-legal information between IOLERO and the Sheriff's Office in the ordinary course of the Sheriff's Office's and IOLERO's business.

February 23, 2023
Page 9

incident and for the investigating official to review and critique the officer's conduct." *Marsh*, 312 F.R.D. at 591. Similar to the *Marsh* case's analysis, "the fact that [IOLERO's attorney director] reviews the documents created during the investigation is not sufficient to entitle them to attorney-client privilege." *Id.*

Lastly, Defendants' reliance on California privilege and privacy laws is misplaced. State law does not control this federal court's analysis.[23] Moreover, Defendants' last-ditch policy argument for favoring officer confidentiality is not the policy of this District. Courts balancing whether to disclose "official information"[24] or maintain its secrecy should resolve this issue in favor of disclosure because of strong policy reasons supporting individuals' civil rights and the public's confidence in the justice system. [25] Just because IOLERO records have never been produced in the past does not mean it is not discoverable in this case, and Defendants' reference to discovery practices in other cases should not control this case.

In any event, if the issue is just IOLERO, plaintiffs need to go back to Defendants to get a list of cases and incidents, as suggested by this Court's Order of June 13, 2022 and start the process all over again.

### III.  Defendants' Position

Defendants object to Plaintiff's request for police investigation documents, communications, source materials, audit materials and policy recommendations used by IOLERO. The documents sought

---

[23] *See* F.R.E. 501; *Villa v. County of S.D.*, 2021 WL 242981, at *4 (S.D. Cal. Jan. 25, 2021); *Hernandes v. City of Hayward*, 2005 WL 119871, at *2 (N.D. Cal. Jan. 20, 2005); *Bennett-Martin v. San Bernardino Valley Community College*, 2018 WL 5919212, at *6 (C.D. Cal. May 15, 2018); *Anderson v. City of Rialto*, 2017 WL 10562686, at *3-4 (C.D. Cal. Jun. 28, 2017); *Miller v. Pancucci*, 141 F.R.D. 292, 298-99 (C.D. Cal. 1992); *Doe v. Gill*, 2012 WL 1038655, at *3 (N.D. Cal. 2012).

[24] As previously held by the Court, Defendants have not provided information to meet their burden to assert the "Official Information" privilege "and the Court will require Defendants to do so once the parties narrow the requests." ECF 56 at p. 7.

[25] *See Kelly v. City of San Jose*, 114 F.R.D. 653, 660-67 (N.D. Cal. 1987); *Hernandes v. City of Hayward*, 2005 WL 119871, at *3 (N.D. Cal. Jan. 20, 2005) (affirming that courts are in favor of disclosure over preserving the secrecy of official information for public policy reasons).

February 23, 2023
Page 10

either do not exist, are not in IOLERO's custody and control, are already publicly available, and/or are privileged attorney client communications and/or work product.

<u>Importantly, Plaintiff's characterizations of IOLERO's operations and legal relationship with the County in this joint discovery letter are fundamentally misleading and based on a wrong premise</u>.  Plaintiff omits to mention significant material changes in terms of IOLERO's structure, mandates and operations over the last few years that are critical for Your Honor to understand this discovery dispute.  During the relevant time period for this discovery dispute, January 1, 2015 to July 9, 2019, the IOLERO Director (<u>an attorney himself/herself as mandated</u>) had an existing attorney-client relationship with the County of Sonoma, and had no independent investigatory authority.  A copy of <u>Ordinance No. 6174</u> establishing IOLERO on September 13, 2016, is attached as Defs. <u>Exh. A</u> to the Wong Declaration for Your Honor's ease of reference.

Considering IOLERO's limited function and statutory confidentiality and privilege requirements during this time period, Plaintiff's arguments -that records are discoverable because they are not prepared in anticipation of litigation and are prepared in the ordinary course of business, as opposed to legal advice, completely miss the point.  First, investigatory documents and source material are only held by the Sheriff's Office as the custodian of record for those documents, *not* by IOLERO, for several reasons:  (1) IOLERO had no statutory authority to conduct independent investigations and, therefore, would not have any such records specific to IOLERO[26], (2) source materials from Sheriff Office's investigations were only shared with IOLERO by providing the IOLERO Director remote access to the Sheriff's Office database, (3) which means that IOLERO does not have physical files of source materials for the relevant time period in its custody.  Further, Sheriff Office investigation materials exist irrespective of IOLERO and are subject to the

---

[26] Ordinance No. 6147 expressly ***prohibited*** IOLERO from conducting "its own investigation of complaints against law enforcement personnel," and compelling "by subpoena the production of any documents or the attendance and testimony of any witnesses," and deciding "policies, direct[ing] activities, or impos[ing] discipline on other County departments, officers and employees."  Note also that this is the only footnote by Defendants, while Plaintiff includes 25 footnotes.

010930-11/2187442 V2

February 23, 2023
Page 11

County's numerous other objections related to Plaintiff's overbroad discovery requests directed at the County. Thus, Plaintiff's argument that investigation or source materials were not prepared for litigation and do not contain legal advice is irrelevant for discovery of IOLERO documents since IOLERO does not hold these records.

Separate and apart from the investigation and source materials are documents that contain IOLERO's case-specific audit responses to the Sheriff's Office after the investigation results have been shared with IOLERO. These case-specific communications and reports contain IOLERO's thoughts, analyses, opinions and recommendations of the IOLERO Director on issues identified as part of the audit of the investigation, including opinions on legal matters, which were prepared and shared with the Sheriff's Office as part of IOLERO's then-existing attorney-client relationship and are, therefore, privileged and not subject to discovery. The fact that these reports were shared in the ordinary course of business does not preclude their privileged nature as it was understood and intended by IOLERO and the Sheriff's Office that these documents were protected by the attorney client and attorney work privileges. See, e.g. Wong Declaration, Defs. Exh. B-1 (2016 Operational Agreement), Defs. Exh. B-2 (2019 Operational Agreement). In addition, the Legal Services Agreement between the County and Mr. Threets, the initial attorney director for IOLERO is attached, from the inception in 2016, that indicates that there was confidentiality and work product and other privileges that applied to the IOLERO work as of the time of the subject incident with Plaintiff. Wong Declaration, Defs. Exh. C, Legal Services Agreement, pgs. 1-2. We also wanted to clarify that while there was no additional written Legal Services Agreement with the next director, Ms. Navarro, due to an oversight, a legal services agreement existed based on the mutual understanding of the parties and the statutory mandate of the prior ordinance so a similar legal relationship still existed. Confidentiality of IOLERO's work with the Sheriff's Office was clearly laid out, with all of the limitations as stated.

Plaintiff's continued attempts to question the then-existing attorney client relationship, including arguments that IOLERO is not a legal service firm and/or not authorized to practice law, is untenable in light of the Ordinance that was in effect during the relevant time period. Plaintiff confuses the court by

February 23, 2023
Page 12

repeatedly jumping between two different versions of the County's Ordinance. The *only* relevant Ordinance for this discovery dispute is the older version (Ordinance No. 6174). The Court should disregard Plaintiff's citation and reference to IOLERO's **current** ordinance and operational agreements which were adopted *after* Measure P was approved by voters in November 2019, which significantly expanded IOLERO's new authorities and removed the attorney-client relationship going forward. However, these changes did not and do not apply retroactively to the prior ordinance that was in effect during the relevant time period for this specific discovery dispute. The prior ordinance (No. 6147) *expressly* provided for a special legal relationship between IOLERO and the County and its departments agencies and officers, such as the Sheriff's Office. **The Ordinance is a legislative act of the Sonoma County Board of Supervisors**. Whether or not Plaintiff agrees or disagrees with the legislative intent is irrelevant as it does not void the fact that an attorney client relationship was intended to be established, and was in fact established. Ordinance No. 6147 and the operational agreement in place at the time of the incident, which defined the scope and process of IOLERO's audits as required by the ordinance, clarify that the relationship between IOLERO and the County, including the Sheriff's Office, was an attorney-client relationship, that attorney notes were protected by work product privileges, that additional peace officer confidentiality protections applied, and that IOLERO could only disclose de-identified annual reports generally describing complaints and incidents, while being prohibited to "[d]isclose any confidential and/or privileged information to anyone not authorized to receive it." The public annual reports are published online and accessible to the public, dating back to 2016. Counsel for the Defendants have pointed this out to Plaintiff's counsel numerous times and, indeed, Plaintiff cites in Footnote 8 the link to such reports. Plaintiff is now seeking additional protected materials that he is not entitled to per this issue.

Beyond the publicly available annual reports, Plaintiff is not entitled to privileged documents of IOLERO relating to its operations with the Sheriff's Office for the relevant time period at issue per this dispute. Your Honor will recall that Plaintiff's arrest occurred on July 9, 2019, within the period of time that IOLERO's internal work and communications with the Sheriff's Office were entirely privileged and

February 23, 2023
Page 13

protected from disclosure. These privileges continue to attach to any communications, work product and case-specific audit reports IOLERO may have viewed from the relevant time period. It is completely irrelevant whether these case-specific reports, notes and/or communications were prepared for litigation since privileges attached to documents protected under the attorney work product and attorney-client relationship do not depend on a litigation context, nor are Defendants making this type of argument.

As such, Defendants ask the Court to deny Plaintiff's improper discovery requests as they relate to IOLERO's privileged and confidential records.

In addition, Defendants still maintain their objections as to relevance, undue burden and the proportional needs to this case regarding documents from IOLERO, a non-law enforcement advisory body not authorized to interfere with the Sheriff Office's investigative functions, decide polices, direct activities, or impose discipline on the Sheriff's Office, it officers and/or employees. As such, Plaintiff's overly expansive IOLERO requests are not binding on the Sheriff's Office and subsequently have no relevancy as to the final determination of any use of force investigation to include this case at issue.

While Defendants do not dispute the Court's order as cited, however, the order further cites "Plaintiff is entitled as a general matter to information to support his claims for *Monell* liability and supervisory liability, ***but the RFPs and Interrogatories are overly broad and burdensome as currently written.***" ECF 56, p. 5 at 17-19 (emphasis added). Further, Your Honor did not have this specific detail about the protection of the IOLERO records and scope of understanding of that attorney-client relationship with the Sheriff's Office at the time the order was issued. <u>It should be noted that the IOLERO records sought by Plaintiff have never been produced to any third-party in discovery as they are highly protected and privileged material, as contemplated during that time period</u>. Plaintiff's citation to another Sonoma County case, *Dudgeon v. County of Sonoma*, 2021 WL 5407519, at *5 (N.D. Cal. Nov. 18, 2021), is misplaced. That case referenced the publicly available annual reports, but never required disclosure of case-specific reports or other privileged and confidential attorney client communications or work product.

February 23, 2023
Page 14

Furthermore, case-specific reports and communications have other protections as well as they are based on sensitive underlying information, namely personnel type records of officers not involved in this litigation. This information falls under statutory protections pursuant to Penal Code Sec. 832.5 et. seq., Government Code Sec. 3300 et. seq., IOLERO's prior ordinance, as well as the controlling operational agreements.

It is crucial to honor and maintain these privileges and confidentiality provisions to shield protected information from overbroad and undue discovery requests. Allowing litigants to abuse discovery processes to access confidential, privileged and protected documents and information would constitute a significant breach and departure from the mission of IOLERO, its operational agreements and statutory protections. Compelling such improper discovery also does not further effective police oversight in that it unduly burdens public entities, diverts critical resources and does not aid the enhancement of effective and lawful policing.

Therefore, Defendants affirm their objections as to privilege, protection and confidentiality and this request by Plaintiff should be summarily denied for any IOLERO records other than his own public access to the annual reports. Should a hearing be necessary, Defendants would welcome such a process due to these important confidentiality and privileged matters at issue.

DATED: February 23, 2023						Respectfully submitted,

**HAGENS BERMAN SOBOL SHAPIRO LLP**

By /s/ Wesley A. Wong
    Reed R. Kathrein (139304)
    Wesley A. Wong (314652)
715 Hearst Avenue, Suite 202
Berkeley, CA  94710
Telephone: (510) 725-3000
Facsimile:  (510) 725-3001
reed@hbsslaw.com
wesleyw@hbsslaw.com

Steve W. Berman
Jacob P. Berman (327179)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000

February 23, 2023
Page 15

        Seattle, WA 98101
        Telephone: (206) 623-7292
        Facsimile:  (206) 623-0594
        steve@hbsslaw.com
        jakeb@hbsslaw.com

*Counsel for Plaintiff La'Marcus McDonald*

**MCNAMARA, NEY, BEATTY, SLATTERY, BORGES & AMBACHER LLP**

By */s/ Noah G. Blechman*
   Noah G. Blechman (197167)
3480 Buskirk Avenue, Suite 250
Pleasant Hill, CA 94523
Telephone: (925) 939-5330
Facsimile:  (925) 939-0203
noah.blechman@mcnamaralaw.com

*Counsel for Defendants County of Sonoma, Town of Windsor, Mark Essick, Travis Perkins, Brent Kidder, and Gregory Clegg*

010930-11/2187442 V2